## UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## SPARTANBURG DIVISION

|  |  |
|---|---|
| **JANE DOE,** | **Case No.: 7:21-CV-03193-JD** |
| **Plaintiff,** | |
| **vs.** | |
| **LIMESTONE UNIVERSITY F/K/A LIMESTONE COLLEGE, COLLINS MURPHY, MG FREESITES, LTD., d/b/a PORNHUB.COM, and HAMMY MEDIA LTD. d/b/a XHAMSTER.COM,** | |
| **Defendants.** | |

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT MOTION FOR JUDGMENT ON THE PLEADINGS DKT. NO. 26

Comes the Plaintiff, by counsel, and for her Response in Opposition to Defendant, Hammy Media LTD. (hereinafter" xHamster") Motion for Judgment on the pleadings (ECF No. 26), hereby states as follows:

### INTRODUCTION

*"When a defendant runs an interactive site, through which he "enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet," he can properly be haled into the courts of that foreign jurisdiction."*

*-- Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119 (W.D. Pa. 1997).*

Defendant xHamster wishes for the Court to dismiss Plaintiff's claims under Fed. R. Civ. P. 12(c) asserting that the pleadings are settled and the claims brought against them are insufficient. As an initial matter, Defendant xHamster ignores the potential for amendment of Plaintiff's Complaint pursuant to the current Scheduling Order, which allows amendments to be made up until May 3, 2022. *See* Dkt. No. 28. That said, under Defendants Motion, the determination at this

stage of the litigation is not whether a Plaintiff can prove a *prima facie* case at trial. Instead, the analysis hinges on whether Plaintiff's allegations, accepted as true and viewed in a light most favorable to them, are facially plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiff has far surpassed this legal threshold regarding their claims for invasion of privacy, intentional infliction of emotional distress, civil conspiracy, and RICO against xHamster.

Additionally, there is specific personal jurisdiction over Defendants xHamster under Federal Rule of Civil Procedure 4(k)(2) based on their contacts with the United States. *See Glob. Commodities Trading Grp. v. Beneficio De Arroz Choloma, S.A.*, 972 F.3d 1101, 1108 (9th Cir. 2020) ("[C]ourts must evaluate the parties' entire course of dealing, not solely the particular . . . tortious conduct giving rise to the claim, when assessing whether a defendant has minimum contacts with a forum."). As required under Rule 4(k)(2), Hammy Media LTD.—the owners and operators of xHamster—have purposefully directed their activities at the United States, and Plaintiff's claims arise out of and relate to those activities.

Regarding Hammy Media's plea for protection under the Communications Decency Act (hereinafter "CDA"), there is no binding precedent supporting immunity for a pornographic company who illegally posts a surreptitiously recorded video of nonconsenting naked women. Moreover, Plaintiff's claim for invasion of privacy implicates an intellectual property right which has been statutorily excluded from CDA protection. *See* 47 U.S.C. § 230(e)(2). Lastly, xHamster was an information content provider who was responsible, in whole or in part, for the creation and development of the offensive content involving the Plaintiff. *See id.* § 230(f)(3). As a result, xHamster is unable to circumvent liability under the CDA regarding Plaintiffs' remaining claims.

## FACTUAL BACKGROUND

In the fall of 2012, the Indiana University of Pennsylvania (hereinafter referred to as "IUP") Crimson Hawks traveled to Gaffney, South Carolina to face the Limestone College Saints in women's field hockey. Plaintiff was a member of the IUP field hockey team.

Upon arrival, Limestone University agents directed Plaintiff's team to a men's locker room which was designated for their use both before and after the game. While in the subject locker room, Plaintiff showered and changed clothes such that they were in a state of nudity for periods of time.

A Limestone University employee, Collins Murphy, secretly placed a video camera in the subject locker room prior to Plaintiff's arrival on campus. The secretly placed video camera recorded Plaintiff, without her knowledge or consent, while she was in a state of nudity. As intramural/summer conference director, Mr. Murphy had knowledge of sporting events on campus and had access to athletic facilities, such as the subject locker room, with Limestone University's knowledge and consent.

During the course of his employment with Limestone University, Mr. Murphy secretly recorded multiple women changing clothes and taking showers in locker rooms between September 2012 and October 2013. At some point thereafter, the recording of the Plaintiff was uploaded to various pornographic websites, including xHamster.

xHamster openly solicits submission of deviant content and promises its partners will benefit from the over ten million members who are a part of the xHamster network. xHamster, through its social networking, creates and disseminates pornographic videos, webcam models, pornographic photographs, erotic literature, and other forms of lewd material.

## ARGUMENT

"[A] court considering a motion for judgment on the pleadings must base its decision solely on information obtained from the pleadings." *Med–Trans *580 Corp. v. Benton*, 581 F.Supp.2d 721, 728 (E.D.N.C.2008) (citations and footnote omitted). Upon such motion, "the court 'assumes the facts alleged in the relevant pleadings to be true ... and ... draw[s] all reasonable inferences therefrom.' " *In re McClure Properties, Inc., Adv. Pro.* No. 10–146, 2011 WL 1300811, slip op. at *1 (Bankr.N.D. W.Va. April 4, 2011) (quoting *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 591 (4th Cir.2004)). "Inferences are drawn in favor of the non-moving party." Id. (citing *Burbach Broad. Co. v. Elkins Radio Corp.*, 278 F.3d 401, 406 (4th Cir.2002)). "[U]ncontroverted allegations contained in the complaint must be taken as true[,]" and "[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Ultimate facts and/or conclusions made in an affidavit or declaration must be disregarded. *See* United Aeronautical Corp. v. HB Corp., 2017 WL 3081682, at *3 (C.D. Cal. Feb. 3, 2017).

Here, Plaintiff has provided sufficient facts in her Complaint that establish Defendant xHamster "purposefully avail[ed] itself of the privilege of conducting activities within the forum state," *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) and Defendants have failed to present compelling evidence that exercising jurisdiction would be not be reasonable.

