UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| JANE DOE,<br>            Plaintiff,<br>vs.<br><br>LIMESTONE UNIVERSITY F/K/A LIMESTONE COLLEGE, COLLINS MURPHY, MG FREESITES, LTD., d/b/a PORNHUB.COM, and HAMMY MEDIA, LTD. d/b/a XHAMSTER.COM,<br>            Defendants. | Case No.: 7:21-cv-03193-JD |

**HAMMY MEDIA LTD.'S REPLY IN SUPPORT OF**
**MOTION FOR JUDGMENT ON THE PLEADINGS**

*"If you can't dazzle them with brilliance, baffle them with bull****."*
                                                                                                                 - W.C. Fields

**INTRODUCTION**

      If it were possible to fully summarize the mish-mash of random charts and screengrabs; links to irrelevant (and unverified) websites; materials outside the scope of the pleadings; misstatements of fact and law; and misrepresentations to the Court about what various documents or websites say that comprise Plaintiff's Opposition to Hammy Media Ltd.'s ("HML") Motion for Judgment on the Pleadings, it would be as such: Defendant Collins Murphy ("Murphy") did something heinous and unconscionable and, for that reason, the Court should ignore the Constitution, relevant facts, statutory mandates, and the applicable case law with respect to HML because somebody – anybody really – should be held responsible: law, facts, and due process be damned.

      It should not have to be said that this is not how the legal system works. Personal jurisdiction is determined by the constitutional requirement of due process; filings with the Court

are governed both by the rules of civil procedure and by a lawyer's duty of candor to the Court; parties are bound by the facts as they have actually alleged them in their pleadings; and the law is what our legislatures and courts say it is, not what litigants might wish it to be. None of this should have to be said. And yet, here we are.

Far from demonstrating that the present litigation should continue, Plaintiff's Opposition only highlights further the reasons why her complaint must be dismissed. In further support of its Motion for Judgment on the Pleadings, HML states as follows.

## **PROCEDURAL MISREPRESENTAION**

Plaintiff's Opposition begins with a remarkable supposition: that, somehow, HML's Rule 12(c) motion is premature because the Plaintiff *might, perhaps*, choose to further amend her complaint, although she has not actually done so to date. This is absurd.

Fed. R. Civ. P. 12(c) provides that a motion for judgment on the pleadings may be filed "after the pleadings are closed—but early enough not to delay trial…." To date, Plaintiff has already twice amended her complaint, with the operative complaint being filed approximately five months ago, in November of 2021. *See* DE 11. On February 28, 2022, HML answered that complaint and, accordingly, the pleadings are "closed" for purposes of Rule 12. *See, e.g., Burbach Broad. Co. v. Elkins Radio Corp.*, 278 F.3d 401, 405 (4th Cir. 2002)("Because Elkins' answer had been filed, the pleadings were closed at the time of the motion"); *Etix, Inc. v. After Dark Entm't, Inc.*, 2020 U.S. Dist. LEXIS 198025, at *3-4 (E.D.N.C. Oct. 22, 2020)("[F]or purposes of 12(c), the pleadings are closed upon the filing of a complaint and an answer…")(internal quotation marks omitted); *Magneti Marelli Powertrain USA Ltd. Liab. Co. v. Pierburg, Inc.,* 2008 U.S. Dist. LEXIS 52661, at *7 n.1 (D.S.C. July 9, 2008)(once amended complaint and counterclaims had been answered, pleadings were "indisputably closed.")

The Plaintiff is the master of her own complaint. She has filed two amended complaints and the operative complaint has been answered, making HML's motion ripe for decision.

## **FACTUAL MISREPRESENTATIONS**

Rule 12(b)(6) motions test the sufficiency of the allegations within the four corners of the complaint, considering *only* the facts as alleged in the complaint, documents attached to the complaint, and documents that are referenced in, and central to, the complaint. *See, e.g., Sullivan v. City of Frederick,* 738 F. App'x 198, 199 (4th Cir. 2018); *In re Derivium Capital, LLC v. Cathcart*, 2008 U.S. Dist. LEXIS 138245, at *4 (D.S.C. June 17, 2008). In considering a motion under Rule 12(c), the court expands its inquiry only so far as to include also the answer and the documents attached to or referenced in the answer. *See, e.g., Clavon v. S.C. Dep't of Corr.,* 2021 U.S. Dist. LEXIS 34493, at *7 (D.S.C. Feb. 24, 2021)("The key difference between a Rule 12(b)(6) motion and a Rule 12(c) motion is that the court 'consider[s] the answer as well as the complaint' and 'documents incorporated by reference in the pleadings' on a Rule 12(c) motion"); *Rli Ins. Co. v. Innovative Emp'r Sols., LLC,* 2021 U.S. Dist. LEXIS 256438, at *1 (D.S.C. Apr. 20, 2021)("in addressing a Rule 12(c) motion, the Court may consider the Answer and attached exhibits in addition to the Complaint.")

