**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**SPARTANBURG DIVISION**

| | |
|---|---|
| **JANE DOE,** | **Case No.: 7:21-CV-03193-DCC** |
| **Plaintiff,** | |
| **vs.** | |
| **COLLINS MURPHY, SHARON HAMMONDS, BRENDA F. WATKINS, LIMESTONE UNIVERSITY, MG FREESITES, LTD., d/b/a PORNHUB.COM, MG FREESITES II LTD., MINDGEEK S.A.R.L., MINDGEEK USA, INC., MG BILLING LTD., and HAMMY MEDIA LTD. d/b/a XHAMSTER.COM, TRAFFICSTARS LTD., WISEBITS LTD, XHAMSTER IP HOLDINGS LTD, WISEBITS IP LT.** | **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT, MG FREESITES, LTD.'S MOTION TO STAY** |
| **Defendants.** | |

**INTRODUCTION**

Come the Plaintiff, by counsel, and for their Response in Opposition to Defendant, MG Freesites, Ltd.'s (hereinafter" Pornhub") Motion to Stay (ECF No. 101), hereby state as follows:

**FACTUAL BACKGROUND**

Upon arrival, Limestone College agents directed Plaintiff to a men's locker room which was designated for her use both before and after the game. While in the subject locker room, Plaintiff showered and changed clothes such that they were in a state of nudity for periods of time.

The Plaintiff alleges that, unbeknownst to them, a Limestone College employee, Collins Murphy, secretly placed a video camera in the subject locker room prior to Plaintiff's arrival on campus. The secretly placed video camera recorded Plaintiff, without her knowledge or consent, while she was in a state of nudity. They further allege, as intramural/summer conference director,

Mr. Murphy had knowledge of sporting events on campus and had access to athletic facilities, such as the subject locker room, with Limestone College's knowledge and consent.

Plaintiff alleges that, during the course of his employment with Limestone College, Mr. Murphy secretly recorded multiple women changing clothes and taking showers in locker rooms between September 2012 and October 2013. At some point thereafter, the recording of the Plaintiffs was uploaded to various pornographic websites, including Pornhub. It is unknown at this time precisely when and where the videos were first distributed. However, it is known that they propagated to various sites and addresses on the internet by August of 2019, including sites owned and operated by Defendants MindGeek and Hammy Media, LTD. Two usernames associated with the uploads were "Lordfauger 18" and "cwdistribution." It has been determined though discovery that "Lordfauger 18" is the name of a "verified user" of PornHub, which is operated by MindGeek. On information and belief, "cwdistribution" is a registered username on the xHamster site.

On October 10, 2019, the Gaffney Police Department opened an investigation into the illegal video recordings which took place on Limestone College's campus. Although Murphy's name appears in investigation files obtained from Gaffney PD, there has been no indication that any charges have been brought against Murphy or that any indictment has been sought. No evidence suggests that any MindGeek affiliated site has been charged or is a subject of investigation and there is no evidence that any Hammy Media affiliated site is under investigation by the Gaffney PD. In fact, according to Gaffney PD documents, the Gaffney PD investigation is related to voyeurism, not trafficking. It therefore appears that the Gaffney investigation is related to the 2012 surreptitious recording of many victims but not to the subsequent distribution. Meanwhile, the Gaffney PD has done nothing to advance its "investigation" since 2019.

This action was filed in March of 2020 alleging, inter alia, violation of the Trafficking Victims Protection Reauthorization Act ("TVPRA").  The case has spent a great deal of time mired in motion practice and with the recent filing of the Plaintiff's Fifth Amended Complaint was poised to substantively advance.  On June 20, 2022, the Defendant MG Freesites, Ltd. moved to stay the action pursuant to 18 U.S.C. §1595(b)(1), which states as follows:

> Any civil action filed under subsection (a) shall be stayed during the pendency of any criminal action arising out of the same occurrence in which the claimant is the victim.

