IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| JANE DOE,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>LIMESTONE UNIVERSITY F/K/A LIMESTONE COLLEGE, COLLINS MURPHY, MG FREESITES, LTD., d/b/a PORNHUB.COM, and HAMMY MEDIA LTD. d/b/a XHAMSTER.COM,<br><br>　　　　Defendants. | Civil Action Number: 7:21-cv-03193-DCC<br><br><br><br>**DEFENDANT MG FREESITES LTD'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STAY PURSUANT TO 18 U.S.C. § 1595(B)** |

### INTRODUCTION

Plaintiff's memorandum in opposition to the Motion to Stay filed by Defendant MG Freesites, Ltd. ("MG Freesites") in this case is largely identical to the response filed by similarly-situated plaintiffs (represented by the same counsel) in a related companion case, *Does 1-9 v. Murphy, et. al*, case number 7:20-cv-00947-DDC ("*Murphy I*"). The parties in both cases have already agreed to consolidate *Murphy I* and this action, and the issues presented by the motions to stay in both matters are the same.[1] As set forth below, the opposition briefs in both cases do not raise any meaningful dispute; they each seek to sidestep the unambiguous language of Section

---

[1] MG Freesites is aware of only one significant update, which militates in favor of a stay: On September 12, 2022, Collins Murphy was sentenced to a significant prison sentence (2-20 years) for hiding cameras in women's dormitories at Alderson Broaddus University. *See, e.g.,* West Virginia News, "Maryland man alleged to have used cameras to peep on female ABU students sentenced to West Virginia prison" (available at https://www.wvnews.com/news/wvnews/maryland-man-alleged-to-have-used-cameras-to-peep-on-female-abu-students-sentenced-to/article_a1920a0c-32bc-11ed-9e0c-13c9b66222e1.html (last accessed Sept. 14, 2022)). Obviously, West Virginia law enforcement's investigation into Collins Murphy led to a successful prosecution and eventual *significant* sentence of up to two decades in prison. Plaintiff's unfounded objections – that South Carolina law enforcement's investigation into Collins Murphy for extremely similar allegations is not serious or viable enough to warrant clear statutory protection – should be disregarded.

1595(b) of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1591 *et seq*.

*****

As the Plaintiffs in both matters admit, Section 1595(b) *requires* the Court to stay any civil action that "arises out of the same occurrence and involves the same victims as the criminal action." There is no dispute that: 1) there is an ongoing investigation by the Gaffney Police Department ("Gaffney PD") into the surreptitious video recording of visiting students; 2) Plaintiffs are among the students who were unlawfully recorded; that the lead defendant in this case; 3) Collins Murphy, is a "person of interest" in the investigation; and 4) Plaintiffs' claims against MG Freesites arise from allegations that MG Freesites "participated" in a trafficking venture *with Murphy*, conspired *with Murphy* to create and publish videos of the Plaintiffs, and was engaged in an unlawful racketeering "enterprise" *with Murphy*. These admissions are sufficient to mandate a stay of this proceeding in both this case and *Murphy I*.

Unable to refute these basic facts, the Plaintiff in this case (like the Plaintiffs *in Murphy* I) offers a series of arguments plainly at odds with the statutory language, factual record, and applicable legal authorities. **First**, Plaintiff vaguely questions whether the Gaffney PD's investigation involves the same incident, even though the operative complaint (after several amendments) still alleges "an investigation into the illegal video recordings which took place on Limestone College's campus . . . remains ongoing." Third Am. Compl. ¶ 81. The Gaffney PD has explicitly confirmed the truth of Plaintiff's own allegation; its criminal investigation is centered upon "the subject of [the] civil lawsuit[.]" **Second**, Plaintiff claims, that even if the investigation did involve the same victims and circumstances, it does not "arise out of the same occurrence" as this lawsuit, because the investigation did not involve the distribution or publication

of the videos. But again, Plaintiff fails to mention that the reports filed by the Gaffney PD make direct reference to the distribution of the videos on the Pornhub website, and confirm that the investigation includes the "*publication*" of such videos online. This is no mere technicality; Plaintiff seeks to hold MG Freesites "jointly and severally" liable with Murphy, and alleges that MG Freesites and Murphy were participants in a joint sex trafficking "venture," an illegal RICO "enterprise," and civil conspiracy. **Finally**, Plaintiff attempts to rewrite the statute's definition of "criminal action," by claiming that it does not apply to investigations into a "person of interest," when the statute states, in no uncertain terms, that "criminal action" "includes investigations."