## I.    THIS COURT HAS SPECIFIC PERSONAL JURISDICTION OVER XHAMSTER.

Specific jurisdiction arises when a cause of action is related to the defendant's activities within the forum state. See S.C. Code Ann. § 36-2-803; Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). The Fourth Circuit

applies a three-part test when evaluating the propriety of exercising specific jurisdiction: (1) whether and to what extent the defendant purposely availed itself of the privileges of conducting activities in the forum state, and thus invoked the benefits and protections of its laws; (2) whether the plaintiff's claims arise out of those forum-related activities; and (3) whether the exercise of jurisdiction is constitutionally "reasonable." Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan, 259 F.3d 209, 215–16 (4th Cir. 2001) (citing Helicopteros, 466 U.S. at 414–16, 104 S.Ct. 1868; Burger King v. Rudzewicz, 471 U.S. 462, 472, 476–77, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

### A. xHamster Purposefully Directed its Activities at the United States

"[D]ue process permits the exercise of personal jurisdiction over a defendant who 'purposefully direct[s]' his activities at residents of a forum, even in the 'absence of physical contacts' with the forum." Schwarzenegger, 374 F.3d at 803 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985)). When assessing whether a defendant 'purposefully directs' their activities at a forum, the court may look to whether a defendant "(1) committed an intentional act, (2) expressly aimed at the forum . . . (3) causing harm that the defendant[s] know[] is likely to be suffered in the forum[.]" Id. (internal quotations and citation omitted).

#### 1. Intentional Acts

"'[I]ntent' in the context of the 'intentional act' test . . . refer[s] to an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Schwarzenegger*, 374 F.3d at 806. The focus is on "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." Axiom Foods, Inc. v. Acerchem Int'l, Inc., 874 F.3d 1064, 1070 (9th Cir. 2017).

Here, Defendant xHamster created, owns, and operates the xHamster websites; this alone constitutes an intentional act. See Handsome Music, LLC v.Etoro USA LLC, 2020 WL 8455111, at *7 (C.D. Cal. Dec. 17, 2020) (Phillips, J.) (finding intentional act requirement satisfied where the defendant "operate[d] a website that allows consumers who reside in the State of California to sign up").

### 2. Expressly Aimed at the United States

In Zippo, the court concluded that "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." 952 F.Supp. at 1124. Recognizing a "sliding scale" for defining when electronic contacts with a State are sufficient, the court elaborated:

At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet *714 Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site. Id. (internal citations omitted); accord Soma Med. Int'l v. Standard Chartered Bank, 196 F.3d 1292, 1297 (10th Cir.1999) (citing the Zippo standard for "passive" Web sites and thus finding a corporation's Web site an insufficient basis for an exercise of personal jurisdiction); Mink v.

AAAA Dev. LLC, 190 F.3d 333, 336 (5th Cir.1999) (applying Zippo's sliding scale test to the case before it); Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 418 (9th Cir.1997) (quoting Zippo for the proposition that "[c]ourts that have addressed interactive sites have looked to the 'level of interactivity and commercial nature of the exchange of information that occurs on the Web site' to determine if sufficient contacts exist to warrant the exercise of jurisdiction").

Here, xHamster qualifies as "interactive" websites because it "functions for commercial purposes and [is] where users exchange information", as opposed to "'passive' websites which merely display information, such as an advertisement." Am. Auto. Assoc. v. Darba Enterprises Inc., 2009 WL 1066506, at *4 (N.D. Cal. Apr. 21, 2009). Additionally, xHamster tracks the analytics related to viewership and ad revenue generated by xHamster.com, for the purpose of targeting ads to consumers and increasing revenues. Defendants seek and attract consumers in the U.S. for commercial gain, and the consumption of their websites' content is not "random," "fortuitous," or "attenuated," but is rather "a predictable consequence of their business models." Mavrix, 647 F.3d at 1230. "[D]espite the international viewership and scope of [a] website[,]" if the website "appeal[s] to and profit[s] from audiences in the United States," is written in English, and "generates revenue through advertisements" targeted at the U.S., the website has expressly aimed at the U.S. Maxim, 2021 WL 4839579, at *6; see also Reflex Media, 2021 WL 945248, at *3 ("The Ninth Circuit has found that a website operator targets a forum when it appeals to and profits from an audience in a particular forum.").

Defendant xHamster monitors the activity of its users and does so for the purpose of narrowly tailoring its content to increase viewership.[1] Defendant xHamster even resorts to

---

[1] See https://nypost.com/2017/08/22/the-eclipse-actually-got-people-to-stop-watching-porn/

acquisition of popular Netflix series "Sense8" in hopes to draw in US consumers.[2] When comparing website viewership by country, the United States ranks supreme—U.S. residents view the xHamster websites more than any other countries' residents. xHamster.com ranks the 4th most trafficked website in the United States, with 19% of the traffic to the website coming from the United States.[3] Defendant xHamster even contracts with US based companies for the purpose of troubleshooting and customer support. [4] Not only does Defendant xHamster focus its efforts on ensuring the customer needs of their US consumers are met, but they also take legal action to ensure protection of the xHamster name within the United States. See Exhibit A.

The below graphic is only a glimpse at how Defendant xHamster structures itself to serve their United States base whilst claiming the company only is operated within Cyprus:



This tactic of multi layered companies is employed for the purpose of making intentional contacts with the United States for the purpose of financial gain.

xHamster includes specific categories for South Carolina:

---

[2] See https://www.dailydot.com/upstream/xhamster-save-sense8/
[3] See https://www.similarweb.com/website/xhamster.com/#ranking
[4] See https://xhamster.pissedconsumer.com/customer-service.html



While Defendant xHamster asserts their website is equally accessible anywhere in the world, it is clear by the efforts within the United States, that they expressly target the United States as a market.

### 3. Causing Harm Likely to be Suffered in the United States

A defendant causes harm likely to be suffered in a forum "when [it's] intentional act has 'foreseeable effects' in the forum." Reflex Media, 2021 WL 945248, at *4; see also AirWair Int'l Ltd. v. Schultz, 73 F. Supp. 3d 1225, 1237 (N.D. Cal. 2014) ("There is foreseeable harm when a jurisdictionally sufficient amount of harm is suffered in the forum"). Otherwise put, "it [is] foreseeable that the harm [a d]efendant allegedly caused would be felt . . . where [the p]laintiff[] reside[s.]" Incredible Features, 476 F. Supp. 3d at 1032. Since the relevant inquiry assesses xHamster's contacts with the entire U.S., it is evident that their intentional act caused harm in the U.S., where Plaintiff resides. See id. Accordingly, xHamster caused harm likely to be suffered in the United States.