Despite this rather black letter law proposition, Plaintiff's Opposition is littered with factual allegations found nowhere in the pleadings; "facts" with no support or citation; and "facts" supposedly supported by links to articles or random, unidentified pictures cut-and-paste into the Opposition that do not remotely support the proposition for which they are offered. And, although it would be impossible to catalog every such instance, HML addresses some of them, below, in the order that they appear in Plaintiff's Opposition, with some of the most egregious instances in bold.

- "xHamster tracks the analytics related to viewership and ad revenue generated by xHamster.com, for the purpose of targeting ads to consumers and increasing revenues." Opposition, p. 7. This allegation is uncited, does not appear in the pleadings, and is without any basis. (In reality, "HML does not itself sell advertising on the website, but rather advertising is placed through an ad broker company, which is also located in Cyprus." Haladjian Decl., ¶11.)

- "Defendants seek and attract consumers in the U.S. for commercial gain…." Opposition, p. 7. This allegation is uncited, does not appear in the pleadings, and is without any basis. (In reality, "the xHamster website is not aimed or directed at any state or any country, but rather it is universally accessible wherever the internet is available.") Haladjian Decl., ¶14.

- **"Defendant xHamster monitors the activity of its users and does so for the purpose of narrowly tailoring its content to increase viewership." Opposition, p. 7. Although this allegation appears nowhere in the pleadings, Plaintiff cites to an irrelevant article in the New York Post from 2017 (that she does not provide to the Court) that does not even remotely say what Plaintiff claims it does. Instead, the article, entitled "The eclipse actually got people to stop watching porn" (a copy of which is attached hereto as Exhibit 1), says only that xHamster reported seeing a drop in website traffic from locations where a full eclipse was visible.**

- "Defendant xHamster even resorts to acquisition of popular Netflix series "Sense8" in hopes to draw US consumers." Opposition, p. 7. Putting aside how utterly bizarre this statement is – and the fact that this allegation appears nowhere in the pleadings - the article cited to (but again not provided to the Court) says nothing about trying to draw US consumers, but rather simply reports that, in 2017, HML sent an open letter to the creators of the TV show Sense8 offering to buy a third season of the show, which had been cancelled by Netflix. A copy of the article is

4

attached hereto as Exhibit 2. The article does not suggest in any way, shape, or form that HML was looking to "draw US consumers." And, at the risk of giving an irrelevant allegation way more oxygen than it deserves, it seems worth mentioning that Sense8 was an *international* success. *See, e.g.,* "Statistics Show Sense8 Should Get A Season 3," located at: https://www.whats-on-netflix.com/news/statistics-show-sense8-should-get-a-season-3/, last accessed April 9, 2022 ("The second season of Sense8 premiered on May 5th, 2017 and although the show was cancelled three weeks later, on June 1st, it ranked among the Top 20 Digital Original Series Demand reports in Germany, France, Australia, Singapore, Mexico, Brazil and UK and the USA, where it was in the Top 10. Parrot Analytics released its 2018 first quarterly report in March and Sense8 once again is among the Top 20 most in-demand digital original series, nearly a year after its cancellation, in the USA, Greece, South Korea, Italy, Netherlands, Brazil, and Switzerland. If there was ever an instance when strength in numbers comes into play, it is when a show that is billed as a niche market experiment goes on to garner a truly global audience"), attached as Exhibit 3. To the extent that this "fact" has any jurisdictional relevance at all (and, truly, it does not), it would only be to show that HML looks to attract an *international* audience.