For the purposes of that provision, "a 'criminal action' includes investigation and prosecution and is pending until after final adjudication in the trial court."  18 U.S.C. §1595(b)(2).  However, despite Defendants' assertions, the Gaffney PD's open "investigation" into voyeurism does not meet the prerequisites for triggering the mandatory stay provision under §1595(b)(1) because it does not "aris[e] out of the same occurrence" as this civil case and it is unknown what victims underlie the "investigation." Therefore, MG Freesites' attempt to further stall the progress of this case are without merit and their Motion should be denied.

## ARGUMENT

For almost twenty years, Congress has consistently increased trafficking victims' ability to seek civil redress in federal court. Congress first created a civil cause of action for trafficking victims in 2003. Trafficking Victims Protection Reauthorization Act, Pub. L. No. 108–193, 117 Stat. 2875 (2003). The initial version of that civil remedy provision permitted a "victim" of a violation to bring a civil action against "the perpetrator." *Id*. § 1595(a).

In 2008, Congress revised section 1595, allowing victims to sue not just perpetrators, but also "whoever knowingly benefits" from participating in what they knew or should have known was a sex trafficking venture. *See* William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110–457, 122 Stat 5044 (Dec. 23, 2008). In 2018,

Congress enacted FOSTA-SESTA to ensure sex trafficking victims could bring civil cases against websites, as in this case, under 18 U.S.C. § 1595 unhampered by Section 230 of the Communications Decency Act. Allow States and Victims to Fight Online Trafficking Act of 2017, Pub. L. No. 115-164, § 2, 132 Stat 1253 (2018).

In creating a right of civil redress for victims of trafficking, Congress recognized a possibility for tension between a civil case and an ongoing criminal prosecution on the same grounds, and the Federal Government's interest in prosecuting traffickers. However, Defendants urge this Court to invoke the stay in a manner that is contrary to its plain language, its purpose, and intended application. The "investigation" referenced is not new. In fact, it began in 2019 and has made no progress since that time. Based on the complete lack of activity in this "investigation" two things are clear. First, this civil case will not interfere with it, and second, a stay based on this investigation risks imposing an indefinite delay leaving the victims with no hope to pursue the civil relief intended by Congress. Such a result would severely prejudice the victim Plaintiffs in defiance of the statute's true remedial purpose.

Therefore, the Court should deny the Defendants motion for three reasons. First, because there is no indication that this civil case sufficiently overlaps or will interfere with the investigation referenced, second, § 1595(b)(1) does not apply where one defendant is merely "a person of interest" and third, the motion is nothing more than a delay tactic intended to permanently disrupt this case.

## A.    The Requirements for a Section 1595(b)(1) Stay are not met.

Defendants have offered no evidence from which the Court can conclude that the investigation by the Gaffney police department (Gaffney PD) into voyeurism "aris[es] out of the same occurrence" as this civil action for sex trafficking against Mindgeek and others. The

materials regarding the "investigation" itself are so vague and lacking in meaningful information that it is impossible to determine the extent of the overlap between the criminal investigation and this civil case, if any. Furthermore, Defendants have failed to show that the investigation even involves their websites or the distribution of the abuse material there.

**1.      There is not enough information pertaining to the referenced "investigation" into voyeurism to determine if this case "aris[es from the same occurrence".**

The "open investigation" into voyeurism purported to give rise to a stay is so directionless and vague it is impossible to know whether it "aris[es] from the same occurrence" as this civil case.  Although Defendants make much of the "person of interest" status of Murphy, the reality is he is not even the subject of the investigation.  The investigation is into voyeurism – which the Gaffney PD only know happened at some point – by some unknown person – to many victims – some of which are unknown. *See* Dkt. 101-2 at 7; Exhibit E City Attny letter at 1 ("There is an ongoing criminal investigation regarding the incident that occurred at Limestone College . . . "); *see also* Dkt. 101-2 at 3; Exhibit A (" . . .5 different videos of 5 different female teams . . . the security division is unsure who would be responsible for the videos . . . ."); *see also* Dkt. 101-2 at 7, Exhibit E Chief of police affidavit at 2 (" . . . there are numerous victims, some of which are unidentified . . ."). It is unclear if Murphy will ever be formally investigated and if any formal charges would concern the victims in this case or some other victims from the "incident . . . at Limestone College." *Id.*   And there is absolutely no indication that any criminal action is contemplated against MindGeek.