Lacking any support from the statute, Plaintiff resorts to the arguments made by plaintiffs in *Murphy I* about the purported "purpose" of the statute, the "intent" of the Gaffney PD, or hypothetical prejudice to Plaintiff. None of these arguments is sufficient to overcome the unambiguous statutory language, including because "intent" and "prejudice" are not relevant to the analysis and never mentioned in the statute or case law. The Gaffney PD is the only entity with the power to close its investigation. Meanwhile, Plaintiff has already proceeded with multiple case theories and only recently determined to proceed with a TVPRA claim. The mandatory stay provision is a clear consequence of adding that claim. If Plaintiff wishes to avoid any further delay, then Plaintiff may dismiss the TVPRA claim and proceed on other claims. But until either of those events occurs, Plaintiff may not proceed with the TVPRA action – and, specifically, may not seek to hold MG Freesites liable as a "participant" in Murphy's alleged criminal conduct – without also honoring the *mandatory* stay obligations placed on the Court in connection with the action including such claims.

For the reasons set forth in MG Freesites' Motion to Stay, the Court should issue a stay of this action and *Murphy I* pending the conclusion of the criminal proceeding related to this matter.

## ARGUMENT

### I.     A STAY IS MANDATED UNDER THE CIRCUMSTANCES

#### A.     There Is An Ongoing Criminal Investigation Arising Out Of The Same Occurrence At Issue In This Lawsuit.

Plaintiff concedes, as they must, that Section 1595(b)(1) is a ***mandatory*** stay provision. 18 U.S.C. § 1595(b)(1) ("Any civil action filed under subsection (a) ***shall*** be stayed during the pendency of any criminal action arising out of the same occurrence in which the claimant is the victim.") (emphasis added); *Sharma v. Balwinder*, 2021 WL 4865281, at *2 (N.D. Cal. Sept. 29, 2021) ("plain language of the TVPRA mandates a stay of the present civil action pending resolution of the criminal proceedings.")  Thus, the Court does ***not*** have discretion to deny a request for a stay when the civil action arises out of the same occurrence and involves the same victim(s) as the criminal action.  *Doe v. MindGeek USA Inc.*, 2021 WL 6618628, at *3 (C.D. Cal. Dec. 28, 2021) ("Simply put, § 1591(b) requires that a civil action be stayed if the victim of the criminal action is the same as the claimant in the civil action, and if the conduct underlying both cases arises out of the same occurrence."); *Lopez v. Davis*, 531 U.S. 230, 231 (2001) (noting that Congress's use of the mandatory term "shall" imposes "discretionless obligations").

There can be no serious dispute that the statutory requirements for a stay are met here. Plaintiff specifically alleges in the Third Amended Complaint that "the Gaffney Police Department opened an investigation into the illegal video recordings which took place on Limestone College's campus" and "[u]pon information and belief, the investigation is ongoing."  Third Am. Compl. ¶ 81.  The letter and affidavit from the Gaffney PD (appended to the Mayer Declaration filed originally in *Murphy I*) further confirm that the investigation involves the same circumstances that

give rise to this lawsuit, the same victims, and at least one defendant in this lawsuit (Collins Murphy):

> There is an ongoing criminal investigation regarding the incident that occurred at Limestone College (now University) in the City of Gaffney, ***which, apparently is the subject of your civil lawsuit***. ***In that investigation, Collins Murphy has been named a person of interest and I note that he is a Defendant in your civil suit.***

Mayer Decl. (ECF 101-2), Ex. E, p.1 (emphasis added). And, if there were any remaining doubt, it may be put to rest by the Gaffney PD's search warrant to MindGeek (*id.*), which sought information concerning the videos at issue in this case.[2] Accordingly, the circumstances here (and in *Murphy I*) fall precisely within the statute and a stay is mandated. *See Doe*, 2021 WL 6618628 at *4 (staying case involving alleged distribution of unlawful content where the creator of the content was the subject of a pending criminal proceeding.)