### B. Plaintiff's Claims Arise Out of and Relate to Defendants Contacts with the United States.

"In examining this factor, courts look to whether the plaintiff would have suffered the complained-of injury 'but for' the defendant's forum-related conduct." Incredible Features, 476 F. Supp. 3d at 1033. But "a strict causal relationship is not required." *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 983 (9th Cir. 2021) (citing Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct., 141 S. Ct. 1017, 1026 (2021)). All that is required is "some nexus between the cause of action and the defendant's activities in the forum." In re Packaged Seafood Prod. Antitrust Litig., 338 F. Supp. 3d 1118, 1161 (S.D. Cal. 2018) (quotations and citation omitted).

Here, there is no question that a nexus exists between Defendant xHamster's activities within the forum and the cause of action brought by Plaintiff. Defendant xHamster does not even appear to assert that their conduct did not lead to Plaintiff's injury. Instead, Defendant xHamster asserts that their acts are protected under Section 230 of the CDA.[5] All of the aforementioned contacts with the United States, in the aggregate, facilitated the means that not only led to and resulted in Plaintiff's harm, but also led to and resulted in Defendants' profiting off the surreptitiously filmed videos of Plaintiff. Simply put, 'but for' xHamsters contacts with the United States, the surreptitiously filmed footage of Plaintiff would not have made it to xHamster.com, and then disseminated further for profit.[6]

### C. The Exercise of Personal Jurisdiction Comports with Fair Play and Substantial Justice.

"[o]nce it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine

---

[5] Plaintiff will later address why CDA immunity is improper here.
[6] Plaintiff submits that Defendant xHamster's involvement in a civil RICO scheme adds additional contacts with the forum.

whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.' " Id. at 476, 105 S.Ct. at 2184 (quoting International Shoe, 326 U.S. at 320, 66 S.Ct. at 160). Courts consider the following factors: (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Freestream Aircraft (Berm.) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 607 (9th Cir. 2018). No one factor is dispositive; courts weigh all seven factors. Goldberg v. Cameron, 482 F. Supp. 2d 1136, 1146 (N.D. Cal. 2007). At bottom, "jurisdictional rules may not be employed in such a way as to make litigation 'so gravely difficult and inconvenient' that a party unfairly is at a 'severe disadvantage' in comparison to his opponent." Burger King, 471 U.S. at 478.

Here, Defendant xHamster's arguments all amount to mere inconvenience. While Defendants assert Plaintiff is not a resident of South Carolina, the state would not just have an interest in protecting its citizens, but also those visiting the state and taking part in interstate commerce. As such, South Carolina has an interest here, where its visitors are subject to harm at an institution located in South Carolina. Additionally, xHamster is a multimillion dollar entity whose bounds are practically limitless. For Defendant xHamster to assert that litigation in this forum would be too costly, would be an unjust representation to the court. The bottom line presented in Defendant xHamster's Motion is: although we profit from the dissemination of unlawful, lewd, and surreptitiously created content by our agents, we should not have to spend money to defend any claims brought against us. Lastly, Defendants attempt to present that while

the Plaintiff has an interest in having her claims tried here, the Court shouldn't place any weight on this factor as the CDA bars her claims. As will be discussed, this in it of itself is not enough for grounds of denying personal jurisdiction because the defendants acts bring them outside CDA immunity.

In essance, "the Due Process Clause gives 'a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." Id. at 1091-92 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). Defendant xHamster conducts business in an industry that is so susceptible to illegality that, absent properly structured websites designed to detect and bar illegality, they should predict that they could be haled into court in the country generating the highest individual percentage of their web traffic.4 See id. at 1095 ("[E]ven if [Defendants'] could not reasonably anticipate being haled into a court in this state, [they] certainly could reasonably anticipate being haled into a court in this country."). Accordingly, Defendant xHamster has not presented a compelling case that exercising personal jurisdiction over them would be unreasonable.

## II.     PLAINTIFF HAS ALLEGED PLAUSIBLE CLAIMS AGAINST XHAMSTER.

Plaintiffs' claims for invasion of privacy, intentional infliction of emotional distress, civil conspiracy, and civil RICO have been sufficiently pled against xHamster. Of importance, the determination at this stage of the litigation is not whether Plaintiff can prove a *prima facie* case at trial. Instead, the analysis hinges on whether Plaintiffs' allegations, accepted as true and viewed in a light most favorable to them, are facially plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiff has far surpassed this legal threshold regarding all three claims.

As an initial matter, in its Motion, xHamster has omitted the detailed factual recitation proffered by the Plaintiff in support of their claims. For ease of reference, the relevant factual allegations are as follows:

> 3. And the deliberate motivation of Defendants MG Freesites, Ltd. and Hammy Media Ltd. that lead to the creation of sexually lewd content for financial gain which resulted in the surreptitious filming of nine innocent girls who can never regain their innocence nor their peace of mind as naked images of them are now available on the internet.
>
> * * *
>
> 17. Upon information and belief Defendant Pornhub endorses, coordinates, and participates in the creation of sexually lewd content and monetizes its creation through payment by ad revenues generated by said content to those who have conspired with them.
>
> 18. Upon information and belief Defendant Pornhub, since beginning the practice of paying for lewd content views, has received several takedown notices by women who did not consent to be filmed in content posted on their website.
>
> * * *
>
> 20. Upon information and belief, like Defendant Pornhub, Defendant xHamster endorses, coordinates, and participates in the creation of lewd sexual content by monetizing it through ad revenue payments made to those who have conspired with them.
>
> * * *
>
> **FACTS**
> **(As to Defendant Pornhub and Defendant xHamster)**
>
> 45. Upon information and belief both Defendant Pornhub and Defendant xHamster promote the creation of lewd sexual content by providing payment to those who submit such media to their website.
>
> 46. This lewd sexual content increases the viewership to their respective platforms which increases their own financial gain.
>
> 47. Upon information and belief Defendant Pornhub and Defendant xHamster individually schemed to increase their financial positions

by enlisting others to create sexually deviant content and shared the revenues such content generated with the providers.