- "Defendant xHamster even contracts with US based companies for the purpose of troubleshooting and customer support." Opposition, p. 8. Putting aside again that *this allegation appears nowhere in the pleadings*, the website cited to by Plaintiff in support of this allegation (www.PissedConsumer.com) has no connection with HML but, instead, is one of many websites that purport to collect information from random, anonymous internet users who have complaints about businesses.[1] Ironically, it has been frequently alleged that the PissedConsumer website is

---

[1] Despite providing this link to the Court, it is hard to believe that Plaintiff *actually* believed that the website was affiliated with HML. Indeed, at least one federal court held that it was implausible that "even the dimmest Internet user" could believe that the content appearing on the

itself a scam – designed to solicit negative reviews, which it then charges companies to remove as part of "reputation management" services. *See, e.g., Ascentive, LLC v. Op. Corp.,* 842 F. Supp. 2d 450, 478 (E.D.N.Y. 2011)(describing in detail the business model of the PissedConsumer website and concluding "the Court finds some aspects of PissedConsumer's business practices troubling and perhaps unethical"); *VO Grp., LLC v. Opinion Corp. d/b/a pissedconsumer.com*, 2012 N.Y. Misc. LEXIS 4497, at *10 (Sup. Ct. May 22, 2012)("Plaintiffs claim that when Pissedconsumer demanded $5,000 to remove the posts, that such a demand constituted extortion.

- **"Not only does Defendant xHamster focus its efforts on ensuring the customer needs of their US consumers are met, but they also take legal action to ensure protection of the xHamster name within the United States." Opposition, p. 8. As with the prior allegations, this one appears nowhere in the pleadings. Moreover, the document attached as an Exhibit in support of this allegation does not support any part of that sentence. The attached exhibit, the decision of an alternative dispute resolution service that provides domain dispute arbitration internationally, not only says nothing at all about HML trying to meet the needs of US consumers, it also – contrary to Plaintiff's representation to this Court – says nothing about trying to protect "the xHamster name within the United States." To the contrary, the decision is about protecting the xHamster.com domain name – which is the same everywhere in the world. And, as the decision specifically notes, xHamster's efforts were aimed at protecting its rights worldwide and, specifically, its "Benelux registration," which refers to The Benelux Office for Intellectual Property, which is the registration office for trademarks and designs in**

---

pissedconsuler.com website was actually connected to the company being targeted by the website. *deVere Grp. GmbH v. Op. Corp.,* 877 F. Supp. 2d 67, 72 (E.D.N.Y. 2012).

***Belgium, the Netherlands, and Luxembourg.*** **See Exhibit A to Opposition ("Complainant Hammy Media Ltd. operates an adult-content website at <xhamster.com> with users from around the world. Complainants cite various surveys ranking the website among the most popular sites in the world. Hammy Media Ltd. and its predecessors in interest have used the XHAMSTER mark for this purpose since 2007. The mark is licensed from Complainant xHamster IP Holdings Ltd, which owns a Benelux registration and has applied to register the mark elsewhere.")**

- "The below graphic is only a glimpse at how Defendant xHamster structures itself to serve their United States base whilst claiming the company is only operated within Cyprus:



"

Opposition, p. 8.

The Court might well wonder where in the pleadings this graph appears: the answer is, it does not. The Court might also wonder where this graph or the underlying information for the graph comes from, since the Opposition gives no clue (despite wanting the Court to rely on its accuracy). But, most of all, the Court might wonder how this graph advances Plaintiff's jurisdictional argument since – even if the Court could consider it – it simply suggests that HML is connected to other companies ***located in Cyprus and the British Virgin Islands.***

- **Finally, Plaintiff cuts-and-pastes a picture of search results that they**

**presumably obtained after typing the words "South Carolina" and "South Carolina members" into the search box at the top of the xHamster.com website, claiming that the photo proves that "xHamster includes specific categories for South Carolina."**



**Opposition pp. 8-9.**

Once again, looking past the fact that neither this allegation nor this screengrab are anywhere in the pleadings, the fact that a search returns results does not mean that xHamster has established "categories" of the videos searched for or that the website has any particular focus on the United States. Indeed, a similar search of most any country in the world – including some of the most obscure places on the planet – similarly produces results on the website:



8

**Plaintiff's attempt to categorize such search results as "specific categories" that demonstrate that HML "expressly target[s] the United States as a market" is nothing short of an attempt to mislead this Court.**

## INCORRECT LEGAL ARGUMENTS

Whereas it is hard to categorize Plaintiff's factual allegations as anything other than intentional misrepresentations, her legal arguments, for the most part, do not appear to be asserted in bad faith: rather, they're simply wrong. And, without retreading ground already covered in HML's Motion for Judgment on the Pleadings, HML will respond to *some* of Plaintiff's incorrect legal arguments.