Although Collins Murphy was named a person of interest 2019, Defendants have provided no evidence that the police ever interviewed Murphy, searched his home, seized or searched his electronic devices, or are actually investigating *him.*  This lack of evidence gathering belies any

claim that this is an investigation that overlaps with or will be disrupted by the civil case, which involves the exploitation of the videos by the Defendants.

Additionally, it is unknown whether the amorphous "investigation" even includes the victims in this case, a requirement under 18 U.S.C. § 1595(b)(1) (" . . . arising out of the same occurrence in which the claimant is the victim."). The police report speaks of "5 different video surveillance of 5 different female teams", *See* Dkt. 101-2 at 3, Exhibit A, and the Chief of Police states in his affidavit, "Also in this case, there are numerous victims, some of whom are unidentified . . . ". *See* Dkt. 101-2 at 7; Exhibit E. Based on the information provided by Defendants, it is impossible for the Court to determine if the victims in this civil case are at the center of the criminal "investigation".

Next, Defendants claim they received a search warrant on October 17, 2019, regarding an "investigation by the Gaffney Police Dept. in reference to Voyeurism and Invasion of Privacy" and concerning "uploader, alias 'cwdistribution.'" (Dkt. No. 101-1 at p. 3). Defendants assert that they provided unspecified information in compliance with the search warrant cryptically described as information "concerning the identity of a person that uploaded the content to the Website." *Id.* However, Defendants have not provided evidence that Collins Murphy was the uploader attached to username "cwdistribution." For example, they failed to attach a copy of the search warrant that they claim connects the dots between the "investigation" and this case. Although they try to imply it was Murphy because he was subsequently named a person of interest, this is mere speculation. *Id.* In fact, the statement made by Chief Skinner naming Collins Murphy as a person of interest references another civil suit where Murphy admitted to secretly recording different victims. *Id.* It stands to reason this was the impetus for naming Murphy a person of interest.

Furthermore, the Gaffney police have not requested any additional information from Defendants since 2019 nor brought any formal charges against Collins Murphy even after receiving the information "concerning the identity of a person that uploaded the content." It is just as likely that the information provided by Defendants was of little use to a seemingly stalled investigation that has not budged an inch in almost three years. Such tenuous information is insufficient to be the basis of a §1595(b)(1) stay, which clearly envisions an active criminal prosecution.

**2.      The voyeurism investigation does not sufficiently overlap with this civil case to trigger a § 1595(b)(1) stay.**

Even if reference to "the incident that occurred at Limestone College," was sufficiently specific, *see* Dkt. 101-2 at 7; Exhibit E at 1, the central issue of this civil case is the profound harm that occurred when the original abuse was broadcast to the world on the world's most visited pornography websites. Even if we assume the voyeurism investigation involves the original recording of Plaintiffs, this initial abusive recording, though significant, is collateral to the subsequent uploading by unknown persons and the monetization by Defendant Mindgeek and xHamster's websites. The online Defendants disseminated and monetized the Plaintiffs' abuse to millions of viewers around the world. Defendants have offered no evidence that the Gaffney police investigation involves the crime of the subsequent uploading of the Videos to Defendants' websites. The charges, as Defendants admit, relate to voyeurism and invasion of privacy which likely involve the original recording of many victims, but do not address the subsequent distribution. The incongruity is abundantly clear when just looking at the scope of the harm to the Plaintiffs.  The worldwide distribution, monetization, and sexual exploitation of the Plaintiffs is the heart of this case. The Gaffney police are not investigating this scheme. Therefore, this case

does not "aris[e] out of the same occurrence as the referenced "investigation" and § 1595(b)(1) does not apply.

**B.  Section 1595(b)(1) Does not Apply in this Case.**

**1.  The stay does not apply where one defendant is merely a "person of interest"**

The language of 1595(b)(1) imposes a stay during a "criminal action" defined as "investigation *and* prosecution." 18 U.S.C. § 1595(b)(1) (emphasis added). The plain language makes clear that civil cases shall not interfere with *active* criminal investigations – where an investigation is leading toward a prosecution.  The letter from the City Attorney and affidavit from the Chief of police for Gaffney speak of an "ongoing" investigation, but their actions belie their words.  For example, this letter was written six months ago and still there is no indication of active pursuit of any indictment.  Further still, the "investigation" is in the same place it was back in 2019.  Namely, that Collins Murphy is only a "person of interest" and has been since 2019.  There is nothing active about this investigation and it is clear from the plain language of the statute, and the case law applying it, that such a situation is not appropriate for a § 1595(b)(1) stay.