### B.  Plaintiff's Arguments Are Legally and Factually Incorrect.

In an effort to avoid the unambiguous statutory language, Plaintiff attempts to impose requirements for obtaining a stay that are not supported by the statute or the case law, while distorting the facts and ignoring their own allegations and judicial admissions. These arguments are identical to those made by Plaintiffs in *Murphy I*. Most notably, Plaintiff suggests that a stay may only be issued where there is an actual or pending indictment or prosecution. But the statute is absolutely clear that "investigations" are encompassed within the definition of "criminal action" and that a criminal action is "pending" until final adjudication. *Lunkes v. Yannai*, 882 F. Supp. 2d 545, 549 (S.D.N.Y. 2012) ("Final disposition [under § 1595(b)(2)] logically coincides with the

---

[2] Plaintiff copy/pastes an accusation from Plaintiffs' opposition in *Murphy I* that MG Freesites "failed to attach a copy of the search warrant[.]" Opp'n 6; *see also Murphy I* Opp'n (ECF 202) at 6. The search warrant ***and*** all of the materials produced in response to it were produced to Plaintiffs in discovery in *Murphy I*. Plaintiff (who is represented by the same counsel and has agreed to consolidate the two cases) is well aware of the contents of the search warrant. MG Freesites is prepared to provide the search warrant and any relevant materials to the Court, subject to an order protecting their confidentiality.

entry of the judgment in a criminal matter, which in turn occurs when a criminal defendant is sentenced."). Plaintiff also makes the unsupported claim that a stay must be sought by the local government – not a defendant. That also is incorrect. Courts routinely grant stay motions brought by a defendant. *See, e.g. Doe*, 2021 WL 6618628 at *4 (staying the action on the request of the defendant, without joinder by law enforcement); *Sharma*, 2021 WL 4865281 at *1 (same). If Congress had intended to require the existence of a criminal indictment or that a stay be sought by the government or law enforcement, it would have included these requirements in the statute.

*Plaintiff A v. Schair*, 744 F.3d 1247 (11th Cir. 2014), on which Plaintiff relies (Opp'n 11-13) illustrates this point – and undercuts Plaintiff's argument. In *Schair*, the plaintiffs filed suit in June 2011 alleging that Schair's actions violated the TVPRA. *Schair*, 744 F.3d at 1250. The next month, Schair moved to stay the case pursuant to Section 1595(b)(1) because there were two ongoing criminal investigations of his actions, including one by the United States Department of Justice ("DOJ"). *Id.* at 1251. "The district court found that, in light of the ongoing U.S. investigation, § 1595(b) mandated the entry of a stay" and in August 2011 "the district court entered an order staying the plaintiffs' civil action until the domestic criminal action ended." *Id.* Over a year later, in November 2012, DOJ informed Schair that they had affirmatively decided not to prosecute him, and their investigation *ended*. *Id.* Only following confirmation from DOJ that their investigation had concluded did the district court lift the mandatory stay. *Id.* The same result is required here.

Plaintiff's remaining arguments, also identical to those made in *Murphy I,* are equally unavailing.