48. This scheme created a joint venture partnership and civil conspiracy between Defendants and the individuals who provided the Defendants with the lewd, sexual, and pornographic content which the Defendants used to make money and removes any protections granted to them as they are no longer merely hosts of said content.

49. But for the Defendants monetization of the creation of "homemade/ spy cam" style lewd content, such content would likely have not been so heavily sought after.

50. Upon information and belief the Defendants, after starting this practice, have received takedown notices by women who appeared on their websites but never consented to being filmed.

51. Despite these takedown notices, which gave Defendant Pornhub and Defendant xHamster adequate notice of apparent issues involving their content, took no steps to mitigate the exposure of women even though they knew or should have known that the content they were being provided was filmed surreptitiously and without consent.

52. Defendant Pornhub and Defendant xHamster, made no further efforts to monitor the uploads onto their websites despite a duty being created by the several takedown notices received.

53. Upon information and belief Defendant Pornhub and Defendant xHamster provided payment to Defendant Murphy in exchange for the content he posted on his accounts found on their respective websites.

54. Defendant Pornhub and Defendant xHamster rewarded Defendant Murphy for developing a large internet following for the purpose of making money and sharing spy camera footage of women without their consent.

55. The content Defendant Murphy made an income from was similar to the content that both Defendant Pornhub and Defendant xHamster had previously received takedown notices for but they chose to ignore their similarity.

56. By actively ignoring the trend that such takedown notices made aware to them, and by continuing to endorse and encourage the

creation of such surreptitious sexual content, Defendant Pornhub and Defendant xHamster enabled the Plaintiffs to be harmed by Defendant Murphy.

57. Defendant Pornhub and Defendant xHamster normalized the invasion of privacy conducted by their agent Defendant Murphy by creating an avenue for which he could be compensated for the uploading of such media.

58. Defendant Pornhub and Defendant xHamster painted the Plaintiffs in a false light by allowing them to be present on their websites, permanently damaging their self-esteem, marital relationships, and the reputation.

59. Defendant Pornhub's and Defendant xHamster's conduct in allowing those they have conspired with to upload sexually deviant media under the names "spy cam" or "hidden cam", without properly ensuring such content was created with authorization despite receiving several takedown notices from women who did not consent to similar content, both were the direct and proximate cause of the injuries suffered by the Plaintiffs.

ECF No. 11 at 1-2, 3, 4, 6-8.

With the foregoing in mind, Plaintiff will sequentially address the pleading sufficiency of their claims for invasion of privacy, intentional infliction of emotional distress, and civil conspiracy.

### A. Invasion of privacy.

Under South Carolina law, the "right to privacy is correctly defined … as the right to be let alone; the right of a person to be free from unwarranted publicity." *Swinton Creek Nursery v. Edisto Farm Credit, ACA*, 514 S.E.2d 126, 130 (S.C. 1999) (quoting *Holloman v. Life Insurance Co. of Virginia*, 7 S.E.2d 169, 171 (S.C. 1940)). The South Carolina Supreme Court has recognized three causes of action under the invasion of privacy moniker: (1) wrongful appropriation of personality, (2) wrongful publicizing of private affairs, and (3) wrongful intrusion into private affairs. *Snakenberg v. Hartford Cas. Ins. Co.*, 383 S.E.2d 2, 5 (S.C. Ct. App. 1989).

To establish a claim for wrongful intrusion into private affairs, a plaintiff must show (1) intentional, (2) intrusion, (3) into that which is private, which is (4) substantial and unreasonable enough to be legally cognizable. *See id.* at 6.

Here, in addition to the detailed factual recitation above, Plaintiff has specifically pled the following in support of their claim for invasion of privacy against xHamster:

### FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANTS
### (Invasion of Privacy –Wrongful Intrusion upon Private Affairs)

60. Plaintiff incorporates by reference and reasserts all previous allegations contained in this Complaint as if fully set forth herein.

61. Defendant Murphy, in his capacity as an employee and agent of Defendant Limestone, was given access to and/or control over the locker room facilities at Limestone.

62. Utilizing that access, Defendant Murphy placed a hidden video camera in Defendant Limestone's locker room and captured video and images of the Plaintiffs their teammates, and other student athletes from around the nation, all while they were fully nude, or in various stages of undress.

63. The secret and unauthorized videotaping by Defendant Murphy of the Plaintiffs and the other student athletes constitutes an intrusion in to the private affairs of the Plaintiffs and the other women.

64. The intrusion was and is highly offensive, substantial and unreasonable to a reasonable person such that it constitutes a blatant and shocking disregard of Plaintiffs' rights.

65. The secret and unauthorized videotaping by Defendant Murphy was intentional.

66. As a direct and proximate result of the conduct by Defendants, the Plaintiffs have sustained the injuries and damages referenced above, including serious mental and emotional injuries and distress.

67. The conduct by Defendants was a willful and wanton violation of the privacy rights of the Plaintiffs and the other student athletes, such that the Plaintiffs are entitled to an award of punitive damages.

ECF No. 11 at 9-10.

As reflected, Plaintiff has sufficiently alleged a cause of action against all Defendants, including xHamster, pertaining to the intentional and egregious generation and dissemination of a nonconsensual illicit video of the Plaintiff. *See id.* ¶¶ 3, 17-18, 20, 45-59, 60-67.

In sum, Plaintiff has adequately pled a claim for invasion of privacy. Accordingly, xHamster's Motion for Judgment on the pleadings should be denied.

### B. *Intentional infliction of emotional distress.*

In order to recover for intentional infliction of emotional distress, "a plaintiff must establish that (1) the defendant intentionally or recklessly inflicted severe emotional distress, or was certain or substantially certain that such distress would result from his conduct; (2) the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community; (3) the actions of the defendant caused the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it." *Upchurch v. New York Times Co.*, 431 S.E.2d 558, 561 (S.C. 1993) (citing *Ford v. Hutson*, 276 S.E.2d 776, 778 (S.C. 1981)).