    I.    <u>The Website's Alleged Overall Popularity Is Not Jurisdictionally Relevant.</u>

Plaintiff asserts in her opposition that approximately 19% of the traffic to the xHamster website comes from visitors from the United States, citing to a website called SimilarWeb.com. Even putting aside (again) the fact that no such allegation appears in the pleadings (and that, unlike Google Analytics, SimilarWeb provides only estimations of web traffic),[2] the bottom line is that, even if correct, the mere fact that a website is popular within a jurisdiction does not mean that the website is *aimed* at that jurisdiction.

Indeed, at least one other federal court has specifically rejected the argument that HML can be subject to personal jurisdiction based on the percentage of U.S. visitors to the xHamster website. *See Fraserside IP L.L.C. v. Hammy Media, LTD*, 2012 U.S. Dist. LEXIS 5359 (N.D. Iowa Jan. 17, 2012) (rejecting personal jurisdiction despite allegations that "xHamster's website www.xHamster.com is visited daily by over 1,500,000 internet users worldwide with roughly 20

---

[2] *See, e.g.*, https://support.similarweb.com/hc/en-us/articles/360001638917-Similarweb-vs-Google-Analytics

percent of the site's visitors being from the United States.") This is consistent with the numerous other federal courts have, in similar situations, rejected the argument that a foreign defendant may be subject to personal jurisdiction in the United States based simply on a website that garners significant traffic from the United States. *See, e.g.*, *AMA Multimedia, Ltd. Liab. Co. v. Wanat*, 970 F.3d 1201, 1210 (9th Cir. 2020)(finding no jurisdiction despite the fact that popular adult website received 20 percent of its traffic was from the United States because "the market for adult content is global," evidenced by the fact that the other 80% of ePorner's viewers were outside the United States,"); *Liberty Media Holdings, LLC v. Letyagin, et al.*, Civil No. 11-62107-CV-Williams (S.D. Fla. Dec. 14, 2011) ("Plaintiff contends that Defendant has 'considerable' web traffic originating from the United States and has presented an exhibit showing that fifteen percent of the visitors to the website are from the United States. Precedent, however, establishes that maintaining a website accessible to users in a jurisdiction does not subject a defendant to be sued there: those users must be directly targeted, such that the defendant can foresee having to defend a lawsuit...." (and cases cited therein)); *Fraserside IP, L.L.C. v. Youngtek Solutions, Ltd.*, 2013 U.S. Dist. LEXIS 3779 (N.D. Iowa Jan. 10, 2013) (allegations that "17 to 20 percent of visitors to Youngtek's websites are U.S. citizens"); *Fraserside IP L.L.C. v. Netvertising Ltd.,* 2012 U.S. Dist. LEXIS 180949 (N.D. Iowa Dec. 21, 2012) (allegations that "16.7% percent of HardSexTube's website's daily visitors are from the United States"); *Fraserside IP L.L.C. v. Letyagin*, 885 F. Supp. 2d 906 (N.D. Iowa 2012) (allegations that "eighteen percent of SunPorno's website's 2,500,000 daily visitors are from the United States); *Fraserside IP L.L.C. v. Youngtek Solutions Ltd.,* 2012 U.S. Dist. LEXIS 98041 (N.D. Iowa July 16, 2012) (allegations that "the EmpFlix.com website is allegedly visited daily by over 1,500,000 internet users worldwide with approximately 16.9 percent of the site's visitors coming from the United States. The TNAFlix.com website is allegedly visited daily by over

3,000,000 internet users worldwide with approximately 21.5 percent of the site's visitors coming from the United States.").

    II.    There Is No "Adult Video" Exception in Either The Constitution Or Section 230 of The Communications Decency Act.

In both its arguments concerning personal jurisdiction and its arguments concerning HML's immunity under §230 of the Communications Decency Act, Plaintiff suggests that the law is somehow different for HML because it operates an adult video website. *See* Opposition. p. 12 ("Defendant xHamster conducts business in an industry that is so susceptible to illegality that, absent properly structured websites designed to detect and bar illegality, they should predict that they could be haled into court in the country generating the highest individual percentage of their web traffic") and p. 25 ("there is no binding precedent supporting immunity for a pornographic company that illegally posts a surreptitiously recorded video of nonconsenting naked women. The CDA was not designed to insulate such egregious conduct.")  The proposition is absurd.