In every case cited by defendants where a 1595(b)(1) stay was granted, the subject of the criminal action was either actually indicted, charged with a crime, or the government intervened in the case and requested a stay. *See* A*ntonio-Morales v. Bimbo's Best Produce, Inc.*, No. Civ. A. 8:5105, 2009 WL 1591172, at *1 (E.D. La. Apr. 20, 2009) (Federal government moved to intervene and stay the civil proceedings and plaintiffs did not oppose the motion) *Ara v. Khan*, No. CV 07-1251(ARR)(JO), 2007 WL 1726456, at *1 (E.D.N.Y. June 14, 2007) (federal government sought leave to intervene in the case request a stay); *Doe v. Athens Cnty.,* 2:22-CV-00855, 2022 WL 1569979, at *1 (S.D. Ohio May 18, 2022) (sexual abuser was indicted); *Doe v. Mindgeek USA Inc.,* No. SACV2100338CJCADSX, 2021 WL 6618628, at *3 (C.D. Cal. Dec. 28, 2021) (sex

trafficker arrested and charged); *Lunkes v. Yannai*, 882 F. Supp. 2d 545, 548 (S.D.N.Y. 2012) (one

civil defendant found guilty of human trafficking but not yet sentenced); *Sharma v. Balwinder*,

No. 21-cv-00480-BLF, 2021 WL 4865281, at *1 (N.D. Cal. Sept. 29, 2021) (both civil defendants

charged in state criminal proceedings).

Such facts illustrate the contrast to this case where Collins Murphy has had no charges

brought against him, has not been indicted, is not a criminal defendant, and the local government

is not seeking a stay.  This case is more like *Kolbek v. Twenty First Century Holiness Tabernacle*

*Church, Inc.,* where the government had been quoted in a news article saying "This investigation

is not over," and denied production of files in response to a subpoena from one of the civil

Defendants. *2011 WL 5188424*, at *2.  However, no charges had been brought and the government

had done nothing formally to request a stay or inform the court of overlapping criminal

proceedings. *Id*.

Accordingly, the court found,

> It seems to the Court illogical, and contrary to the purpose of the statute, that a stay may
> be mandatorily imposed by force of a civil defendant who can only surmise as to whether
> a criminal investigation may be ongoing. . . . If such evidence were able to subject a civil
> case to an automatic stay, victims bringing actions under the TVPRA could often be
> denied justice, having their trial delayed indefinitely by a civil defendant who merely
> theorizes that an investigation might possibly be ongoing. Such an application of the
> statute would be nonsensical and contrary to the statute's purpose.

*Id.*

Ultimately the Court denied the stay holding, " . . . that the government may exercise its

rights under the statute to impose a mandatory stay if and when appropriate. Defendants, however,

may not mandate the imposition of a stay under the statute based on mere speculation that the

government may be involved in an ongoing investigation." *Id.*

In this case, the Defendants lean heavily on the second paragraph of the city attorney's

letter raising the law enforcement privilege against production, *See* Dkt. No. 101-1 at p. 3, but fail

to include the very next paragraph which says the City of Gaffney *will provide* the city's file with

an appropriate court order. The letter states in relevant part:

> The City is informed and believes that the material you are seeking **can be obtained from parties to the lawsuit, other third parties or other means** rather than requiring the City to produce confidential investigative materials. **In the event you feel you must obtain the City's file, the City requests that you obtain a Court Order protecting the City and its investigation and the privacy and rights of all parties potentially impacted** by your request for production.

Dkt. 101-2 at 7; Mayer Decl. at 1, Ex. E (emphasis added).