***First***, Plaintiff makes the bizarre argument that the Gaffney PD's investigation is so "directionless and vague" that Plaintiff cannot determine whether that investigation is related to

this civil action. Opp'n 5. Indeed, Plaintiff goes so far as to assert that defendant Murphy "is not even the subject of the investigation." *Id.* But, as noted, the Gaffney PD's affidavit squarely ***confirms*** that the investigation involves the exact same underlying facts ***and*** the exact same perpetrator (Collins Murphy), stating that "the City of Gaffney has an ongoing criminal investigation *regarding the matter that appears to be the subject of this civil lawsuit*." Knight Affidavit (ECF 101-2, Mayer Decl. Ex. E), ¶ 4 (emphasis added). Similarly, in the police report, the Gaffney PD stated that the investigation arises from surveillance "between the dates of 09/2012-10/2013 of the females changing clothes and taking showers" and the videos "were uploaded on a Porn Hub website." Police Report (ECF 101-2, Mayer Decl. Ex. A); *see also* Police Report (ECF 101-2, Mayer Decl. Ex. B) (referencing Collins Murphy).

Plaintiff's suggestion that the Gaffney PD investigation might involve different victims or different videos is pure sophistry. In their Third Amended Complaint, Plaintiff specifically alleges that Murphy's recordings were created "between September 2012 and October 2013" (Third Am. Compl. ¶ 73), that Murphy "secretly placed a video camera in the subject locker room … and recorded the Plaintiffs" (*id.,* ¶ 71), and that these same recordings "were uploaded to defendant Pornhub and defendant xHamster" (*id.,* ¶ 76). Whether the Gaffney PD's investigation *also* involves recordings other than those at issue here is irrelevant.

***Second***, Plaintiff argues that the investigation by the Gaffney PD does not "overlap" with the claims against MG Freesites, because "Defendants have offered no evidence that the Gaffney police investigation involves the crime of the subsequent uploading of the Videos to Defendants' websites." Opp'n 7. This assertion is patently false. The first Police Report specifically references that "two months ago the 5 videos were uploaded on a Porn Hub website" (ECF 101-2, Mayer Decl. Ex. A), while the second one includes "publishing" pornography as among the "Criminal

Activities" being investigated. *Id.,* Ex. B. And, as noted, the Gaffney PD confirmed that its investigation involved the "incident" that "is the subject of your civil lawsuit." *Id.,* Ex. E.[3] The Gaffney PD was provided with a copy of the operative complaint in *Murphy I* (which is substantively identical to pleadings in this case), and concluded *on its own* that the criminal and civil matters overlapped to such an extent that disclosure of investigative material would "jeopardize" the investigation. *Id.*, Ex. E.

Plaintiff's attempt to draw a distinction between Murphy's alleged acts of creating nonconsensual recordings and MG Freesites' alleged publication or distribution of those recordings on its website also is inconsistent with Plaintiff's own allegations. The Complaint purports to directly tie Murphy's alleged conduct to that of MG Freesites. It even lumps both MG Freesites and Murphy together as "Defendants" in at least three of the causes of action: for violation of the TVPRA, violation of the RICO statute, and civil conspiracy. Plaintiff specifically alleges that MG Freesites "participated" in Murphy's sex trafficking "venture," acted in concert with Murphy, and was part of a RICO and civil conspiracy. Indeed, "Plaintiffs pray for judgment against each of the Defendants **Jointly** and **Severally.**" Third Am. Compl., Prayers For Relief (emphasis in original.)[4] Plaintiff cannot seek to hold MG Freesites liable for the alleged conduct of Murphy through conspiracy, agency, and joint venture allegations, while simultaneously claiming that an investigation into Murphy's alleged criminal conduct "is collateral" to their claims

---

[3] The lawsuit referenced in that letter was *Murphy I*, but as the parties have already agreed, *Murphy I* and this case involve substantially the same facts and circumstances.

[4] Other similar allegations are that "Defendants [Murphy, MG Freesites, and XHamster] … participat[ed] in what they knew or should have known was a sex trafficking venture" *(id.,* ¶¶ 105, 107, 108, 109); "Defendants formed the Enterprise[s] to execute and attempt to execute schemes to engage in the *creation* and dissemination of illegally obtained obscene footage of nonconsenting women" and "knowingly promoted, engaged in, created and published the illegal filming of women…" (*id.*, ¶ 116 (emphasis added)); and "[t]he Defendants conspired for the purpose of *creating* and trafficking sexually lewd content which directly invaded the Plaintiffs' rights to privacy…" (*id.*, ¶ 195 (emphasis added)).

against MG Freesites. Opp'n 7. In any event, the very same argument Plaintiff makes here was rejected by the *Doe* court, which found that "Plaintiff's allegations in the present action arise out of the same occurrence" ***even*** where the criminal defendant (who created the video content) was not a defendant in the civil action against MG Freesites, which allegedly distributed those videos. *Doe*, 2021 WL 6618628 at *4.