Here, in addition to the detailed factual recitation above, Plaintiff has specifically pled the following in support of their claim for intentional infliction of emotional distress against xHamster:

### FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANTS
### (Intentional Infliction of Emotional Distress)

68. Plaintiffs incorporate by reference and reasserts all previous allegations contained in this Complaint as if fully set forth herein.

69. The conduct of Defendant Murphy in secretly videotaping the Plaintiffs and the other student athletes while totally nude, or in various stages of undress, was done intentionally to inflict severe emotional distress on the Plaintiffs and/or Defendants knew that such distress would likely result from such conduct.

70. Defendants' conduct was so extreme and outrageous that it exceeded all possible bounds of decency and was furthermore atrocious and utterly intolerable in a civilized community.

71. As a direct and proximate result of Defendants' wrongful conduct, the Plaintiffs have suffered, and continue to suffer, severe emotional distress.

72. The emotional distress caused by Defendant's wrongful conduct was, and is, so severe such that no reasonable person could be expected to endure it.

73. As a direct and proximate result of Defendants' wrongful and unlawful conduct, the Plaintiffs have sustained the injuries and damages referenced above, including serious mental and emotional injuries and distress.

74. The wrongful conduct by Defendants was willful, wanton and undertaken in reckless disregard for the privacy rights of the Plaintiffs and the other student athletes, such that the Plaintiffs are entitled to an award of **PUNITIVE** damages.

ECF No. 11 at 12.

Based on the foregoing, Plaintiff has adequately alleged xHamster intentionally, or recklessly, caused the generation and dissemination of a nonconsensual illicit video of the Plaintiff. Moreover, Plaintiff has properly alleged such conduct was outrageous and resulted in severe emotional distress. *See id.* ¶¶ 3, 17-18, 20, 45-59, 68-74.

In short, Plaintiff has properly pled a claim for intentional infliction of emotional distress. Therefore, xHamster's Motion for Judgment on the pleadings should be denied.

### C. Civil conspiracy.

Under South Carolina law, a claim for civil conspiracy has three elements: (1) a combination of two or more persons, (2) for the purpose of injuring the plaintiff, and (3) causing plaintiff special damage. *See Hackworth v. Greywood at Hammett, LLC*, 682 S.E.2d 871, 874 (S.C. Ct. App. 2009) (citing *Vaught v. Waites*, 387 S.E.2d 91, 95 (S.C. Ct. App. 1989)).

Here, in addition to the detailed factual recitation above, Plaintiff has specifically pled the following in support of their claim for civil conspiracy involving xHamster:

### FOR A SEVENTH CAUSE OF ACTION AGAINST THE DEFENDANTS
**(Civil Conspiracy- against Defendant Murphy and Defendant Pornhub and Defendant xHamster)**

102. Plaintiffs incorporate by reference and reasserts all previous allegations contained in this Complaint as if fully set forth herein.

103. The Defendants conspired for the purpose of creating sexually lewd content which directly invaded the Plaintiffs' rights to privacy guaranteed by the United States Constitution. More particularly, the Plaintiffs have been harmed as a direct and proximate result.

104. During period alleged in this Complaint, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which resulted in the surreptitious and illegal filming of the Plaintiffs. Such scheme was intended to, and, throughout timeframe alleged in this Complaint, did create content that was published on the Defendant Pornhub's website which exposed Plaintiffs to viewers on the internet for profit.

105. As a direct and proximate result of the improper actions of the Defendants, Plaintiffs have been damaged in **ACTUAL**, **CONSEQUENTIAL** AND **PUNITIVE DAMAGES**.

ECF No. 11 at 16.

As evident from the asserted allegations, Plaintiff has properly pled xhamster conspired with Collins Murphy, for the purposes of mutual financial gain, to generate and disseminate

nonconsensual illicit videos, such as the one at-issue in this litigation. *See id.* ¶¶ 3, 17-18, 20, 45-59, 102-105.

Simply stated, Plaintiff has appropriately pled a claim for civil conspiracy between xHamster and Mr. Murphy. Consequently, xHamster's Motion for Judgment on the pleadings should be denied.

### D. Civil RICO

To properly plead a civil RICO claim under any subsection of § 1962, a plaintiff must allege "(1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise." *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007) (citations omitted). To withstand a motion to dismiss, a civil RICO plaintiff must allege facts sufficient to establish each of these essential elements. *See Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 606 (5th Cir. 1998); *see also Elliott v. Foufas*, 867 F.2d 877, 880 (5th Cir. 1989)

Here, in addition to the detailed factual recitation above, Plaintiff has specifically pled the following in support of their civil RICO claim involving xHamster:

**FOR A ELEVENTH CAUSE OF ACTION AGAINST THE DEFENDANTS**
**(CONDUCTING THE AFFAIRS OF THE ENTERPRISE THROUGH A PATTERN OF RACKETEERING ACTIVITY - 18 U.S.C. § 1962(c) and 1964(c) against Defendant Murphy and Defendant xHamster)**

132. Plaintiffs incorporate by reference and reasserts all previous allegations contained in this Complaint as if fully set forth herein.

**THE ENTERPRISE**

133. From on or about 2014, continuing through the filing of this Complaint, each Defendant was a "person" within the meaning of 18 U.S.C. § 1961(3).

134. From on or about 2014, continuing through the filing of this Complaint, defendants, and others known and unknown,

including agents and employees of the defendants, formed an associated-in-fact enterprise within the meaning of 18 U.S.C. §§ 1961(4).

135. From on or about 2014, continuing through the filing of this Complaint, the Enterprise formed by these parties engaged in, and the activities of which affected, interstate and foreign commerce.

136. Defendants formed the Enterprise to execute and attempt to execute schemes to engage in the creation and dissemination of illegally obtained obscene footage of nonconsenting women. Defendants knowingly engaged in the illegal filming of women in all stages of undress for the specific purpose of exploiting their innocence for financial gain.