With respect to the personal jurisdiction argument, each of the cases cited in the preceding section – including one in which HML was a defendant – involved adult video websites and, in each, the court dismissed the case for a lack of personal jurisdiction. Clearly, the Due Process Clause of the Constitution does not contain a carve-out allowing the operators of adult websites to be haled into Court in the United States despite a wholesale absence of minimum contacts simply because they operate a website that the Plaintiff finds to be offensive.

The same holds true §230. Court after court has found that §230 immunity is available to website operators regardless of the *type* of conduct complained of. For example, in *Poole v. Tumblr, Inc.,* 404 F. Supp. 3d 637 (D. Conn. 2019), Plaintiff's ex-boyfriend posted nude photographs of her without her knowledge or consent to defendant's website and, even after she (and others) repeatedly reported the posting of the non-consensual photos, they continued to reappear on the

Tumblr website. *Id.* at 639. The Court allowed Tumblr's 12(b)(6) motion to dismiss, holding that "The facts of this case amount to state law claims 'seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content . . . .' … Although immunity pursuant to section 230(c)(1) is an affirmative defense, in this case 'the statute's barrier to suit is evident from the face of the complaint.'" *Id.* at 643 (citations omitted).

Similarly, in *Morton v. Twitter, Inc.,* 2021 U.S. Dist. LEXIS 66897, at *1 (C.D. Cal. Feb. 19, 2021), the Plaintiff was a model who posted photos of herself through her website. SpyIRL was an "online purveyor of pornography" that obtained the photos and posted them, without Plaintiff's permission, on Twitter. The Plaintiff sued Twitter and Twitter filed a motion to dismiss everything but the Plaintiff's federal copyright claim based on §230 immunity. The Court there dismissed all of the non-copyright claims, including the state right to publicity count, false light invasion of privacy count, and negligent and intentional infliction of emotional distress claims.

Indeed, even the most cursory survey of §230 cases disproves Plaintiff's contention that there is (or should be) a carve-out for so-called "egregious conduct." *See, e.g., Doe v. Backpage.com, LLC,* 817 F.3d 12, 29 (1st Cir. 2016)(holding that defendant was absolutely immune under §230 for creating a forum where rampant sex trafficking of minors occurred: "As a final matter, we add a coda. The appellants' core argument is that Backpage has tailored its website to make sex trafficking easier. Aided by the amici, the appellants have made a persuasive case for that proposition. But Congress did not sound an uncertain trumpet when it enacted the CDA, and it chose to grant broad protections to internet publishers. Showing that a website operates through a meretricious business model is not enough to strip away those protections. If the evils that the appellants have identified are deemed to outweigh the First Amendment values that drive the CDA,

the remedy is through legislation, not through litigation"); *Zeran v. Am. Online, Inc.,* 129 F.3d 327, 330-31 (4th Cir. 1997)(where Plaintiff complained that he was defamed when online posters fraudulently posed as him to post messages supporting terrorism, §230 immunity still applied because "Congress made a policy choice, however, not to deter harmful online speech through the separate route of imposing tort liability on companies that serve as intermediaries for other parties' potentially injurious messages"); *Doe v. MySpace Inc*., 528 F.3d 413, 420 (5th Cir. 2008)(website that Plaintiff alleged facilitated the sexual assault of 13 year-old girl by "failing to implement basic safety measures to protect minors" protected by §230 immunity because plaintiff's allegations "are merely another way of claiming that MySpace was liable for publishing the communications and they speak to MySpace's role as a publisher of online third-party-generated content"); *Dyroff v. Ultimate Software Grp., Inc.,* 934 F.3d 1093, 1095 (9th Cir. 2019)(defendant entitled to complete immunity under §230 despite allegations that defendant: " (1) allowed users to traffic anonymously in illegal, deadly narcotics and to create groups dedicated to their sale and use; (2) steered users to additional groups dedicated to the sale and use of narcotics; (3) sent users alerts to posts within groups that were dedicated to the sale and use of narcotics; (4) permitted users to remain active accountholders despite evidence that they openly engaged in drug trafficking and that law enforcement had undertaken related investigations; and (5) demonstrated antipathy toward law enforcement efforts to stop illegal activity on Experience Project, all of which resulted in the defendant being connect with a "drug dealer who sold him the fentanyl-laced heroin"); *Dart v. Craigslist, Inc.,* 665 F. Supp.2d 961 (N.D. Ill. 2009)(holding that § 230 immunity protected a website from claims that the website facilitated prostitution despite allegations that users routinely posted ads promising sex for money under the "erotic services" section of the website's classifieds); *M.H. v. Omegle.com, LLC*, 2022 U.S. Dist. LEXIS 4543, at *2-3 (M.D. Fla. Jan. 10, 2022)(website