Clearly, the city attorney anticipates that discovery will proceed and that the very

information Defendants are seeking will be obtained through the evidentiary process. Accordingly,

*the case* proceeding will not jeopardize their "investigation." The city attorney and Gaffney PD

took issue only with the production of documents, **not the continued conduct of the case.** The

City's letter states the City "believes that *the production of materials . . .* will jeopardize its

investigation". *See* Exhibit A. (emphasis added). But even still, they are willing to part with the

file if they get the proper court order. The city attorney in no way says or implies that this civil

case will disrupt the "ongoing investigation."

As in *Kolbek,* here, if the mere status of one defendant as a "person of interest" with no

indictment or charges brought in three years can impose a stay, the victims could have their case

delayed indefinitely. Especially, since there is no statute of limitations for crimes in South

Carolina. Therefore, the Plaintiffs' urge this Court, like the Eleventh circuit did in *Kolbek*, to deny

the Defendants motion for stay.

**2.     The Stay is Intended to Help Prosecutors, not to Benefit Civil Defendants.**

The Defendants' stand on a letter from the City of Gaffney for the proposition that a

§1595(b)(1) stay is warranted. However, they completely mischaracterize it. The letter was not

written for the purpose of confirming an investigation exists nor does it contemplate or endorse a

stay premised on an investigation in any way.  The Defendants know the City did not intend to stay this case with their letter and yet they are trying to distort it for this purpose. Applying § 1595(b)(1) in this case would conflict with the clear purpose of the provision.

As the Eleventh Circuit explained, "the mandatory stay provision was added to § 1595 to alleviate the U.S. Department of Justice's concern that civil suits could hinder a domestic prosecutor's ability to try criminal cases unfettered by the complications of civil discovery." *Plaintiff A v. Schair*, 744 F.3d 1247, 1254 (11th Cir. 2014) (citing H.R. Rep. 108-264(II), at 17 (2003)) (emphasis and internal quotation marks omitted). It "was not designed to help a defendant delay a U.S. civil action for sex trafficking violations." *Id*. "There is no reason to believe that § 1595(b)'s stay provision was intended to protect an alleged sex-trafficking defendant's rights or interest in any way, much less in an important way." *Id.* at 1254-55; *see also Kolbek v. Twenty First Century Holiness Tabernacle Church, Inc.,* No 4:10-CV-04124, 2011 WL 5188424, at *2 (W.D. Ark. Oct. 31, 2011) (explaining that § 1595 "was not created to protect civil defendants," but to protect trafficking victims and "strengthen the government's ability to prosecute perpetrators."); *Lunkes v. Yannai,* 882 F. Supp. 2d 545, 549 (S.D.N.Y. 2012) ("The inclusion of the mandatory stay provision was meant to allay" DOJ's worry that civil discovery would disrupt its prosecutions).

Defendants attempt to argue that the current civil case will jeopardize the "investigation" into Collins Murphy[1], though the police do not assert this and there is no indication, as shown above, that the MindGeek Defendants are part of that investigation.  Indeed, Defendants cite to only one portion of the letter from the City of Gaffney *out of context* as explained above. *See* Dkt.

---

[1] Plaintiffs' dispute that the "investigation" referenced by Mindgeek in their motion is aimed at Collins Murphy.

No. 101-1. However, a reading of the entirety of the City Attorney's letter and the Chief of Police's affidavit shows that neither intend to stay this case nor believe the case will be stayed.

Furthermore, there is repeated concern for the victims. The Chief Police's affidavit explains that he is concerned for the best interests of the victims but has little information about this case. *See* Exhibit E, chief aff. At 1-2. ("Although I have not been provided additional information about the civil lawsuit . . . . in this case there are numerous victims, some of whom are unidentified and I feel the production of the materials sought is not in the best interests of the victims . . ."). In the city attorney's letter, he expresses that one of his concerns regarding production is the privacy of the victims. *See* city attorney letter at 1. ("In the event you feel you must obtain the City's file, the City requests that you obtain a Court Order protecting the City and . . . the privacy and rights of all parties potentially impacted . . ."). To turn the City's attempt to be conscientious into something that would severely harm the victims in this case is unconscionable.