***Third,*** Plaintiff's claim that Section 1595(b)(1) does not apply because the Gaffney PD investigation is not sufficiently "active" lacks any legal or factual support. As noted, the statute requires only that there is an "investigation." It says nothing about the nature or progress of that investigation, and certainly does not require that someone has been charged with a crime. *See Antonio–Morales v. Bimbo's Best Produce, Inc.,* 2009 WL 1591172, at *1–2 (E.D. La. Apr. 20, 2009) (staying case based on government investigation alone); *Schair*, 744 F.3d at 1251 (staying the plaintiffs' civil action until DOJ investigation ended).

Importantly, Plaintiff does not offer any support for the claim that the investigation is inactive, other than expressing dissatisfaction that the criminal investigation has taken a long time. Contrary to Plaintiff's claim, the Gaffney PD has stated that their investigation is "ongoing," this is a "time-consuming and complex matter," and production of materials will "jeopardize its investigation." ECF 101-2, Mayer Decl. Ex. E. If West Virginia law enforcement's investigation into Collins Murphy on extremely similar allegations is any indication, this is indeed a "complex" criminal matter that may well mature into a successful prosecution and implicate an extremely significant (up to 20 years) prison sentence. *See, e.g.,* West Virginia News, "Maryland man alleged to have used cameras to peep on female ABU students sentenced to West Virginia prison" (available at https://www.wvnews.com/news/wvnews/maryland-man-alleged-to-have-used-

cameras-to-peep-on-female-abu-students-sentenced-to/article_a1920a0c-32bc-11ed-9e0c-13c9b66222e1.html (last accessed Sept. 14, 2022).

In fact, neither Plaintiff nor MG Freesites knows the exact status of the investigation – or how close the investigation is "leading toward a prosecution" (Opp'n 8) – because the Gaffney PD will not disclose materials from its investigatory file while the investigation is ongoing. It is not for Plaintiff to guess at whether the progress or viability of the Gaffney PD's "ongoing investigation" merits protection. Had the Gaffney PD believed that the investigation was concluded, would not lead to a criminal prosecution, or would not be potentially jeopardized by these lawsuits, it would have so stated in response to MG Freesites' subpoena in *Murphy I* (as the DOJ did in the *Schair* case). By the same token, whether the City of Gaffney "intended" to support a stay of this action is irrelevant. All that is relevant is that an investigation is ongoing and arises from the same occurrence as this action.[5]

The case on which Plaintiff relies, *Kolbek v. Twenty First Century Holiness Tabernacle Church*, 2011 WL 5188424 (W.D. Ark., Oct. 31, 2011), is not on point. In *Kolbek,* the defendant sought a stay of the proceeding based on a purported quote from an Assistant U.S. Attorney that was reported in a newspaper *two years* before the stay motion was brought. Notably, in *Kolbek* the U.S. Attorneys' Office ***never once*** confirmed the existence of a criminal investigation, including in response to a subpoena from the defendant. The Court therefore denied the stay ***not*** because a criminal prosecution had not yet been filed, but because the defendant "can only surmise

---

[5] Although whether and the extent to which discovery in the civil case might interfere with a criminal proceeding is irrelevant, contrary to Plaintiff's suggestion, the letter and affidavit from the Gaffney PD confirms that discovery in this case will, in fact, interfere with its investigation. Whether MG Freesites might be able to overcome the Gaffney PD's privilege assertion through motions practice misses the point. The Gaffney PD has stated that it will not produce those documents in response to a subpoena in light of its continuing investigation. Tellingly, Plaintiff, as a victim, has not contested the Gaffney PD's assertion that production will "jeopardize" the investigation. Plaintiff also has not waived any privacy rights related to the materials or agreed to stipulate that the production of the materials is in furtherance of Plaintiff's interests.