137. From on or about 2014, continuing through the filing of this Complaint, defendants, and each of them individually, together with others known and unknown to Plaintiffs, acting in concert, were each employed or were employed by and associated with the Enterprise and have in the past, continuously and currently continue to, in an ongoing manner, knowingly and intentionally conduct the activities of the enterprise, directly or indirectly, through a continued pattern of racketeering activity consisting of numerous acts of racketeering in the State of South Carolina and elsewhere. Their actions include multiple, related acts in violation of the following provisions of the United States Code: Wire Fraud, 18 U.S.C. § 1343;

138. From on or about 2014, the Enterprise has existed separate and apart from defendants' racketeering acts and their conspiracy to commit such acts. The Enterprise has an ascertainable structure and purpose beyond the scope and commission of defendants' predicate acts.

**THE PATTERN OF RACKETEERING**

139. The Enterprise as described herein is at all relevant times a continuing enterprise because it continues to execute schemes to create and disseminate illegally obtained obscene footage of nonconsenting woman for the purpose of generating revenue. In furtherance of schemes to create and disseminate illegally obtained obscene footage of nonconsenting woman for the purpose of generating revenue, Defendants continue to create videos under the moniker "Spy came videos" or "Hidden Cam Videos" and displays them as consensual recordings when they are not.

140. The conduct of the racketeering enterprise has continued from its inception through the date of this Complaint and threatens to continue into the future, by virtue of repeated patterns of behavior by its members.

141. The pattern of racketeering activity, as defined by 18 U.S.C. §§ 1961(1) and (5), presents both a history of criminal

conduct and distinct threat of continuing criminal activity. Such activity consists of multiple acts of racketeering by each defendant herein, is interrelated, not isolated and is perpetrated for the same or similar purposes by the same persons. Such activity extends over a substantial period of time, before, up to and beyond the date of this Complaint. Such activities occurred after the effective date of 18 U.S.C. §§ 1961 et seq., and the last such act occurred within 10 years after the commission of a prior act of racketeering activity.

142. Each defendant had a role in the racketeering activity that was distinct from the undertaking of those acting on its behalf. Each defendant also attempted to benefit, and did benefit, from their activity as alleged herein, and thus were not passive victims of racketeering activity, but active perpetrators.

143. Defendants, despite receiving notice that the videos they have been creating violate the law, continued their scheme and resumed the creation of "Spy Cam Videos".

144. Defendants have continued the pattern of exploiting women by illegally filming them and then monetizing the surreptitiously filmed content under the guise of legitimate pornography. Since at least 2014 Defendants have advertised these "Spy cam" videos and continue to endorse the genre.

145. Defendant Pornhub and Defendant xHamster continue to work with and even rewarded Defendant Murphy for developing a large internet following for the purpose of making money and sharing spy camera footage of women without their consent.

146. Defendants maintained a presence worldwide to even include the illegal videos being disseminated in Japan and South America.

147. Defendants advertise their great successes to continue the pattern and practice of the illegal recording of women to then share under the guise of a specific genre.

148. This lewd, illegal, sexual content increases the viewership to their respective platforms which increases their own financial gain.

149. Defendants continue to conspire to create and disseminate surreptitiously filmed videos of women and pay members of the Enterprise to further this scheme.

150. As a direct and proximate result of the defendants' violations of 18 U.S.C. §1962(c), including injury by reason of the predicate acts constituting the pattern of racketeering activity.

151. As a result of the violations of 18 U.S.C. § 1962(c) by the defendants, Plaintiffs suffered substantial damages in an amount to be proved at trial.

152. Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover treble its general and special compensatory damages, plus

> interest, costs and attorneys' fees, incurred by reason of defendants'
> violations of 18 U.S.C. § 1962(c).

ECF No. 11 at 17-20.

As indicated from the asserted allegations, Plaintiff has properly pled xHamster is a "person" within §1962, that engaged in a pattern racketeering activity with Collins Murphy, for the purposes of creating an enterprise for mutual financial gain, and to generate and disseminate nonconsensual illicit videos, such as the one at-issue in this litigation. *See id.* ¶¶ 3, 17-18, 20, 45-59, 102-105.

Simply stated, Plaintiffs have appropriately pled a claim for civil RICO between xHamster and Mr. Murphy. Consequently, xHamster's Motion for Judgment on the pleadings should be denied.

## III.    XHAMSTER IS NOT ENTITLED TO CDA IMMUNITY.

The CDA does not bar any of Plaintiff's claims. First, Plaintiff's claim for invasion of privacy implicates an intellectual property right which has been statutorily excluded from CDA protection. Second, xHamster was an information content provider who was responsible, in whole or in part, for the creation and development of the offensive content involving the Plaintiff. As a result, xHamster is unable to circumvent liability under the CDA regarding Plaintiff's remaining claims.

### A.    *Plaintiffs' claim for invasion of privacy implicates an intellectual property right which has been statutorily excluded from CDA protection.*

Plaintiff's claim for invasion of privacy is not subject to the CDA. The CDA unambiguously states "nothing in this section shall be construed to limit or expand any law pertaining to intellectual property." 47 U.S.C. § 230(e)(2).

In *Doe v. Friendfinder Network, Inc.*, 540 F. Supp. 2d 288 (D.N.H. 2008), the District of New Hampshire held a cause of action for right of publicity was exempt from CDA immunity since it is a claim involving an intellectual property right:

> While the plaintiff objects to the dismissal of any part of Count I on the ground that it asserts "intellectual property rights" under § 230(e)(2), her argument and authorities on that score address only the fourth theory, commonly known as a "right of publicity" claim. *See, e.g., Carson v. Here's Johnny Portable Toilets, Inc.*, 698 F.2d 831, 834 (6th Cir.1983). **As the plaintiff points out, "the right of publicity is a widely recognized intellectual property right."** ***Almeida*, 456 F.3d at 1322 (citing authorities). Such a claim therefore arises out of a "law pertaining to intellectual property" within the meaning of the statute. *See* 1 McCarthy, *Rights of Publicity*, § 3:42 (opining that § 230 immunity does not apply to claim for infringement of right to publicity by virtue of § 230(e)(2)).**

*Id.* at 302 (emphasis added). The same result has been reached by other circuits that have considered the issue. *See ETW Corp. v. Jireh Publ'g, Inc.*, 332 F.3d 915, 928 (6th Cir. 2003) ("The right of publicity is an intellectual property right of recent origin which has been defined as the inherent right of every human being to control the commercial use of his or identity."); *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1322 (11th Cir. 2006) ("[T]here appears to be no dispute that the right of publicity is a type of intellectual property right.").