that "allows users to communicate with other users randomly and anonymously in real time by text, audio, and video," which is "visited millions of times per day" received regular "reports of child sex trafficking and victimization through those websites." "Plaintiffs cite to articles reporting that numerous individuals have been charged with sex crimes against children for their use of Omegle and similar websites. (Id. at 41 n. 8-9). Omegle does not have a screening or verification process to ensure that minor children only use the site with parental guidance or consent — anonymity appears to be a primary appeal of the Omegle platform." Nevertheless, the Court held that Omeagle was entitled to §230 immunity in connection with claims brought on behalf of an 11 year-old girl who was pressured into sexual acts which were recorded through the website"); *Doe v. Kik Interactive, Inc.,* 482 F. Supp. 3d 1242, 1244 (S.D. Fla. 2020)(website "marketed to teenagers and young adults" entitled to immunity under §230 despite allegations of "multiple instances where adult users of Kik have used the service to contact and solicit sexual activity with minors, with some of those contacts resulting in death of the minors.")

### III. Plaintiff Is Not Entitled To Jurisdictional Discovery.

Finally, Plaintiff argues that this Court should allow her to take jurisdictional discovery so that she might support her claim of personal jurisdiction over HML. And, while Plaintiff is correct that this Court has the *discretion* to order such discovery in appropriate cases, this is not such a case. "Jurisdictional discovery is proper when the plaintiff has alleged sufficient facts to suggest the possible existence of personal jurisdiction. …'When a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery.'" *Pandit v. Pandit*, 808 F. App'x 179, 183 (4th Cir. 2020)(citations omitted). Moreover, it is Plaintiff's responsibility to specify for the Court what facts she believes jurisdictional discovery would reveal that would support an exercise of personal jurisdiction,

which the Plaintiff here has failed to do. *See, e.g., ALS Scan, Inc. v. Dig. Serv. Consultants, Inc.*, 293 F.3d 707, 716 n.3 (4th Cir. 2002)("ALS Scan has failed, however, to proffer any further facts that it could demonstrate that would be material to the limited jurisdictional ruling. …ALS Scan has not suggested that the jurisdictional facts asserted by Digital in its affidavits are inaccurate. At most, it made some conclusory allegations in support of its request for discovery. In these circumstances, we conclude that the district court did not abuse its discretion and was justified in concluding that further discovery would not aid resolution of the personal jurisdiction issue"); *Santiago v. Venezio*, 2021 U.S. Dist. LEXIS 86148, at *21 (D.S.C. May 5, 2021)(denying jurisdictional discovery where "Plaintiff has offered no factual allegations to suggest that discovery may yield information to support the exercise of general jurisdiction over Defendants.")

Whereas the Plaintiff has offered only speculation and conclusory allegations about HML's contacts with the United States; has not suggested that the jurisdictional facts asserted by HML in its affidavit are inaccurate; and has offered no specifics as to how jurisdictional jurisdiction would help it establish personal jurisdiction over HML, her request for jurisdictional discovery should be denied.

CONCLUSION

For the reasons stated hereinabove and in HML's Memorandum in Support of Motion for Judgment on the Pleadings, Plaintiff's Amended Complaint should be dismissed in its entirety with respect to Hammy Media, Ltd.

Respectfully Submitted,

/s/ **Hannah Rogers Metcalfe**
Hannah Rogers Metcalfe, Fed ID. 9943
Metcalfe & Atkinson, LLC

15

1395 South Church Street
Greenville, South Carolina 29605
(864) 214-2319

Evan Fray-Witzer (*pro hac vice*)
CIAMPA FRAY-WITZER, LLP
20 Park Plaza, Suite 505
Boston, Massachusetts 02116
Telephone: 617-426-0000
Facsimile: 617-423-4855
Evan@CFWLegal.com

Valentin D. Gurvits (*pro hac vice*)
Frank Scardino (*pro hac vice*)
BOSTON LAW GROUP, PC
825 Beacon Street, Suite 20
Newton Centre, Massachusetts 02459
Telephone: 617-928-1804
Facsimile: 617-928-1802
vgurvits@bostonlawgroup.com
frank@bostonlawgroup.com