A stay should not be granted on the basis of a simple letter from the City of Gaffney offering concern over production of their case file when they clearly know little about this civil case, are still willing to provide the materials with a court order, and are just acting to protect potential victims. Furthermore, the Defendants could have filed a motion for the Court to issue the Order requested from the City of Gaffney if they actually wanted the City's file. This Court should find, like the Eleventh Circuit found in *Kolbek*, 2011 WL 5188424, at 2, that the mere statement by the government that an investigation is ongoing and the denial of production of documents are not enough to trigger a stay under §1595(b)(1).

**C.    Defendants Motion to Stay is nothing more than an opportunistic attempt to turn the TVPRA against victims and permanently disrupt this case.**

The only Circuit Court to address the § 1595(b) stay provision is the Eleventh Circuit and that Court made clear that "the TVPA's mandatory stay provision in § 1595(b) was not designed

to help a defendant delay a U.S. civil action for sex trafficking violations." *Schair*, 744 F.3d at

1254 (emphasis added). Yet, delay is the only reason Defendants have moved for this stay on the

thinnest grounds imaginable.

It is evident Defendants' saw an opportunity to turn the TVPRA allegations against the

victims knowing the investigation they reference is going nowhere. In fact, the only thing clear

about the investigation is that it is not proceeding.  Defendants know that if this civil case is stayed

to await the conclusion of that investigation, it will be an extremely long and perhaps indefinite

stay. In the meantime, evidence will be lost, memories will fade, data will be destroyed[2], and

witnesses (some of which are international) may disappear.   And crucially, even if this

investigation did come alive and move forward, the evidence gathered pertaining to the original

recording will have little to no value in this civil case which centers around the distribution on

Defendants' websites.

Moreover, to Plaintiffs' knowledge there are four cases, including this one, currently

pending against Defendant Mindgeek alleging violations under the TVPRA, and in *every case*

MindGeek has attempted to block the lawsuits via motion to stay under 1591(b)(1). *See Mindgeek*,

2021 WL 6618628, at \*1; *Fleites v. MindGeek S.A.R.L*, CV2104920CJCADSX (C.D. Cal. Feb.

10, 2022); *Doe #1 v. MG Freesites, LTD*, 7:21-CV-00220-LSC (N.D. Ala. Feb. 9, 2022).

Furthermore, Defendant Mindgeek's company has just experienced a major overhaul with their

CEO and COO resigning[3] and a mass layoff of hundreds of employees[4]. It is hard to imagine that

---

[2] This case has significant issues related to the electronic storage of information (ESI). To stay this case without an ESI order in place would be severely prejudicial to the Plaintiffs.
[3] *See* https://www.forbes.com/sites/brianbushard/2022/06/21/pornhub-ceo-and-coo-resign-amid-blowback-over-nonconsensual-videos-of-minors/?sh=4865d2065219  (last accessed July 1, 2022).
[4] *See* https://layoffstracker.com/mindgeek-pornhub-parent-company-layoffs/ (last accessed July 1, 2022); *see also* https://variety.com/2022/digital/news/pornhub-layoffs-nonconsensual-sex-videos-1235300666/ (last accessed July 1, 2022).

any of the relevant witnesses and information related to the allegations against them will be intact

if this case is stayed. The Court should not validate such improper and prejudicial gamesmanship.

The Defendant's Motion for Stay should be denied.

Respectfully submitted,

**BELL LEGAL GROUP, LLC**

*s/J. Edward Bell, III*
J. Edward Bell, III (1280)
Joshua M. W. Salley (13214)
BELL LEGAL GROUP, LLC
219 North Ridge Street
Georgetown, SC  29440
TEL.: (843) 546-2408
FAX: (8430 546-9604
ebell@edbelllaw.com

**DOLT, THOMPSON, SHEPHERD & CONWAY, PSC**

Tyler S. Thompson (admitted Pro Hac Vice)
Liz J. Shepherd (admitted Pro Hac Vice)
Jordan A. Stanton (admitted Pro Hac Vice)
DOLT, THOMPSON, SHEPHERD & CONWAY, PSC
13800 Lake Point Circle
Louisville, KY 40223
Telephone: (502) 244-7772
tthompson@kytrial.com
lshepherd@kytrial.com
jstanton@kytrial.com

**ATTORNEYS FOR PLAINTIFFS**