as to whether a criminal investigation may be ongoing" and sought a stay "based on *mere speculation* that the government may be involved in an ongoing investigation." *Kolbek*, 2011 WL at *2.  By contrast, the Gaffney PD explicitly *confirmed* in December 2021, including in a sworn Affidavit, that the investigation is ongoing and that discovery in this action could jeopardize the investigation.  Thus, MG Freesites' motion is not based on "mere speculation" or "theor[izing] that an investigation might possibly be ongoing."  *Id.* at *2.  *See also Doe*, 2021 WL 6618628 at *3 (finding *Kolbek* inapplicable because in that case "the civil defendants presented insufficient evidence that a pending criminal action existed.").

## II.     THE PUPORTED "PURPOSE" OF THE STATUTE DOES NOT OVERRIDE ITS PLAIN LANGUAGE

Because the statutory language clearly mandates a stay, Plaintiff recites the same policy arguments made by the *Murphy I* plaintiffs, arguing that the Court may ignore the statute because Section 1595(b) purportedly was not "intended" to benefit civil defendants.  Irrespective of the "purpose" of the statute, this argument is irrelevant.  Section 1595(b)'s stay is mandatory, not discretionary, and does not include exceptions based on the statute's "purpose."  Nor is there any indication Congress meant for courts take into account whether or not a civil defendant gains any short term benefit from a stay.  To be sure, Mr. Murphy would undoubtedly benefit in the long term if, due to these civil suits, he avoids a criminal investigation leading to lengthy prison sentence.  Accordingly, courts expressly have rejected the very same policy argument made by Plaintiff here.  *See Doe*, 2021 WL 6618628 at *3 (rejecting argument based on intent of statute because it "is contrary to the statute's clear, broad, and mandatory language"); *Sharma*, 2021 WL 4865281 at *2 (finding "unpersuasive" plaintiff's argument that "the legislative intent behind § 1595(b) was to preserve the integrity of criminal prosecutions, not to benefit criminal defendants");

*Lunkes*, 882 F. Supp. 2d at 549. As the Supreme Court has held, "where, as here, [a] statute's language is plain, the sole function of the courts is to enforce it according to its terms." *U.S. v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241 (1989) (quotation marks and citation omitted).

Plaintiff's reliance on *Schair* to support grafting a "purpose" requirement onto the statute is misplaced. As noted above, the district court in *Schair* **granted** the defendant's motion for a mandatory stay under Section 1595(b) and only lifted it once the DOJ's yearlong investigation was concluded. *Schair*, 744 F.3d at 1250–51. The defendant appealed the order lifting the stay, arguing that the existence of a foreign investigation was sufficient to mandate a stay. In affirming the district court's decision to lift the stay, the Eleventh Circuit did not suggest that the district court erred in issuing the stay based on the pending investigation. Rather, the court held that it lacked ***jurisdiction*** over an interlocutory appeal of the district court's subsequent decision to lift the stay. *Id*. at 1251. While the court stated that civil defendants do not have an important interest in staying TVPRA cases, it did so only in the context of the collateral order doctrine, under which the Supreme Court has explicitly required courts of appeals to consider whether interlocutory review would involve "an important issue." By contrast, Section 1595(b) neither requires nor permits consideration of the "importance" of the issues presented, and it does not authorize courts to balance the interests of the defendants against the interests of the plaintiffs.