South Carolina expressly recognizes the tort of infringement on the right of publicity. *See Gignilliat v. Gignilliat, Savitz & Bettis, L.L.P.*, 684 S.E.2d 756, 760 (S.C. 2009). In *Gignilliat*, the South Carolina Supreme Court noted a claim for infringement on the right of publicity is synonymous with a claim for wrongful appropriation of personality. *See id.* at 759-60 (quoting *Sloan v. South Carolina Dep't. of Pub. Safety*, 586 S.E.2d 108, 110 (S.C. 2003)). A claim for wrongful appropriation of personality involves the "intentional, unconsented use of the plaintiff's

name, likeness, or identity by the defendant for his own benefit." *Snakenberg v. Hartford Cas. Ins. Co.*, 383 S.E.2d 2, 5 (S.C. Ct. App. 1989).

Here, Plaintiff has specifically alleged a claim for invasion of privacy. *See* ECF No. 99 at 9. A claim for wrongful appropriation of personality is encompassed under a claim for invasion of privacy. *See Swinton Creek Nursery v. Edisto Farm Credit*, 514 S.E.2d 126, 130 (S.C. 1999).

In sum, Plaintiff has specifically asserted a claim for invasion of privacy based upon xHamster's intentional use of Plaintiff's likeness for its own benefit. This is a claim involving Plaintiff's intellectual property rights. Accordingly, CDA immunity cannot attach to such a claim. Thus, xHamster's Motion for Judgment on the pleadings should be denied.

### B. xHamster was an information content provider, which precludes CDA immunity regarding the remainder of Plaintiff's claims.

As an initial matter, there is no binding precedent supporting immunity for a pornographic company who illegally posts a surreptitiously recorded video of nonconsenting naked women. The CDA was not designed to insulate such egregious conduct.

The CDA prohibits a "provider or user of an interactive computer service" from being held responsible "as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). However, this grant of immunity only applies if the interactive computer service provider is not also an "information content provider," which is defined as someone who is "responsible, in whole or in part, for the creation or development of" the offending content. *Id.* § 230(f)(3).

An interactive computer service provider is defined as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server." *Id.* § 230(f)(2). Plaintiff agrees xHamster is an interactive computer service provider as defined by statute. However, contrary to xHamster's assertions, it is also an

information content provider. *See id.* § 230(f)(3). As an information content provider, xHamster cannot circumvent liability under the CDA.

First, "[d]iscovery is the proper tool for [a plaintiff] to use to test the validity of his allegations, and if he is unable to marshal enough facts to support his claim the [defendant] can move for summary judgment." *Huon v. Denton*, 841 F.3d 733, 742 (7th Cir. 2016). Otherwise, "potentially meritorious claims could be prematurely and improperly dismissed … since the information necessary to prove or refute allegations … is typically available only to defendants." *Id.* at 743.

In *Huon*, the plaintiff specifically alleged a website helped create and develop a portion of published defamatory comments. *See id.* at 736-37. In reversing dismissal predicated under the CDA, the Seventh Circuit held the plaintiff plausibly alleged the website was sufficiently involved in the posting of the alleged defamatory content. *See id.* at 743 ("The Gawker Defendants also argue that Huon failed to plead facts plausibly establishing that Gawker authored the allegedly defamatory comments. As discussed above, however, there is nothing implausible about this allegation, and we reject the Gawker Defendants' invitation to interpret Rule 8, *Twombly*, and *Iqbal* as requiring more."). Thus, the Seventh Circuit determined the plaintiff adequately pled the website was an information content provider which precluded dismissal under the CDA. *See id.*

Here, Plaintiff has alleged xHamster "schemed to increase their financial positions by enlisting others to create sexually deviant content and shared the revenues such content generated with the providers." ECF No. 11 ¶ 47. Plaintiff has further alleged said "scheme created a joint venture partnership and civil conspiracy between Defendants and the individuals who provided the Defendants with the lewd, sexual, and pornographic content which the Defendants used to

make money and removes any protections granted to them as they are no longer merely hosts of said content." *Id.* ¶ 48.

As reflected, Plaintiff has sufficiently alleged facts which support the contention xHamster was directly involved in the posting of the nonconsensual illicit video of the Plaintiff. Based on *Huon*, this would render xHamster an information content provider under the CDA. To the extent discovery proves otherwise, xHamster can move for summary judgment. *Huon*, 841 F.3d at 742. At this stage, however, Plaintiff's claims should not prematurely be dismissed since they have been sufficiently pled.

Second, an interactive computer service provider is responsible for the development of offensive content if it specifically encourages the development of what is offensive about the content. *See Federal Trade Comm'n v. Accusearch, Inc.*, 570 F.3d 1187, 1199 (10th Cir. 2009).

In *Accusearch*, a website sold confidential information of individuals, including their telephone records, which the website paid researchers to obtain. *See id.* at 1190. The website claimed immunity under the CDA, arguing it merely displayed the allegedly illegal conduct that originated from its third-party researchers. *See id.* The Tenth Circuit held the website was not entitled to immunity under the CDA because "[b]y paying its researchers to acquire telephone records, knowing that the confidentiality of the records was protected by law, it contributed mightily to the unlawful conduct of its researchers." *Id.* Moreover, "the offensive postings were [the website's] *raison d'etre* and it affirmatively solicited them." *Id.* Because of the foregoing conduct, the Tenth Circuit determined the website was an information content provider under the CDA. *See id.* at 1200.

Again, Plaintiff has alleged xHamster attempted to improve its financial position by enlisting others to create sexually deviant content. *See* ECF No. 11 ¶¶ 47-48. Moreover, Plaintiff

has alleged xHamster paid Collins Murphy for the deviant content he posted, including that involving the Plaintiff. *See id.* ¶¶ 53-54. Plaintiff has further alleged xHamster disregarded takedown notices from women who appeared on its website without consent and continued to "endorse and encourage the creation of such surreptitious sexual content." *Id.* ¶ 56. This is the precise conduct which precluded application of CDA immunity in *Accusearch*.