### III.    PLAINTIFF'S CLAIMS OF PREJUDICE AND BAD FAITH ARE UNSUPPORTED AND IRRELEVANT

Plaintiff repeats an accusation made by plaintiffs in *Murphy I* that MG Freesites is "opportunistic" or engaged in litigation gamesmanship. The accusations are incorrect, unsupported, and in any event, irrelevant. Whether a stay is required under the statute is not dependent on the purported motives of the movant. Regardless, the reality is that MG Freesites has never sought to delay this action, nor *Murphy I*. Plaintiff has filed three amended complaints,

and added additional foreign defendants (who have not yet appeared). MG Freesites did not seek a stay of this action until Plaintiff (following the example of the *Murphy I* plaintiffs) expanded this lawsuit to include claims that MG Freesites was not merely liable for negligence, but was civilly liable as a participant and co-conspirator in Murphy's ***criminal*** sex trafficking "venture."

Plaintiff certainly was aware (or should have been aware) that the TVPRA is first and foremost a criminal statute and that Section 1595 contains a mandatory stay provision. Plaintiff also was aware that a criminal investigation was pending, and alleged as much in the Third Amended Complaint. Nevertheless, Plaintiff (and Plaintiff's increasingly large team of highly experienced counsel) made the informed decision to add a TVPRA claim into the case. Thus, to the extent a stay will delay the case, this was the choice that Plaintiff's made when they amended their complaint to include allegations of criminal conduct. If Plaintiff now wishes to avoid the procedural requirements of Section 1595(b), they may dismiss the TVPRA claim.[6] However, Plaintiff cannot take advantage of some aspects of the TVPRA while disregarding other of its core statutory provisions.

Finally, Plaintiff's claims of prejudice (such as that evidence will be lost or destroyed if the case is stayed) are not just irrelevant, but also are overblown and unsupported. Delay or prejudice is not a consideration under the statute. But even if it was, MG Freesites does not seek to stay the case indefinitely; only until the Gaffney PD advises the parties that its investigation has concluded or after a criminal indictment and sentencing is complete. As for Plaintiff's concerns

---

[6] Plaintiff's accusation that "this case has spent a great deal of time mired in motion practice" is simply untrue. Opp'n 3. Plaintiff has evidently copied wholesale the opposition filed by Plaintiffs in *Murphy I*; and mistakenly relays the procedural history of that case as if it were this one. For example, *this action* was not "filed in March 2020," *id.*, but rather September 2021, and there has been little motions practice in this case. As for *Murphy I*, while MG Freesites filed a Motion to Dismiss early in the *Murphy I* case (in 2020), a decision on that Motion was delayed because the *Murphy I* Plaintiffs amended their Complaint ***five times*** in response to the Motion. Those amendments required MG Freesites to re-file its Motion on three separate occasions. Other than its Motions to Dismiss in *Murphy I* and this Motion to Stay, MG Freesites has not filed any substantive motions in this case.

regarding evidence, MG Freesites remains (and will continue to remain) compliant with its obligations to preserve evidence while this case is pending.[7]  Thus, there is no cause for undue concern about an additional delay.  In fact, this case already has been pending for a year, and involves conduct that took place many years ago (*i.e.*, in 2012 and 2013).  A brief additional delay while the Gaffney PD concludes its investigation is appropriate and not unduly prejudicial.

## CONCLUSION

For the foregoing reasons, the Court should stay this action pending the conclusion of the criminal investigation into the Videos.

Respectfully submitted,

| | |
|---|---|
| DATED: September 15, 2022 | TURNER, PADGET, GRAHAM AND LANEY, P.A. |
| Columbia, South Carolina | |
| | By:  */s/ Mark Goddard* <br> Mark Goddard \| Attorney ID: 09691 <br> email \| mgoddard@turnerpadget.com <br> direct \| 803-227-4334 <br><br> 1901 Main Street, 17th Floor <br> Columbia, SC 29201 <br><br> J. Kenneth Carter \| Attorney ID: 05108 <br> email \| kcarter@turnerpadget.com <br> direct \| 864-552-4611 <br><br> Post Office Box 1509 <br> Greenville, South Carolina 29602 <br> facsimile \| 864-282-5993 <br><br> *Attorneys for Defendant MG Freesites Ltd* |

---

[7]  By contrast, Plaintiff offers no basis for their claim that evidence gathered by the Gaffney PD "will have little to no value."  Opp'n 13.