Lastly, courts have held where facts are alleged which establish agency, either actual or implied, between a website operator and a third-party information content provider, the website operator is considered the provider of the offensive content. *See, e.g.*, *Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*, 194 F. Supp. 3d 263, 276 (S.D.N.Y. 2016) ("Because the SAC adequately pleads that Quietman7 acted as Bleeping's agent, he does not qualify as a third-party ICP under the CDA so as to entitle Bleeping to immunity. Section 230, therefore, does not bar ESG's claims.").

Under South Carolina law, agency may be actual or implied. *See Froneberger v. Smith*, 748 S.E.2d 625, 630 (S.C. Ct. App. 2013). "If there are any facts tending to prove the relationship of agency, it then becomes a question for the jury." *Id.* at 631 (quoting *Gathers v. Harris Teeter Supermarket, Inc.*, 317 S.E.2d 748, 752 (S.C. Ct. App. 1984).

Here, Plaintiff has sufficiently alleged an agency relationship between xHamster and Mr. Murphy. *See* ECF No. 11 ¶¶ 47-48, 57, 102-105. As such, xHamster is responsible as the information content provider of the nonconsensual illicit video of the Plaintiff. Consequently, the CDA does not insulate Pornhub from liability. To the extent xHamster contests an agency relationship with Mr. Murphy, sufficient facts exist which requires the jury to be the ultimate arbiter on the issue. *See Froneberger*, 748 S.E.2d at 631 (quoting *Gathers v. Harris Teeter Supermarket, Inc.*, 317 S.E.2d 748, 752 (S.C. Ct. App. 1984).

In sum, there are multiple legal barriers precluding CDA immunity in xHamster's favor. As a result, xHamster's Motion for Judgment on the pleadings should be denied.

## IV.    THIS COURT SHOULD GRANT PLAINTIFF LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY.

District courts "have broad discretion in [their] resolution of discovery problems that arise in cases pending before [them]." Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 64 (4th Cir. 1993). When personal jurisdiction is challenged by a nonresident defendant, the question raised is one for the judge, with the plaintiff bearing the burden of demonstrating that jurisdiction exists. See In re Celotex Corp., 124 F.3d 619, 628 (4th Cir.1997) (quoting Combs v. Bakker, 886 F.2d 673, 676 (4th Cir.1989)). To that end, a court may compel or permit discovery to aid in its resolution of personal jurisdiction issues raised in a defendant's motion to dismiss. See Cent. Wesleyan Coll. v. W.R. Grace & Co., 143 F.R.D. 628, 644 (D.S.C.1992); see also, e.g., Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 n. 13, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978) ("[W]here issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues."); McLaughlin v. McPhail, 707 F.2d 800, 806–07 (4th Cir.1983) (per curiam) (noting *998 that limited discovery "may be warranted to explore jurisdictional facts in some cases"); Vogel v. Boddie–Noell Enters., Inc., CIV. WDQ–11–0515, 2011 WL 3665022, at *3 (D.Md. Aug. 18, 2011) ("Absent a developed record, 'a trial court should allow plaintiffs the opportunity to discover facts to support jurisdictional allegations.' " (quoting EEOC v. Alford, 142 F.R.D. 283, 286 (E.D.Va.1992))); Rich v. KIS Cal., Inc., 121 F.R.D. 254, 259 (M.D.N.C.1988) ("In determining a motion to dismiss for lack of personal jurisdiction, the Court may either postpone the decision and permit discovery, determine the motion on the basis of the pleadings and affidavits, or hold an

evidentiary hearing." (citing Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir.1981))).

Here, Plaintiff has established that Defendant xHamster (1) purposefully availed itself to the United States, (2) that it did so with the intent to benefit from the ability to conduct business in the United States, and (3) that the exercise of personal jurisdiction over Defendant xHamster would be constitutionally reasonable. In the event this Court believes more facts are necessary to establish personal jurisdiction, Plaintiff requests leave to conduct jurisdictional discovery. Plaintiff has presented more than "some evidence" to rebut Defendant's claims in their Motion and attached declarations, thus meeting the standard to permit jurisdictional discovery. *See* Life Bliss, 2013 WL 12132068, at *6 (finding that the plaintiffs' news reports submitted to "rebut the statements in [defendants'] declarations" met the "'some evidence' standard so as to permit jurisdictional discovery"). If the Court believes that it is unclear as to whether it may exercise personal jurisdiction over Defendant xHamster, the Court should grant Plaintiff ninety (90) days to conduct jurisdictional discovery regarding Defendant xHamster.

## CONCLUSION

By its own proclamation, xHamster has a daily global reach of over 100 million users. The number of people who have seen the Plaintiff naked, without her consent, is appalling. A ruling in xHamster's favor will encourage future solicitation and posting of nonconsensual illicit videos of innocent victims. Such a result is contrary to not only public policy, but also controlling law. Accordingly, xHamster's Motion for Judgment on the pleadings should be denied in its entirety.

**[SIGNATURE BLOCK ON FOLLOWING PAGE.]**

Respectfully submitted,

**BELL LEGAL GROUP, LLC**

*/s/ J. Edward Bell, III*
J. Edward Bell, III (#1280)
Joshua M. W. Salley (#13214)
BELL LEGAL GROUP, LLC
219 North Ridge Street
Georgetown, SC 29440
Telephone: (843) 546-2408
jeb@edbelllaw.com
jsalley@edbelllaw.com
**Counsel for Plaintiff**


**DOLT, THOMPSON, SHEPHERD & CONWAY, PSC**

Tyler S. Thompson (*Pro Hac Vice Application Forthcoming*)
Liz J. Shepherd ( *Pro Hac Vice Application Forthcoming*)
Jordan A. Stanton ( *Pro Hac Vice Application Forthcoming*)
DOLT, THOMPSON, SHEPHERD & CONWAY, PSC
13800 Lake Point Circle
Louisville, KY 40223
Telephone: (502) 244-7772
tthompson@kytrial.com
lshepherd@kytrial.com
jstanton@kytrial.com
**Counsel for Plaintiff**


April 4, 2022
Georgetown, SC