IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

SPARTANBURG DIVISION

| | | |
|---|---|---|
| Jane Does 1-9, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| vs. | ) | 7:20cv00947 |
| | ) | |
| Collins Murphy, Sharon | ) | |
| Hammons, Brenda F. Watkins, | ) | |
| Limestone University, MG | ) | |
| Freesites, LTD d/b/a | ) | |
| Pornhub.com, MG Freesites II, | ) | |
| LTD, MindGeek S.A.R.L., | ) | |
| MindGeek USA, Inc., MG Billing | ) | |
| LTD., and Hammy Media LTD | ) | |
| d/b/a xHamster.com, | ) | |
| Trafficstars LTD, Wisebits | ) | |
| LTD, xHamster IP Holdings LTD, | ) | |
| Wisebits IP LTD, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| | ) | |
| Jane Doe | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | 7:21cv03193 |
| | ) | |
| Limestone University F/K/A | ) | |
| Limestone College, Collins | ) | |
| Murphy, MG Freesites LTD d/b/a | ) | |
| Pornhub.com and Hammy Media | ) | |
| LTD d/b/a xHamster.com, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

```
                                      )
Jane Doe 1, Jane Doe 2, John          )
Doe 1, and John Doe 2                 )
                                      )
                Plaintiffs,           )
             vs.                      )   7:22cv03576
                                      )
Collins Murphy; Limestone             )
University, a/k/a Limestone           )
College, Brenda F. Watkins,           )
Sharon Hammonds, MindGeek             )
Holding a/ka/ MindGeek USA            )
Inc. a/k/a MG Holdings USA            )
Corp. d/b/a Pornhub.com, and          )
Hammy Media LTD. d/b/a                )
xHamster.com,                         )
                                      )
                Defendants.           )   August 16, 2023
_____  )
```

                    TRANSCRIPT OF MOTIONS HEARING

            BEFORE THE HONORABLE DONALD C. COGGINS, JR.
              United States District Judge, presiding

A P P E A R A N C E S:

For Plaintiffs:              Peter Andrew Gentala, Esquire
                             National Center on Sexual
                             Exploitation
                             1201 F. Street, Suite 200 NW
                             Washington, DC  20004

                             Joshua Salley, Esquire
                             Bell Legal Group
                             P.O. Box 2590
                             Georgetown, SC  29442

For Defendants Hammy Media LTD:

                             Evan Fray-Witzer, Esquire
                             Ciampa Fray-Witzer, LLP
                             20 Park Plaza, Suite 505
                             Boston, Massachusetts  02116

For Defendant MG Freesites:  Marc E. Mayer
                             Mitchell Silberberg and Knupp LLP
                             2049 Century Park East 18th Floor
                             Los Angeles, CA 90067

ALSO PRESENT:

Hannah Rogers Metcalfe, Esquire
Valentin D. Gurvits, Esquire
Mark Brandon Goddard, Jr., Esquire
Tyler Smyth Thompson, Esquire
Liz Jeannette Shepherd, Esquire
Wesley D. Few, Esquire

Teresa B. Johnson, CVR-M-CM, RVR, RVR-M
U.S. District Court Reporter
250 East North Street, Room 3401
Greenville, SC 29601

Proceeding recorded by stenomask, transcript produced by
computer-aided software.

4

Motions to Dismiss - MG Billing LTD, MindGeek S.A.R.L,
MindGeek USA, Inc.

1                    <u>P R O C E E D I N G S</u>

2            (Court is called to order on Wednesday, the 16th day of

3     August 2023, at 2:00 p.m.)

4            **THE COURT:**  All right.

5            We're here this afternoon in the case of, or cases,

6     involving Does versus Murphy, et. al., which is 20cv947, and

7     Doe versus Limestone University, et. al., which is 21-3193.

8     And we have yet another grouping that will join us to talk

9     about status after we take care of these motions.

10           Motions in this case that are pending this afternoon,

11    if I have gotten these correct, are a motion for judgment on

12    the pleadings by Defendant Hammy Media.  I note that in the --

13    this is in the 20-947 case.  In the 21-3193 case, there's a

14    renewed motion for judgment on the pleadings.  But I believe

15    it's largely identical.  We also have a motion to dismiss for

16    failure to state a claim and a motion to dismiss for lack of

17    jurisdiction filed on behalf of MG Billing, LTD, MindGeek

18    S.A.R.L. and MindGeek USA Inc.  Have a motion to dismiss for

19    lack of jurisdiction and for failure to state a claim filed by

20    Trafficstars LTD.

21           We have a motion to dismiss for lack of jurisdiction

22    filed by xHamster IP Holdings LTD.  We have a motion to dismiss

23    for failure to state a claim and a motion to dismiss for lack

24    of jurisdiction by Wisebits IP LTD; a motion to dismiss for

25    failure to state a claim and a motion to dismiss for lack of

Motions to Dismiss - MG Billing LTD, MindGeek S.A.R.L,
MindGeek USA, Inc.

1    jurisdiction filed by Wisebits LTD.  And I believe that covers

2    the motions that I have.

3            Now, normally, if we didn't have so many, I would

4    turn you loose on these motions in turn.  But if we do that,

5    and particularly in light of what you have so graciously

6    inundated me with, we're liable to be here until 10 o'clock

7    tonight.  And I don't think any of us wants to do that.  So let

8    me see if we can short-circuit a little bit.  Because all of

9    these -- we do have one motion for judgment on the pleadings.

10   But pretty much all the rest of them are jurisdiction and

11   12(b)(6) issues.

12           It's my understanding from the amended complaint,

13   which I think now is the Fifth Amended Complaint if I recall

14   correctly, the film of these young ladies was uploaded to

15   Pornhub, which I believe is MG Freesites, and xHamster, which

16   is Hammy Media.

17           As to these other entities, which are MG Freesites II

18   LTD, MindGeek S.A.R.L, MindGeek USA, Inc, MG Billing LTD, and

19   Trafficstars, Wisebits and Wisebits IP and xHamster IP

20   Holdings, all of those, I believe, have allegations related to

21   alter ego and joint and several liability and some type of

22   relationship.  Since those are more tenuous in their

23   connection, let's -- let's start with those first.

24           And we'll start with the MG Billing, MindGeek crowd

25   on those related ones and then we'll -- we'll get to

Motions to Dismiss - MG Billing LTD, MindGeek S.A.R.L.,
MindGeek USA, Inc.

1    Trafficstars, Wisebits, and those.  And I'll let you give me

2    just a very brief overview on jurisdiction and failure to state

3    a claim.  And then I'll hear from the plaintiff.  And what I

4    really -- I know what they're going to tell me.  What I really

5    want to hear from the plaintiff is, you know, what facts we

6    have that establish some type of alter ego or some type of

7    joint liability.  Because as you-all know, under 12(b)(6), it's

8    not enough just to make some legal conclusion, throw something

9    up against the wall and see if it sticks.  We need to have some

10   facts as to what those folks had to do with this.

11           So let me hear from the defense first.  And then,

12   I'll hear from the plaintiff.

13           **MR. MAYER:**  Thank -- thank you, Your Honor.

14           Marc Mayer on behalf of the MindGreek entities.  I

15   think the -- the issue as far as we're concerned is fairly

16   straightforward.  MG Freesites is the company that operates the

17   Pornhub website.  MG Freesites is not contesting jurisdiction.

18   We are in the case, and we've been in the case for quite a

19   while.  The issue we have is these four other entities really

20   have either no relationship to -- to the Pornhub website and

21   there are insufficient allegations, as we see it, of an alter

22   ego relationship.  So just a very quickly, and I won't spend a

23   lot of time, but just very quickly through these entities.

24           MG Freesites II is -- no longer exist.  Its assets

25   have been absorbed into MG Freesites.  So -- so they are -- are

Motions to Dismiss - MG Billing LTD, MindGeek S.A.R.L.,
MindGeek USA, Inc.

1    obviously not a proper party.

2          MG USA is a California company that's involved in

3    pay-per-view and cable viewing of premium -- what they call

4    "premium content," which is the professionally-produced

5    content, which is not at issue in this case.  It's a separate

6    part of the business.  It's the hotels and -- and -- and so

7    forth.  So they have really nothing to do with the case.

8          MG Billing handles the billing for those premium

9    sites, again, for the professionally-produced content.  They

10   have nothing to do with the Pornhub website.

11         And the last one is MG -- MindGreek S.A.R.L., which

12   is the parent holding company.  They are a Luxembourg company.

13   I understand that they do not have employees.  They have an

14   office in Luxembourg.  And they are simply a holding company.

15         MG Freesites, which is, we believe the proper

16   defendant, is a -- a real company.  It's got bank accounts.

17   It's adequately capitalized.  There's a full observation of

18   corporate formalities.  And -- and as I mentioned, we believe

19   that there's really no basis for any sort of alter ego

20   allegation.  So the -- the --

21         **THE COURT:**  Let me ask this:  On the holding company,

22   does it have any financial assets?  Or is it just on -- on

23   paper?

24         **MR. MAYER:**  My understanding is, it's just a holding

25   company for the other subsidiaries.  And so the relationship

Motions to Dismiss - MG Billing LTD, MindGeek S.A.R.L,
MindGeek USA, Inc.

1    between MG -- MindGeek S.A.R.L. and MG Freesites is just a

2    parent subsidiary holding company and a subsidiary company.

3    They don't --

4            **THE COURT:**  But -- but the assets are in MG

5    Freesites, correct?

6            **MR. MAYER:**  The -- the -- the assets, including those

7    assets related to the operation of the Pornhub website, are all

8    with MG Freesites.  That's correct.

9            **THE COURT:**  All right.

10            Mr. Salley, let me hear from you on these parties.

11            **MR. SALLEY:**  Yes, Your Honor.  May it please the

12    Court?

13            **THE COURT:**  Yes, sir.

14            **MR. SALLEY:**  For the purpose of explaining our

15    process, we put together a little presentation to kind of

16    understand information.  If it's okay, we can present some of

17    the slides for you.

18            **THE COURT:**  Sure.

19            **MR. SALLEY:**  Tim, if you could start with No. 21.

20            So first and foremost, Your Honor, it's not just that

21    our allegations -- the plaintiffs don't allege that these

22    entities are separate and that they are kind of fulfilling

23    different parts of the process in they endeavor -- in their --

24    they put forth this transmission against our clients.  It's

25    more so that these entities were created for the specific

9

Motions to Dismiss - MG Billing LTD, MindGeek S.A.R.L.,
MindGeek USA, Inc.

1    purpose of separating liability in order for them to --

2          THE COURT:  Let me ask you something.  I mean, in

3    many industries, separate subsidiaries are created for

4    different purposes for -- for exactly that reason.  There's

5    nothing illegal about that.

6          MR. SALLEY:  So inherently, there's nothing illegal.

7    However, in this case, each of these entities based off of the

8    information that we were able to receive -- now, granted, we

9    did serve the defendants with some discovery to help establish

10   some of these facts so we can get a better picture of how this

11   corporate entity operates; however, we didn't -- we weren't

12   able to receive those responses from the defendant.  So we were

13   ultimately left to our own investigation, which revealed --

14         THE COURT:  Let -- let me ask you this -- and I'm

15   going to tell all of you right now, I've tried to absorb all of

16   this.  Y'all lived with this case for two years; I haven't.  If

17   I get anything wrong, don't be bashful; tell me it's wrong.

18         But I seem to recall that with respect to -- I think

19   it's the holding company, MindGeek S.A.R.L., you submitted

20   something in one of your attachments that indicated there's

21   something like 59 subsidiaries.  Well, you know, we've hit

22   four.  Am I going to see the other 55 over the next year or so?

23   I mean, how -- if -- if -- if the only thing that causes them

24   to be a viable party here is because they're under the same

25   umbrella, then you know, what's -- what's to keep you from

Motions to Dismiss - MG Billing LTD, MindGeek S.A.R.L.,
MindGeek USA, Inc.

1    naming everybody?  I mean, it's hard for me to see how premium

2    streaming service has -- has anything to do with Pornhub and

3    anything that may be uploaded to -- to Pornhub.  So do you have

4    any facts that --

5             **MR. SALLEY:**  Certainly.

6             So, first and foremost, we're not alleging that these

7    individual entities are just related in some way that's not

8    specific to the claims that have been brought in this case.  We

9    specifically allege that each individual entity, part of this

10   huge conglomerate, take some specific part in the furtherance

11   of this endeavor.

12            And so, first and foremost, if you go to --

13            You can pull up next slide, No. 22.

14            So if we look here, like you mentioned, MindGeek

15   S.A.R.L., the holding company as you were, they represent the

16   majority ownership of all of these entities that we've named as

17   defendants in this case.

18            Now, we've submitted as an exhibit to our response in

19   opposition a financial statement, which does include several

20   other -- I think it's about 48 other entities that are also

21   included within this conglomerate.  At the time and through our

22   own investigative process, we were able to identify these

23   specific defendants to be directly related to the Pornhub

24   industry.  Based off of our understanding and based off of what

25   we've been told by opposing counsel, this is the scope of these

Motions to Dismiss - MG Billing LTD, MindGeek S.A.R.L,
MindGeek USA, Inc.

1    entities.  However, I can't guarantee you that through

2    discovery may not -- we might discover some more information

3    that would link these groups to the, you know, process that

4    we've bought forth to the Court.

5           At this time, without the opportunity to even

6    investigate some of the facts in relation to how these -- how

7    these companies were set up, how they operate, what information

8    has flowed through, where the money goes, we have not had an

9    opportunity to investigate any of that.  And so at this point

10   and at this stage of the game based off of what we have

11   alleged, we believe these facts are sufficient.

12          **THE COURT:**  Do you have any facts that show that

13   these companies have, like, interlocking management or

14   directors or --

15          **MR. SALLEY:**  So --

16          **THE COURT:**  -- or direction?  Or is it just simply

17   the fact that this is a conglomerate and -- and -- and you

18   can't really tell at this point how the cash flows and you want

19   to ask more questions about that?

20          **MR. SALLEY:**  Your Honor, first, we've -- we've got

21   information in evidence to support that many of the key

22   individuals that operate the MindGeek S.A.R.L. entity are also

23   directly related with the coming and goings of the subsequent

24   businesses.  For example, the consolidation and liquidation of

25   the MindGeek Freesites II, if you look at exhibit -- bear with

Motions to Dismiss - MG Billing LTD, MindGeek S.A.R.L.,
MindGeek USA, Inc.

1    me, Your Honor.

2          It is the transfer agreement.  It is signed by

3    both -- it's signed by the same person for both companies.

4    That's clear indication to us that these two companies aren't

5    different.  It's one person who's using, you know, two

6    corporate entities to exercise one concerted effort.  And so as

7    we go through --

8          If you can hit the next slide for me, please.

9          Like I mentioned -- mentioned earlier, we've got this

10   consolidated financial statement that establishes the breakdown

11   of all of the different entities that are within the MindGeek

12   umbrella.  These are all under the one group of MindGeek.

13   MindGeek advertises itself as a whole under this umbrella.  And

14   it's part of its business model to utilize the skills and tools

15   to facilitate the sex trafficking that we've alleged in the

16   complaint.

17         If you'll go to the next slide.  You can keep going.

18         So like you mentioned, these are several companies

19   that are all related to the MindGeek.  As you indicate, there

20   are MindGeek Freesites II, MG Billing, MindGeek USA.  These are

21   all part of the overall business structure and how they

22   generate revenues.

23         Now, if you look closely --

24         If you go ahead to the next slide for me, please.

25         So the revenue recognition, generally speaking, is

Motions to Dismiss - MG Billing LTD, MindGeek S.A.R.L,
MindGeek USA, Inc.

```
1    all from ad revenue, which is directly from the porn websites

2    in which they then transient and sale ads and representations.

3              Now, specifically here in South Carolina, they've

4    made several recognitions -- and -- and consentience with that.

5              The next slide for me, please.

6              So if you look here.  Just by volume, you know, the

7    United States is the largest trafficked destination for this

8    company.

9              If you go to the next slide for me, please.

10             Specifically, in South Carolina, they've collected

11   data to review how long individual viewers in South Carolina

12   are viewing their contents specifically for the purpose to

13   target and sell ads.

14             Continue.

15             They've even taken a look at some of the legal

16   transactions that are happening in South Carolina related to

17   their industry.  Their concern is that, you know, pornography

18   was going to be blocked on state computers in the state.  And

19   so they wanted to kind of get out there to their viewership to

20   help have South Carolinians push back against that.

21             THE COURT:  Well, I mean, if I -- I don't want to

22   stop you unnecessarily, but I also don't want to waste time.

23   MG Freesites AKA Pornhub, they're not contesting jurisdiction.

24   They're in the case.  You've got them.  You've got all of this

25   information about that.
```

Motions to Dismiss - MG Billing LTD, MindGeek S.A.R.L.,
MindGeek USA, Inc.

1              What I'm trying to figure out is, other than the fact

2      that there may be some common reporting of revenue under a --

3      a -- a financial statement, what do you have that shows that

4      like the subscription services and streaming services and these

5      other related media services that those subsidiaries, those

6      companies, have anything to do with this?

7              **MR. SALLEY:**  Well, first and foremost, Your Honor, as

8      I mentioned, Pornhub doesn't represent itself as multiple small

9      companies that handle various different aspects of the

10     pornography industry.  They hold themselves out as an umbrella

11     of Pornhub, the largest and most successful pornography company

12     known -- known to man.  Each of these individual entities

13     aren't independently identified as this is the Pornhub that's

14     solely for, you know, movies.  This is the Pornhub that's

15     solely for, you know, paid content.

16              Pornhub in and of itself is what drives people.  It's

17     what drives the business.  It's the name.  It's the marketing

18     tool in which they utilize to gain financial success.

19              And so it's through using content like the

20     search-to-see film footage that was then uploaded, which they

21     then marketed.  They created their own tags through the

22     services and pieces of technology that they developed to

23     advance that.

24              One of the biggest things when you pull up MindGeek's

25     website is they pride themselves on SEO technology, the ability

Motions to Dismiss - MG Billing LTD, MindGeek S.A.R.L,
MindGeek USA, Inc.

1    to provide high access to billions of viewers or billions of

2    searchers around the world.  Right?  And part in doing so is

3    their ability to take that technology and apply it through the

4    rest of their -- their business.

5            And essentially, what they're doing is they're taking

6    that specific technology to facilitate the wrongdoings that

7    taken place in this case.  And -- and it's -- they're not

8    unilateral in that -- in that endeavor.

9            If we go to Slide 28 and 29 -- excuse me. I said 34.

10   31.  31.  Sorry.

11           So again, on MG Freesites' website, they inform you

12   that they're collecting your information and your user data,

13   right?  But MG Freesites is not the entity that collects and

14   uses that data to sell ads.  They, then, transfer that

15   information to their -- to -- to the -- to their advertising ad

16   revenue arm such that they can use that information to then

17   create their unique tags, to create the specific targeted

18   geolocated ad marketing to South Carolinians to maintain some

19   of the software and server information that they've collected

20   from users to determine what's trending and what's not

21   trending, how they can use that information to better their

22   revenues and their sales.

23           So ultimately, the two are -- are working -- they

24   like to present as they're independently of one another.  But

25   they're working together through that line of shared

16

Motions to Dismiss - MG Billing LTD, MindGeek S.A.R.L.,
MindGeek USA, Inc.

1    information and facilitation.  So yes -- so -- so -- and --

2    and --

3           You want to add?

4           **MR. GENTALA:**  Your Honor, my name is Peter Gentala.

5    And I'm with the National Center on Sexual Exploitation.  And

6    just to speak specifically to the premium services, I -- you

7    know, I hear counsel that there's a premium area that's

8    separated and there might be entities that are there for it.

9    But according to the allegations in the complaint, like

10   paragraph 45, these Jane Doe plaintiffs were victimized.  It

11   was placed on Pornhub.  And then, it was distributed out across

12   all of the Pornhub sites.  Some users of Pornhub might decide

13   that they want to access through the premium service.  Others

14   might use the free version.  But it's still part of their

15   victimization overall.

16          The two forms of revenue that we're aware of related

17   to the content on the site, the reason why these spy cam videos

18   would have been placed there in the first place, are

19   advertising revenue and then previous -- premium service

20   revenue.  So the fact that some of the people who would go and

21   access this abuse video are coming -- coming there and paying a

22   premium to be on Pornhub to see it linked to other videos is

23   still relevant to this case and still part of the allegations

24   that we've made related to how the abuse has taken place in the

25   United States.

Motions to Dismiss - MG Billing LTD, MindGeek S.A.R.L,
MindGeek USA, Inc.

1         Does that -- is there anything else related to -- I

2    heard you asking about premiums.

3         **THE COURT:**  Yeah.  I understand there's an allegation

4    there.  But is there -- is there a good faith factual basis

5    that anybody accessed these videos through the premium service?

6         **MR. GENTALA:**  Well, Your Honor, we haven't had

7    discovery yet.  So we could find out, if we have the

8    opportunity to ask that question of Pornhub, how many users are

9    free users that are just seeing advertisements, and that's the

10   way Pornhub is able to have revenue in first place, or how many

11   of the users are using the premium side that also accesses

12   video.

13        But the point is, it's all there available.  And the

14   premium user is the superuser.  They get more time on the site

15   or whatever is there, and including the access that they're

16   seeking by paying that premium includes access to a video like

17   this.  They might get other things, but they can still get

18   access to a video like this.  At this point in time --

19        **THE COURT:**  Is there --

20        **MR. GENTALA:**  -- without --

21        **THE COURT:**  I understand.  Is there any -- what's the

22   connection with the billing company other than it just handles

23   money?

24        **MR. GENTALA:**  Your Honor, I heard some mention of the

25   United States.  I'm understanding where the money is handled in

Motions to Dismiss - MG Billing LTD, MindGeek S.A.R.L,
MindGeek USA, Inc.

1    with regard to delivery of the content in the United States and

2    uses of the United States is -- is relevant to the case overall

3    and to -- to those allegations in particular.

4            Now, it's been difficult to track all of the

5    different subsidiaries, the way they move, the way they open,

6    the way that close.  Sometimes it's been feeling like we've

7    been taking picture of running water.  You know, we might have

8    had that picture in time.  We need to be able to have discovery

9    to understand the true nature of the abuse that's happened and

10   who's connected with it.  If there's actually a subsidiary

11   that's not connected with it and never was connected with it,

12   then perhaps they don't belong in the lawsuit.  But we need the

13   actual ability to have discovery to understand what's happening

14   there.

15           And the other side, you mentioned assets is we need

16   to understand where the money actually is, the revenue that

17   comes in as a result of this kind of behavior in the United

18   States.  So maintaining -- with -- without the ability to do

19   some fact-finding in the normal standard civil legal process,

20   it's going to be hard for the plaintiffs to be able to say,

21   well, that -- that company has no relation to this at all

22   whatsoever and then find out that that's the place where our

23   clients can actually recover from the harm that's been done to

24   them.

25           **THE COURT:**  Well, I understand the risk.  But I know

Motions to Dismiss - MG Billing LTD, MindGeek S.A.R.L,
MindGeek USA, Inc.

```
 1    that you can appreciate, too, that typically, I don't care how
 2    early in a proceeding it is, we just don't turn people's loose
 3    on a fishing expedition and say, "Okay, you've got -- you've
 4    got this company up here and it's got multiple subsidiaries.
 5    And one of them may have harmed your plaintiff.  But we're
 6    going to let you just, you know, kind of do a proctology exam
 7    on all of them until you determine whether or not you -- you
 8    think you've gotten everybody."  That generally isn't how it
 9    works, although I -- I -- I do get your point.
10         Let me ask this:  Since MG Freesites II apparently is
11    defunct and even on your own slide, you show it's been closed
12    down, is there any reason why it should be an active party to
13    this case?
14         MR. SALLEY:  Your Honor, it's at this time that we
15    understand or we've been told that MG Freesites assumed all of
16    the assets and information that was held by MG Freesites II.
17    So if -- if that is in the case the truth and they are a viable
18    company that's in existence, then we have no problem with them
19    not being in the case.
20         However, if a later date, we determine through the
21    invest- -- through discovery that company does exist or that
22    there weren't assets that were transferred or anything like
23    that, then we would like the right to at least investigate that
24    rather than just close the door on that.  Because, again, all
25    of this information has been private.  It's not as if we were
```

Motions to Dismiss - MG Billing LTD, MindGeek S.A.R.L,
MindGeek USA, Inc.

1   able to go look this information up and get definitive answers

2   to our questions.  And so out of abundance of caution.

3          **THE COURT:**  I understand.

4          All right.

5          Mr. Mayer, let me ask you a couple of questions.  Can

6   you access these films through the premium service?

7          **MR. MAYER:**  No.  And there's no allegation that these

8   have ever been on any of the -- and just to be clear, when we

9   referred to the subscription sites, those are sites like the

10  Brazzers website and Babes.com and some of the others.  So

11  those are the pay-per-view or pay-for-subscription sites.

12  These videos were never -- and there's no allegation and

13  there's no evidence that these videos were ever on any of those

14  premium sites.  And there's no evidence that there's any

15  revenue that's been generated from any premium sites or by MG

16  Billing that relates in any way to these videos.

17          So our view is that absolutely this is a fishing

18  expedition.  These are companies that represent a completely

19  different part of the -- the business.  They are not alter

20  egos.  And they have no place in this case.

21          And I just wanted to mention there were a lot of

22  slides here about Pornhub and -- and so forth.  Pornhub is just

23  one asset or one brand of -- of -- of MindGeek.  MindGeek is a

24  large technology company that has various subsidiaries.  Some

25  of them handle mobile apps and games.  Some of them handle, I

Ruling of the Court

1    guess, search engine optimization work.  Some of them handle

2    the subscription sites.  But the entity that is responsible for

3    the Pornhub.com website is MG Freesites.  And they are in this

4    case.

5              **THE COURT:**  All right.

6              **MR. SALLEY:**  Your Honor, if I may?

7              **THE COURT:**  Yes, sir.

8              **MR. SALLEY:**  Ultimately, our -- our -- our allegation

9    here and how it balls down to is that MG Freesites would not be

10   able to exist or operate without the technology facilitation

11   and other means that are provided by MindGeek S.A.R.L. through

12   that concerted effort.  The sole purpose of MindGeek S.A.R.L.

13   is to put forth this industry of pornography.

14             Yes, they have multiple pieces like they've just

15   represented.  But all of those pieces come together for one --

16   for one endeavor, which is the promotion of pornographic

17   material and to manage -- manage and maintain of Pornhub, the

18   porn brand.

19             **THE COURT:**  Okay.  All right.

20             We need to move this thing along.  And I'm not

21   unsympathetic to the plaintiffs' desire to engage in -- in a

22   broad front, if not a crusade, against, you know, the porn

23   industry as it affects victims like this.  However, you've got

24   a distinct, specific set of plaintiffs who have a distinct,

25   specific wrong done against them for which they're entitled to

Ruling of the Court

1    recover.

2            Based upon the arguments of counsel and the

3    submissions that the Court has received, I find that as to MG

4    Freesites II and MG Billing LTD and MindGeek USA, Inc,

5    plaintiffs have failed to state facts sufficient to state a

6    claim against those parties at this time.

7            With respect to MindGeek S.A.R.L., which acknowledged

8    to be the parent company, I'm going to leave that in for right

9    now.  And -- and let the plaintiff do some additional discovery

10   solely to see what that relationship is.  And if that

11   relationship is not such that there is any evidence of any

12   actual control, then I'll be open to another motion on that

13   matter.

14           The flip side of that, Mr. Mayer, is if in their

15   discovery related to how all this happened with MG Freesites

16   and uploading to Pornhub and how it was viewed and all that,

17   they determine that premium members could access this through

18   MindGeek USA or that MG Billing has any kind of control or

19   direction about the money, I'm also going to entertain a motion

20   to bring them back in.

21           But I think based on the pleadings as of this time,

22   those -- those need to be dropped off at this point.

23           All right.  All right.

24           Along those lines, let me next take up Trafficstars.

25   And who has that?

Motion to Dismiss - Trafficstars

1          **MR. FRAY-WITZER:**  Yes, Your Honor.  And in fact, I --

2     I think I can make it a little faster by going through all four

3     of the other entities at once for you.

4          So just to remind Your Honor what the activities are,

5     xHamster IP Holdings, which is now known as Online Media IP

6     Holdings, is a British Virgin Islands company.  And it owns and

7     manages the xHamster trademark.  That -- that's what it does.

8     It licenses it to Hammy so that they can operate the xHamster

9     website.

10          Wisebits IP is also an intellectual property company.

11     They're in Cyprus.  They own the intellectual property to the

12     technology, the software, the computer code, and the like.

13     Wisebits Limited provides IT services to Hammy Media.

14          And Trafficstars is an advertising broker that sells

15     advertising space not just for the xHamster.com website but for

16     a whole lot of other websites, many of which have no relation

17     to Hammy Media at all.

18          We've presented the Court with affidavits, saying

19     that none of these four companies operate the website in

20     question.  They don't have any control over what appears on the

21     website.  And in response, the plaintiffs have provided the

22     Court with random, unverified Internet postings.  That is the

23     basis for their argument that those four entities should be in

24     this case.

25          Your Honor, the -- the sort of prevailing theory from

Motion to Dismiss - Trafficstars

1   the other side is that, and you've heard it here today, that

2   well, the companies act together and so they're sort of a

3   single-business enterprise.  There's actually law on

4   single-business enterprise.  And in South Carolina, and I'm

5   sure I'm telling the Court things that it already knows, but

6   the single-business enterprise theory requires the showing of

7   more than the various entities or operations are intertwined as

8   the theory had previously been applied by our courts.  Rather,

9   combining multiple corporate entities into a single-business

10  enterprise requires further evidence of bad faith, abuse,

11  fraud, wrongdoing, or injustice resulting from the entities'

12  legal distinctions.  There aren't any allegations of any of

13  that in the complaint.  Again, it's the Fifth Amended

14  Complaint.  There are no allegations of any of that.

15          My brother talks about needing discovery on the

16  jurisdictional front.  Your Honor might remember that a year

17  ago, you had a conference with all of the lawyers.  And you

18  said if -- because they had raised that issue then.  You said

19  if you need some sort of jurisdictional discovery, you've got

20  30 days to file a motion with me to ask for that jurisdictional

21  discovery.  It's been a year, and that motion has never come

22  before this Court.

23          And I guess the -- the final thing that I would say,

24  Your Honor, when you're looking at these four different

25  entities, none of whom, of course, are within the United

Motion to Dismiss - Trafficstars

1    States.  I looked it up this morning.  The power and electric

2    company for Cyprus is called the Bioland Electric.  Well, by

3    the theory that you're being presented here that, well, they

4    all operate to -- to run a website, that they couldn't possibly

5    run the website without the other entities' contributions,

6    well, they couldn't possibly run the website without

7    electricity, Your Honor.  So if that theory holds, then you can

8    pull Bioland Electric -- Cypress Electric Company not only into

9    this court, but into any court within the United States, truly

10   any court within the world since the website does appear

11   everywhere in the world, and everyone has a personal

12   jurisdiction.  That's not the way that -- that personal

13   jurisdictions ever work.

14            **THE COURT:**  All right.

15            **MR. SALLEY:**  Thank you, Your Honor.

16            First, I would like to echo what they started with,

17   which is that each four of these individual companies provide a

18   specific role which in combination allows for -- to further

19   effectuate the wrongdoing which was alleged in our complaint.

20   Specifically here, we've alleged that each of these entities

21   control a specific part of one business which resulted in the

22   harm that was expressed and experienced by plaintiffs who were

23   filmed without their consent and that these defendants made

24   money off of them.

25            It'd be great to say, you know, we've got this

Motion to Dismiss - Trafficstars

1    slippery slope argument that we're trying to attach every

2    single person that was involved with this business as a

3    defendant in this case.  However, that's not -- that's not the

4    truth.  That's not what we presented.

5         We presented clear -- clear connections between each

6    of these entities.  We can start here.  Like I mentioned

7    earlier, we've got some demonstratives.

8         Tim, if you'd like to pull the Slide 2 and 3, please.

9         Unlike the MindGeek framework, this is even more

10   convoluted as to how all these companies interrelate to one

11   another.  But one thing that we do know is that there's pretty

12   much one organization or entity involved with the processes

13   that each of these entities are involved with.

14        As we can see, the ownership is a split seldomly

15   between two people.  As it moves down, each individual entity

16   is related to the one previous, like I mentioned, to fulfill a

17   specific part of that organization structure.  Again, you know,

18   Wisebits owns Trafficstars.  Trafficstars is the advertiser,

19   who sells advertisements on the xHamster webpage, which is how

20   xHamster generates money, which is where the money goes and

21   flows through Trafficstars again.

22        Online Media Entertainment, like we mentioned,

23   they're an IP holding company.  A lot of the intellectual

24   property including the process of how all of this information

25   is correlated to promote the sales and promote the business in

Motion to Dismiss - Trafficstars

1    and of itself are interrelated.  Without -- it's -- it's --

2    it's more than just saying that it's without, you know, that

3    one piece of business that they would be able to move forward.

4    It's that piece of the business that allows the business to

5    exist.

6          Sure.  We can say, you know, oh, well, what about the

7    electricity?  Or what about whose service -- who mops the

8    floors?  At the end of the day, those crucial pieces of the --

9    of services aren't by third parties.  These are all

10   interrelated.  It's one entity; two individuals.  There aren't

11   any larger scope.

12         Specifically to the allegations that were raised in

13   the complaint, the plaintiffs did suffer a wrongdoing at the

14   hand of this -- you know, this -- this constructed entity for

15   the purpose of putting forth that type of contact and behavior.

16         We're not -- we're not arguing that they stepped

17   outside of their business model.  This is their business model.

18   It's the purpose of, again, collecting this information,

19   minding it and putting it out there so that viewers can view

20   it, obtain it, pay for it and generate money revenue for them.

21         If you could pull up Slide 15 for me, please.  Yes,

22   one five.

23         Specifically with xHamster, one of the things that's

24   great is Trafficstars LTD, the -- the -- the -- so, for

25   example, they allow the user to determine -- or who they are

28

Motion to Dismiss - Trafficstars

1   engaged -- who they are contracting with to determine where

2   they would like their ads to be placed, what demographic they

3   are specifically targeting.  Again, this in and of itself is

4   how they manifest traffic to their website.  It's how they

5   drive business to themselves.  It's how they create revenue.

6   And again, it all flows through to the top.  So one entity for

7   that purpose.

8              That entity was created to create and generate this

9   business.  Each individual piece is an integral part of that

10  business.  They're all controlled by a singular -- it's not --

11  it's not like each individual entity has free reign to do what

12  it wants.  You know, Trafficstars can't just decide one day

13  that it's just not going to sell the ad revenue on xHamster.

14  They all are, again, created for the specific purpose of

15  putting all of this together to create this conglomerate to

16  combat with MG Freesites, or MindGeek, the larger -- largest

17  porn industry known to man.

18             **THE COURT:**  All right.

19             Assuming that I take your diagram that you showed me

20  in the first slide there, we have one of the two individuals

21  and we have Trafficstars that show a connection to xHamster,

22  which then is apparently run by Hammy Media, because Hammy is

23  off to the side.  And that's the only place it comes.

24             And I understand that Trafficstars being the

25  advertising portion of this, there -- there could be an

Motion to Dismiss - Trafficstars

1    argument that to the extent that xHamster, or Hammy Media, is

2    actually intentionally soliciting this kind of content,

3    these -- these kind of spy cam voyeuristic videos, which may

4    carry us over into the 230 argument we're going to have in a

5    few minutes.  But beyond that, even if I look at your own

6    diagram, other than being interrelated companies in some way,

7    given the general nature of your allegations in the complaint,

8    how have you stated a claim against those other entities?  The

9    Wisebits, the -- the other entities.

10            **MR. SALLEY:**  Certainly, Your Honor.  Like I mentioned

11   earlier, when this case was brought originally, the information

12   that was available to plaintiffs was very limited.  We only

13   knew of the big names:  XHamster and Pornhub, right?  As we

14   developed the facts and as we pled the facts, we pled claims

15   against both of those entities or both of those what we believe

16   were the -- the brand, so to speak.  What we've learned and

17   through the information that we've presented is that each these

18   entities are engaged in that brand and as a part represent that

19   brand.  Unbeknownst to a regular person on the street who would

20   not have had any access to this information, they wouldn't be

21   able to discern, you know, Hammy Media from Online IP Holdings

22   from Trafficstars.  They would just know them as xHamster.

23            And so as we pled, and including in the facts in the

24   complaint, we've included, like I said, the facilitation, so

25   including the facts there alleged that by way of the CBN

Motion to Dismiss - Trafficstars

1    servers, by way of the -- and I'll pull it specifically, Your

2    Honor.  Give me a moment.

3              So you know, like I mentioned earlier, paragraph 45

4    of the complaint, we have alleged that the porn tube sites are

5    the primary way that filmed sex acts are distributed to the

6    world in the digital age, yet there is very little

7    accountability or oversight with regard to the origins of the

8    videos.  It's an intentional part of these websites, because of

9    the unlimited ability to upload content by any user in the

10   world is the business model that generates the most profit.

11   For Pornhub and xHamster, content is king.  The more content

12   they upload, the more content they have, the more traffic is

13   driven to the site, and more profits are generated from

14   advertising the premium memberships that they sell.

15             And so, ultimately, it's that connection between what

16   it needs to sell the ads and how that connects with the types

17   of viewerships that they're generating and the tags that

18   they're creating and the content that they are putting out and

19   creating to drive that ad revenue.  It's not that these

20   companies -- it's not that, you know, they're -- they're

21   subcontractors of one another.

22             It's not that they -- you know, it's that they are

23   one single entity operating for the purpose of furthering this

24   business model.  It's been created and fragmented such that

25   individuals wouldn't be able to pursue claims against them for

Motion to Dismiss - Trafficstars

1   this exact purpose, for them to stimy any plaintiffs' ability

2   to establish jurisdiction based off of their very tangible

3   contacts within the United States through their advertising --

4   they contract with United States ad providers to put these ads

5   on -- on their websites so that users that are, you know,

6   located in the United States can have access to them.  All of

7   that is part of the continuity and the continuation of one

8   business.

9           THE COURT:  All right.

10          With respect to the motion, I'll be happy to hear any

11  reply to that, but I also know that we've also got jurisdiction

12  and other issues to deal with here.  So let's go ahead and

13  plunge into those.

14          MR. FRAY-WITZER:  Yeah.  And I'll -- I'll make the

15  response very brief, Your Honor, which is the graph that was

16  put up on the screen is apparently based on a German newspaper

17  article that isn't before the Court.  I mean, you have

18  affidavits from the four entities saying, "We don't own or

19  operate the website.  We don't control the content on the

20  website."

21          And on the other side of that, on the 12(b)(2)

22  motion, you don't have an affidavit.  You have nothing that's

23  sworn.  You have unverified Internet content.

24          THE COURT:  I've got the complaint.

25          MR. FRAY-WITZER:  Yes, Your Honor.  But -- but, of

Ruling of the Court

```
1   course, you have the complaint which isn't verified and -- and

2   it couldn't be.  You know, it -- it simply couldn't be on these

3   facts.  And with respect to the relevant jurisdictional facts,

4   the affidavit show that these are not the players that are

5   involved with what shows up on the website.

6              THE COURT:  All right.

7              Anything else on that?

8              MR. FRAY-WITZER:  Not on that, Your Honor.

9              THE COURT:  Okay.

10             MR. FRAY-WITZER:  I'm sorry, Your Honor.  I will say,

11   if you would like, since we're in the personal jurisdiction

12   realm, I've got about 30 seconds for Hammy Media because Hammy

13   is also opposed --

14             THE COURT:  No, we'll come back to that.

15             MR. FRAY-WITZER:  Okay.

16             THE COURT:  I've got lots of questions about Hammy.

17             All right.

18             Here's what I'm going to do on this one in terms of

19   relationship and jurisdiction, sort of pendent jurisdiction,

20   depending on where we go with the principals.  At this point,

21   and this is kind of along the same lines as the MG Freesites

22   defendants.  Given the fact that Trafficstars is admittedly an

23   advertising branch that is involved with advertising for this

24   website, and in spite of the self-serving affidavit that says,

25   "We don't have anything to do with this," they apparently are
```

Ruling of the Court

1    selling advertising for this website, I'm going to leave them

2    in for right now for the limited purpose of the plaintiff

3    determining exactly what they advertise and how they advertise

4    it.  If it turns out their advertising on this website is of a

5    more general nature and doesn't have anything specifically to

6    do with the conduct complained of in this case, I'll entertain

7    another motion to have them removed.

8            Likewise, with the xHamster IP Holdings LTD, it's my

9    understanding that that essentially has to do with the hardware

10   for the -- is that correct, Mr. Fray Witzer?

11           **MR. FRAY-WITZER:**  The xHamster IP, Your Honor, holds

12   the trademark for xHamster.  Wisebits holds the --

13           **THE COURT:**  Holds the --

14           **MR. FRAY-WITZER:**  Yeah.  The IP for --

15           **THE COURT:**  -- computer equipment, IP equipment.

16           **MR. FRAY-WITZER:**  Yes, sir.

17           **THE COURT:**  All right.

18           Just so I know, is that Wisebits IP or Wisebits

19   Limited?

20           **MR. FRAY-WITZER:**  Wisebits IP.

21           **THE COURT:**  Okay.  All right.

22           Based on that, I'm also going to deny the motion as

23   to Wisebits IP LTD and allow the plaintiff to determine what

24   relationship it has through its provision of hardware and

25   infrastructure for the website in terms of any direction or

Ruling of the Court

1    control over the website.

2           Based upon the representations that there being

3    nothing to the contrary that xHamster IP Holdings holds only

4    the trademark for the website and that Wisebits LTD has nothing

5    to do with the website, I'm going to grant the motion as to

6    those at this time.

7           I'm going to tell you both the same thing I've told

8    you on all of these.  If through the normal course of

9    discovery, you determine that there is some direct connection

10   to one of those, I'll entertain a motion to bring them back in

11   based on later-discovered evidence.

12          Likewise, on Wisebits IP, if there truly is no

13   connection, I'll entertain a motion to kick them out.  What I

14   want to try to do is -- I'm trying to strike a balance between

15   the fact that I understand plaintiff's frustration with a

16   business model that is fragmented, although there's nothing

17   illegal about that, nothing wrong with that.

18          By the same token, I'm trying to balance that against

19   the defense's legitimate position that companies that have

20   nothing to do with this shouldn't be having to spend money and

21   time defending it.  I mean, they -- they ought to be out.  So

22   that's -- and that's where we are on that part.

23          Now, I think that would bring us back to Hammy Media

24   and the motion for judgment on the pleadings, which encompasses

25   jurisdiction and a lot of things.  And I'll be happy to hear

Motion for Judgment on the Pleadings - Hammy Media

1    from you on that.

2            **MR. FRAY-WITZER:**  Thank you, Your Honor.

3            On the personal jurisdiction front, all that I'm

4    going to really say about Hammy Media is that the entire basis

5    for the exercise of personal jurisdiction is the operation of a

6    website that is accessible anywhere within the United States

7    and anywhere within the world.

8            I would point the Court towards the *AMA versus Wanat*

9    case out of the Ninth Circuit that we cite in our briefs

10   because it's almost identical sort of situation about the same

11   percentage of users coming from the United States.  And,

12   basically, what the Ninth Circuit says is, "Well, look, adult

13   entertainment is popular everywhere in the world."  There's

14   nothing about an adult entertainment site that purposefully

15   avails itself of the United States market, even if the United

16   States market is, in that case, the largest percentage.  Over

17   20 percent of the users are coming from the United States.  And

18   I think you'll see from the cases that we've cited with the

19   Fourth Circuit similarly requires more than just the operation

20   of a website, even if it's an interactive website.  And I think

21   because the personal jurisdiction front, that's -- that's where

22   I'll leave that.

23           I assume Your Honor would like me to move to the

24   Section 230 arguments?

25           **THE COURT:**  That will be fine.

Motion for Judgment on the Pleadings - Hammy Media

1          **MR. FRAY-WITZER:**  Thank you.

2          **THE COURT:**  We've got to get there at some point.

3          **MR. FRAY-WITZER:**  So the Section 230 arguments,

4    Your Honor, are certainly more illegally complex.  But luckily

5    for us, the Fourth Circuit has perhaps the longest track

6    record.  And --

7          **THE COURT:**  Well, let me make it easy for you.  I

8    think the way to look at this landscape is it's a blanket

9    immunity except perhaps for FOSTA.  So let's talk about how

10   that might affect this.

11         **MR. FRAY-WITZER:**  Absolutely.

12         So in 2017, Congress enacts FOSTA which amends the

13   blanket immunity to provide what is a very narrow exception to

14   the immunity for claims and the way that the work is in the

15   statute, quote, brought under Section 1595 of Title 18 if the

16   conduct underlying the claim constitutes a violation of

17   Section 1591 of that title.  And so, you know, this is getting

18   a bit into the weeds.  But, of course, Section 1595 is the

19   civil liability section.  Section 1591 enumerates the acts that

20   constitute criminal conduct.

21         And Your Honor, there have been a series of cases

22   over the last year or two years that basically talk about what

23   is required in the civil context for the blanket immunity not

24   to apply.  I'll -- I'll point Your Honor towards a few cases

25   that we have cited in the briefs.

Motion for Judgment on the Pleadings - Hammy Media

```
1              I think the most important is the Reddit case out of
2    the Ninth Circuit, which was -- the United States Supreme Court
3    just denied cert on that case, Your Honor.  And the Reddit case
4    is really instructive because not only does it encompass every
5    type of allegation that the plaintiffs have made in this case,
6    you knew about the conduct, you knew that there was -- you knew
7    that there was unconsented to video on the site.  You knew that
8    people were using the site for improper purposes in the Reddit
9    case.  It's all child pornography.  And they basically say not
10   only did you know this stuff, you had -- you know, sub-Reddits
11   is what they're called --
12            THE COURT:  Uh-huh.
13            MR. FRAY-WITZER:  -- subsections that all called
14   things that make it abundantly apparent to anyone involved that
15   the sections contain child pornography.  And the Ninth Circuit
16   said Section 230 immunity still applies and here is why.
17            No. 1, to be -- to -- to be within this very narrow
18   carve-out, you have to meet the mens rea requirements of
19   criminal section of Section 1591.  It says that the
20   defendant -- it has to be the defendant's on conduct that
21   violates 1591, not someone else's.  And in Reddit, just like
22   here, what we're talking about are third-party users who have
23   uploaded this content to Reddit.  It's not Reddit itself; it's
24   Reddit's users have uploaded the content.
25            And the third part is they say that Reddit had to
```

Motion for Judgment on the Pleadings - Hammy Media

1    have actual knowledge of their participation for aiding and

2    abetting the trafficking of specific individuals.  Those are

3    the three things that the *Reddit* case says are required.

4         I'll -- I'll say just a few other cases, then I'm not

5    going to talk about them as much:  *Doe versus Kik Interactive*,

6    which is out of the Southern District of Florida;  *M.H. versus*

7    *Omegle*, which is a Middle District of Florida;  *L.W. versus*

8    *Snap*, which was one of the cases we cited recently to Your

9    Honor in our supplemental, which is part of the Southern

10   District of California; and the D.C. Circuit just decided the

11   case *Woodhull Freedom Foundation*.

12        And every single one of those cases says the same

13   thing.  They say that the three things that I've enumerated for

14   you are required to fall into this very, very narrow carve-out

15   for Section 230 blanket immunity.

16        **THE COURT:**  Would it be accurate to sort of summarize

17   by saying as long as you are simply providing the platform and

18   you are doing so passively, no matter how egregious the content

19   is that is uploaded or the fact that you know about it, that's

20   not enough.  It requires a specific intentional knowing, almost

21   transactional relationship with the person who's uploading that

22   particular video.

23        **MR. FRAY-WITZER:**  Yes, Your Honor.  That -- that is

24   precisely correct.  And what I'll also say, because I -- I --

25   you know, I anticipate that this is what you are about to hear,

Motion for Judgment on the Pleadings - Hammy Media

1   so I would like to sort of talk about it.  Plaintiff's, a few

2   days ago, provided the Court with their own notice of

3   supplemental authority for the *GG versus Salesforce.com* case.

4   If I can, Your Honor, I'd love to hand a copy up.

5           And so, with respect to this case, Your Honor, I will

6   say that this is without question the plaintiffs best case.

7   There's no question.  The Seventh Circuit has disagreed with

8   those cases that I have just cited to you.  The Seventh Circuit

9   has disagreed with the *Reddit* case.  They disagree with the

10  D.C. Circuit; with the Florida courts.  This is without

11  question the plaintiff's best test case on this subject.  And

12  Your Honor, it's still bad for them.

13          It's bad for them because even if you put aside

14  drastically different allegations that were made in that case,

15  and some of them are -- are particularly relevant -- in that

16  case, Salesforce had a five-year intensive relationship with

17  Backpage.com.  They specifically tailored their software to

18  Backpage's needs.  There were meetings between Backpage and

19  Salesforce's CEO.  There was a series of ongoing contracts

20  between the parties.  It's precisely what Your Honor was

21  describing when you talk about the relationship that would be

22  required to take something out of the Section 230 immunity.

23          And then better than that, Your Honor -- and I don't

24  know.  Perhaps -- you know, perhaps it's a dense case and no

25  one got to the end of it.  But it's kind of important.  Because

Motion for Judgment on the Pleadings - Hammy Media

1    the Seventh Circuit in discussing this distinguishes some of

2    its earlier cases.  And here is what the Seventh Circuit says

3    in the Salesforce case.  They referred to one of the earlier

4    cases, GTE.  And they say: "In GTE Corporation, plaintiffs had

5    secretly recorded on video while they were undressed in locker

6    rooms, bathrooms, and showers.  Plaintiffs sued the company

7    that had provided web-hosting services for websites that had

8    offered the videos for sale.  We affirmed dismissal on the

9    pleadings, concluding that the alleged activities of the

10   web-hosting services did not amount to 'culpable assistance' to

11   those -- to those websites or the sellers of the videos because

12   a 'web host, like a delivery service or phone company, is an

13   intermediary is normally is indifferent to the content of what

14   it transmits.'"

15          And they go on and they -- they sort of repeat this

16   again.  And they say, "Look.  This case just isn't like the GTE

17   case or some of our other cases in which you're looking at a

18   website that simply had user-generated content that was

19   posted."  This case is different because of the incredibly

20   intense relationship between the parties.

21          And then, finally, Your Honor, and -- and I'll go

22   through these as rapid fires.  I don't think it's going to take

23   very long.  But once you get past or if you get past the

24   personal jurisdiction arguments and if you get past the

25   Section 230 arguments, I should also point out that we've made

Motion for Judgment on the Pleadings - Hammy Media

1   arguments that are based on traditional 12(b)(6) that you

2   simply haven't pled what you needed to plead.

3            Count 1 with respect to the Commercial Sex

4   Trafficking under the TVPRA, I would say look at the recent

5   Supreme Court case, *Taamneh versus Twitter*, which again in that

6   case, there was an allegation that Twitter was aiding and

7   abetting ISIS by posting ISIS videos that radicalized people.

8   The Supreme Court unanimously came out and said, "We're not

9   even going to decide the Section 230 issue because the things

10  that you're alleging don't constitute aiding and abetting.

11  They don't con- -- constitute the substantial -- substantial

12  contribution."  It wasn't a TVPRA case, but the concepts are

13  similar.

14           I'd also note that it's not clear that there was

15  actually allegation -- proper allegation of trafficking in this

16  case.  The plaintiff's -- and -- and I'm sorry.  I should've

17  said this earlier, because it is true.  If what's alleged in

18  the complaint is accurate, what happened is despicable.  And

19  there's no -- you know, we're not going to stand before you and

20  say anything otherwise.

21           The proper defendants for those claims are before

22  this Court.  They just don't happen to be our clients.  It's

23  unclear how what was alleged constitutes trafficking.  It's

24  unclear that there's a commercial sex act.

25           When you turn to the civil RICO claim, which is Count

Motion for Judgment on the Pleadings - Hammy Media

1    2, it's very clear that this requires injury to business or
2    property. And the cases routinely say that emotional distress,
3    even as the Fourth Circuit said, quote, extreme mental anguish
4    is not sufficient to sustain a civil RICO case. It has to be
5    injury to business or property. It requires a common scheme.
6    And I can't see how they could possibly argue a common scheme
7    with Collins Murphy who supposedly recorded these videos seven
8    years before posting them to any of the websites, if it was him
9    that posted them to the websites. The complaint acknowledges
10   that it doesn't know.
11          Count 9 for Negligent Monitoring. We've cited a slew
12   of cases for Your Honor that there is no duty for a website to
13   monitor the content. If there was, it -- it would run
14   completely afoul of Section 230.
15          Count 10 for False Light. It's a cause of action
16   that's not recognized in South Carolina.
17          And with respect to Count 11, Civil Conspiracy Claim,
18   again, I would point the Court toward the recent Supreme Court
19   case in *Taamneh versus Twitter* -- I'm sorry, *Twitter versus*
20   *Taamneh*, which disposes of that completely with respect to
21   these type of allegations.
22          **THE COURT:**  All right.
23          **MR. GENTALA:**  Your Honor, with regard to personal
24   jurisdiction, just to start for that, counsel cited the *Wanat*
25   case from the Ninth Circuit. A lot of cases on the personal

Motion for Judgment on the Pleadings - Hammy Media

1  jurisdiction for Internet companies and websites are emanating

2  out of the Ninth Circuit just because of the way the industry

3  works.

4         Another important case to look to compare *Wanat* would

5  be the *Will Co versus Lee* case, 47 F.4th 917, Will Co.  And

6  what you find there is courts basically looking at foreign

7  technology companies and trying to decide whether they have

8  enough significant touches with American jurisdiction in order

9  to exercise personal jurisdiction.

10        Now, *Wanat*, one of the things they look at is

11  advertising and how advertising takes place.  So that's one --

12  one key component is the targeted advertising can tip it over,

13  can be something that establishes that kind of a significant

14  touch.  But it's a combination of factors.  It's not just

15  advertising, for example.

16        And what we have in this situation here is we have

17  servers located on American soil.  They're called CDN servers.

18  And they're designed to make sure that the streamed content

19  that comes from video and audio is a fast playback for the

20  United States.

21        So in order to contract for that infrastructure in

22  the United States, you're targeting American audiences

23  specifically.  You're saying this is a part of the world.  We

24  want to make sure that when you click on the video, there's no

25  slow down for you.  There's no hold up for you.  It's a

Motion for Judgment on the Pleadings - Hammy Media

1    smooth -- so that -- those targeting investments in servers of

2    the United States, the CDN servers, are significant.  You'll

3    see the Ninth Circuit say so much in the *Will Co* case.

4            I can -- if you have any other questions about

5    personal jurisdiction, we're happy to --

6            **THE COURT:**  Not at this point.

7            **MR. GENTALA:**  Okay.  Thank you.

8            Turning to Section 230 overall, I think the two

9    phrases that are most important are traditional editorial

10   functions, which is what -- since -- since the Fourth Circuit

11   first looked at Section 230, in the *Zeran* case.  And then,

12   another important concept that courts have kind of galvanized

13   around, which is material contribution.  Material contribution.

14           So the question, any time that we have a defendant

15   who is an Internet company, an Internet-service provider, is

16   have they done enough to make a material contribution so that

17   Section 230 isn't even on the table in the first place.

18           And we've alleged enough here to -- to have plausibly

19   before you a material contribution on the part of Pornhub and

20   on the part of xHamster, however the subsidiaries trickle down

21   from there.

22           **THE COURT:**  Well, since we're talking about xHamster,

23   tell me exactly what you've alleged as to that with regard to

24   them.

25           **MR. GENTALA:**  With regard to Xhsmster, it's very

Motion for Judgment on the Pleadings - Hammy Media

1  similar to Pornhub.  But we'll start with xHamster.  With

2  regard to xHamster, they have curated the pornography on their

3  website and broken it down into categories.  And they have said

4  there's a category up there called "spy cam."  And this is

5  something we want you as a -- a -- creator of content to upload

6  it to our website.  You can label it as spy cam.  Here's the

7  label for it.  This is basically voyeurism pornography designed

8  to suggest that the person doesn't know they're being filmed.

9         They've had some examples back and forth in the

10  pleadings that, well, that's a bad example because this person

11  was clearly an actress.  It doesn't matter.  It all gets lumped

12  in under the spy cam genre in the first place.

13         Our clients had no idea.  They clearly did not

14  consent to being filmed while they're changing after a hockey

15  game at the university.  And yet that content is uploaded

16  lumped into the spy cam area.

17         **THE COURT:**  But -- I understand that.  And I think

18  having that category makes things a little more problematic for

19  the defendant.  But here's the concern I have.  As I read the

20  cases, simply having a platform, simply providing a -- an

21  Internet site for people to upload videos to, even if it's

22  uploading spy cam videos, because for all they know, it -- it

23  could be professional actresses who were just making it look

24  that way.  You know, there's -- who knows where the videos are

25  coming from.  For all they know, it -- it could have been a

Motion for Judgment on the Pleadings - Hammy Media

1    stage shower room or locker room scene.  You know, it -- if

2    that's all that there is, it seems to me under the cases,

3    that's not enough.

4           Now, on the other hand, if they are soliciting spy

5    cam videos where the victim doesn't know they're being filmed

6    or they're offering remuneration for posting of those type of

7    videos or whatever, then you start sliding over into that

8    specific intentional transactional realm that I think gets you

9    outside of 230.  But just this broad general: "It's

10   exportation.  It's a spy cam.  Our people didn't know they were

11   being filmed," there's no evidence the defense knew that they

12   were being filmed either.

13          So help me out there if you can.  Cause I think -- I

14   think that's -- I understand what you're trying to do.  I'm

15   just afraid that your argument isn't with me; it's with

16   Congress.  And that's -- that's the concern I have.  So help me

17   out -- help me out there on -- on any kind of direct

18   involvement.

19          **MR. GENTALA:**  I -- I think the landscape is -- is

20   largely what you've said.  I would say that when it comes to

21   the material contribution, there's a clear category that's been

22   recognized by the Ninth Circuit in the *Roommates.com* case where

23   if the Internet company itself is creating categories that are

24   an inducement to break the law, that can be a problem.

25          You know, in that case, it was a Housing Act case.

Motion for Judgment on the Pleadings - Hammy Media

```
1    And the provider there had several different categories.  You
2    could kind of scroll through and pick what you wanted to do.
3    Some of them would've been a violation of the Housing Act.  So
4    not every person who used the Roommates.com website would be
5    using it to get around the Housing Act, but there might be that
6    person who decided that, "No, I'm going to say I don't want to
7    house with a person of a certain race or a person of a certain
8    religion" in violation of the Housing Act.
9           And the possibility enough was -- was there enough
10   for the Ninth Circuit to come in and say, "Yeah.  Sure.  This
11   is a -- this could be a material contribution.  And the
12   plaintiff should have a chance to prove their case.  And they
13   plausibly alleged enough here that the violation is there."
14          This is even stronger than Roommates.  Because the
15   content itself that they're soliciting is illegal both under
16   state law and under federal law.  Under federal law, it's 18
17   U.S.C. 1801.  It's illegal for this video voyeurism to take to
18   take place at all.  Period.  It's prosecutable under that
19   standard.
20          And here, you've got this -- this category that's
21   there that's saying, "Hey.  Those of you who want to create
22   your own homegrown pornography, if you want to use something
23   that victimizes someone else, file it under this category.
24   Something that violates 801, file it under this category."  So
25   that's -- that's where the link is between the material
```

Motion for Judgment on the Pleadings - Hammy Media

1    contribution on the part of both xHamster and MindGeek when it

2    comes to this.

3           Now, I have a few -- unless you want to stay on

4    that --

5           **THE COURT:**  No, that's okay.

6           **MR. GENTALA:**  -- I have a couple of things based off

7    of counsel's presentation.

8           The *Reddit* case -- well, it's -- I want to help with

9    the category here.  You raised FOSTA and so counsel started

10    with the *Reddit* case, which is a FOSTA case.

11           In fact, the Fight Online Sex Trafficking Act has

12    only been around since 2018.  It's only been in front of one

13    appellate court, Ninth Circuit.  We have one decision on it,

14    one reported decision, that's the *Reddit* case.  It's currently

15    pending right now -- review of it is currently pending in the

16    Eleventh Circuit in the *Omegle* case, which my friend on the

17    other side has cited.  The District Court opinion that's

18    pending right now in front of the Eleventh Circuit.

19           And then, the *GG versus Salesforce* decision by the

20    Seventh Circuit, if you read it closely, I think it's Footnote

21    21, the Court says, "Well, we think -- you don't even need to

22    FOSTA here.  We think that Section 230 hasn't been violated in

23    the first place and that they have met the standard under the

24    Trafficking Victims Protections Act."  So I -- I want to

25    represent the case accurately, although there's very strong

Motion for Judgment on the Pleadings - Hammy Media

1   language in it about what Congress wants to do with regard to

2   Victims of Online Sex Trafficking, it is not by its own terms

3   according to the footnote, Note 21, a FOSTA case.

4           It -- the Salesforce case though is really important

5   when it comes to the actual elements of sex trafficking that

6   you'd find in 1591 and which are similarly applicable in 1595.

7   The -- the Court basically looks at this question of:  Is it

8   okay if you have a business that should know better, but they

9   put their head in the sand?  They can't -- I think it's "turn a

10  blind eye" is the phrase that's used here.

11          And the Seventh Circuit says no, that's not okay.

12  Because in 1591, Congress recognized two forms of sex

13  trafficking.  You have the direct sex trafficking and then you

14  have parties who are associated with and facilitated the sex

15  trafficking and benefited from it.  That's why we are here.

16  It's a beneficiary liability case under 1591.

17          Our clients have been harmed, just like it's spelled

18  out in 1591.  They have been obtained for a commercial sex act.

19  And the websites here have benefited from that sex act.

20  They've sent it all over the world and gained advertising

21  revenue.  And they have encouraged users to come and enjoy that

22  humiliation and exploitation that was there.  That's benefiting

23  from the sex trafficking transaction.

24          You know, I heard:  Does this fit in the commercial

25  sex act actual context?  And the answer is yes, it does.  This

Motion for Judgment on the Pleadings - Hammy Media

1    is -- this is on Pornhub for a reason.  This is on xHamster for

2    a reason.  It's a sexual fetish that is -- people go there for

3    sexual gratification to watch other people in private

4    situations without knowing that they're being recorded.  That's

5    why it's on the website in the first place.  Feeding that

6    fetish and lumping it in with other forms of pornography is a

7    commercial sex act.

8            I want to -- I want to really encourage the Court

9    that *Taamneh* case that the Supreme Court decided recently, it's

10   worth looking at.  Of course, we'd all know a lot about

11   Section 230 and what the Supreme Court thinks about it if had

12   actually decided the *Gonzales* case on that basis.  But instead,

13   it sent it back down.  So we don't have Supreme Court guidance

14   right now on the basis of *Gonzales*.

15           But the companion case, the *Taamneh versus Twitter*

16   case, is all about construing the trafficking act, the

17   anti-trafficking act.  And what my friend shared about that I

18   think is -- I think if you'll look at it, you'll see that all

19   of the aiding and abetting analysis that the Court did there

20   was specifically with reference to how the trafficking act

21   considers aiding and abetting.  And that had a very significant

22   legislative history.

23           As a matter of fact, what the Supreme Court said was

24   Congress had a particular case out of the D.C. circuit, I

25   believe it was, that they had in mind.  And so that was the

51

Motion for Judgment on the Pleadings - Hammy Media

1  form of aiding and abetting that Congress intended -- the

2  common law of aiding and abetting that Congress intended to put

3  into the anti-trafficking act -- I mean, the terrorism act.

4  Okay.

5          So the terrorism act and now has an exhaustive kind

6  of opinion with lots of guidance from the Supreme Court about

7  what the common law of aiding and abetting is.  That doesn't

8  have anything to do with the trafficking act.  We're here to

9  talk about what Congress wanted to do for people who have been

10  victimized specifically online in sex trafficking scenarios.

11          And the first thing that Congress did was it took a

12  very serious step, which was amend Section 230.  The First

13  Circuit decided the *Backpage* case.  *Backpage* repeatedly

14  throughout the country had been raising Section 230 defenses.

15  The First Circuit went along with Backpage on that. And

16  Congress stepped in with FOSTA and essentially legislatively

17  overturned what the First Circuit decided.  First Circuit case,

18  *Doe versus Backpage* is one of the cases my friends cite in the

19  pleadings.

20          Congress came in and said Section 230, nothing in

21  Section 230 should be construed to impair any right to pursue

22  sex trafficking claims with 1591.  Now, you have an argument

23  that's being made across the country in court -- by court about

24  how broadly do you read that.  And the -- the way that the

25  Ninth Circuit has read the language of FOSTA, I would submit

Motion for Judgment on the Pleadings - Hammy Media

1   that if that's -- if it's really that narrow, then Congress's

2   change to Section 230 has no material function.

3           They stepped in and gave -- made it clear that

4   victims of online sex trafficking have this -- this civil

5   remedy.  And the remedy that they gave them is so narrow that

6   it really can't be proved.  It really can't happen.  Because

7   230 is going to apply and they won't -- they won't have any

8   chance to have discovery.

9           There's a -- you know, it's a long-standing principle

10  that it would be absurd to go with that interpretation.  Well,

11  I encourage the Court when you -- when you -- next time you

12  review *Reddit* or maybe you're thinking about your most recent

13  review of the *Reddit* case, what's left of the ability of

14  survivors of online sex trafficking to plead after -- after

15  *Reddit* and how could that be what Congress intended when they

16  stepped in to limit Section 230.

17          With regard to GTE, if the Court -- the *GTE* case was

18  ciited in the *Salesforce* case.  And I appreciate counsel

19  bringing that specifically up.  I would just submit, if

20  that's -- if that's material to the Court's consideration, we

21  can definitely provide additional briefing on the *GTE* case.  I

22  think that the specifics there about how the spy camming took

23  place, the kind of information that was there in front of the

24  Court is important.  And I would just make that request that

25  we're happy to provide additional briefing on that.

Motion for Judgment on the Pleadings - Hammy Media

1          I don't -- it's been a while.  But as I recall the

2    pleadings, I don't remember a lot of back-and-forth about *GTE*,

3    there was some about *Salesforce*, but not *GTE* itself.  And I --

4    and I would want the Court to have the fullest briefing on

5    that.

6          **THE COURT:**  All right.

7          **MR. GENTALA:**  Thank you.

8          **THE COURT:**  All right.

9          **MR. FRAY-WITZER:**  Thank you, Your Honor.

10         So I -- I want to respond to a few of the points.

11   And also, if I may, your colleague, Judge Gergel, recently

12   issued a Section 230 ruling that I now think is -- is somewhat

13   important.  And I'd like to hand that up, if that's okay.

14         And Judge Gergel talks about, as -- as you have, the

15   blanket immunity that is afforded by Section 230.  And one of

16   the cases that he talks about and it's a case that we've cited

17   in our brief as well, the *Dyroff* case, which is another Ninth

18   Circuit case, is also particularly relevant for the arguments

19   that are being made.  And for Your Honor's concern about the

20   question about what about the creation of categories, we have

21   cited -- and I won't go into them, but we've cited in our

22   briefs case after case after case that says the creation of

23   categories on a website is precisely the type of publishing --

24   traditional publishing function, traditional editorial function

25   that is meant to be covered by Section 230.

Motion for Judgment on the Pleadings - Hammy Media

```
1              And not only that, they go further, the cases go

2    further, including the Dyroff case that's cited by Judge Gergel

3    that says even algorithms that push people in particular

4    directions.  And that's become very relevant recently.  Even

5    those kind of algorithms don't take you out of Section 230

6    protection.

7              The Dyroff case that Judge Gergel cites involved

8    someone who search for a heroin-related search.  The website in

9    question pushed him towards heroin dealers.  And he eventually

10   purchased heroin from one of the heroin dealers that the

11   website intentionally pushed him towards.  And his -- after he

12   died from ingesting fentanyl-based heroin, his decedents filed

13   a suit against the website.  And the Ninth Circuit said, you

14   know, we're sorry, but this falls within Section 230.  It

15   doesn't matter if there were categories.  It doesn't matter if

16   the algorithms exist that helped push people in a certain

17   direction.  And the case for Judge Gergel here involves

18   Facebook postings, which of course, you know, is the algorithm

19   again, pushing people in certain directions.

20             This happened to be the -- the Dylann Roof murders

21   where they sued Facebook.  And -- or one of the decedents sued

22   Facebook and said, "Facebook, you are pushing white supremacist

23   content at this guy and you should be held liable."  And Judge

24   Gergel properly says --

25             THE COURT:  Well, let me ask you this, because I
```

Motion for Judgment on the Pleadings - Hammy Media

1    think this is a distinction:  Isn't there a distinction between

2    an algorithm that is set up to basically just give people what

3    they're looking for or more of what they're looking for and

4    just move them to different places on the website and a website

5    that actively solicits a particular type of content or

6    particular genre of content that by its very nature is likely

7    to be illegal?

8          **MR. FRAY-WITZER:**  So I'll answer with two answers,

9    Your Honor.

10         **THE COURT:**  Because I think -- I think that's the

11    difference here.  I don't have any problem with what you're

12    saying about what Judge Gergel decided or -- or -- or what

13    happened in the *Dyroff* case or the fact that Dylann Roof was

14    able to find right-wing hate groups on Facebook.  That --

15    that's fine.  And even if he was mechanically moved in that

16    direction, that's fine.  Or I guess -- I'm showing my age.  I

17    guess I should've said digitally instead of mechanically.

18         But -- but if you've got a direct solicitation for a

19    category that is a conscious business decision of the company

20    as opposed to just a function of an algorithm, is that

21    different?

22          **MR. FRAY-WITZER:**  It may be different, Your Honor.

23    I -- I actually think the algorithm is worse personally, but I

24    take your point.  And the answer I have for you is:  We have

25    cited case after case after case that says no.  Creating a

Motion for Judgment on the Pleadings - Hammy Media

1    category, even if the category is an illegal category by its

2    very nature, that does not take you out of Section 230

3    protection.  And in fact, that's precisely what was at issue in

4    *Reddit* case.

5            **THE COURT:**  Oh, I -- I -- no, I understand that.  If

6    I -- if I'm going to say the Ninth Circuit is the final word, I

7    think you've got -- you've got your argument right there.

8            **MR. FRAY-WITZER:**  And -- and it's not just --

9    although my -- my brother said that was the only appellant

10   court to have decided it, it's -- it's not accurate, Your

11   Honor.  I don't blame him.  It was one of our more recent

12   supplemental filings.  But as I said, the *Woodhull Freedom*

13   *Foundation* case, 223 US at Lexis 17170, is a D.C. circuit case.

14   And they similarly came out and said, "No, no, no.  The only

15   way that FOSTA is constitutional is if you read into it

16   limitations whereby" -- and then they adopt exactly what *Reddit*

17   did in the -- in the Ninth Circuit.  You know, you have to

18   have the *mens rea*.  And you have to have the actual

19   participation in the Sex Trafficking Act.  And you have to have

20   known about it.

21           I want to -- to respond to -- to two other things

22   quickly.  One is with respect to the solicitation.  And again,

23   if you look at cases we've cited, case after case says the mere

24   creation of a category, even an illegal category, is not

25   solicitation.  It doesn't drive anyone to -- to put videos

Motion for Judgment on the Pleadings - Hammy Media

1    there.  It doesn't drive anyone to necessarily go there.

2          **THE COURT:**  Well, there's a difference between

3    creating a category, in other words, categorizing the content

4    that's on your website and creating a category for the purpose

5    of soliciting content for that category.

6          **MR. FRAY-WITZER:**  Well, in truth, Your Honor, there

7    isn't because if you're creating -- and this is true for all of

8    the websites.  You're creating a category and you're saying,

9    you know, what you'll find in here is the following if users

10   upload that.  You know, and I won't beat a dead horse with

11   *Reddit*, but certainly that's what happened where these

12   categories were created.  Category doesn't mean anything unless

13   someone's putting anything into it.  There isn't -- the cases

14   are really uniform in saying that the creation of that category

15   and allowing users to put things into that category is not a

16   solicitation.

17         I will mention, because I haven't so far when the

18   issue of renumeration was raised.

19         **THE COURT:**  Uh-huh.

20         **MR. FRAY-WITZER:**  I -- I do want to make a point that

21   there was no payment whatsoever ever, and we have affidavits to

22   this, to whomever it was who uploaded these particular videos

23   at issue in this case.  It's under a user named CW

24   Distribution.  There were never any payments made whatsoever

25   from xHamster or any kind of xHamster-related entity to CW

Motion for Judgment on the Pleadings - Hammy Media

1    Distribution.

2            The entire system for xHamster from what I've seen

3    has been changed.  You can't upload a video anymore without

4    providing a government identification and a photo of yourself.

5    And then it goes through a third-party ID verification system.

6    They've put into place all sorts of -- of protections.

7            The last thing that I'll mention, unless Your Honor

8    has other questions, is my brother raised the *Roommates* case.

9    First, I will say, the *Roommates* case out of te Ninth Circuit

10   was followed by *Reddit* and every one of the other cases that

11   we've talked about.  And that's an argument that's raised all

12   the time:  Hey, but what about *Roommates*.  And the Ninth

13   Circuit has consistently come back and said *Roommates* was a

14   really, really specific set of facts.

15           And what they were doing in the *Roommates* is you

16   couldn't list your apartment without filling out the illegal

17   categories.  It's not just the illegal categories existed, it's

18   that you couldn't submit your request to find a roommate

19   without saying:  What is your race, what is your sexual

20   orientation, who -- you know, who are your -- you could not get

21   around it without violating the law.

22           And so the Ninth Circuit repeatedly says in every

23   case after that, "Hey, *Roommates* was different."  It didn't

24   just give you, "Hey, there's this category.  Maybe it's legal;

25   maybe it's not legal."  It required you to break the law to use

Motion for Judgment on the Pleadings - Hammy Media

1    the website.  And that's not the case here.

2              **THE COURT:**  All right.

3              Mr. Gentala, anything else on -- on that?

4              **MR. GENTALA:**  Just -- just briefly, Your Honor.  With

5    regard to the D.C. circuit's recent opinion regarding *Woodhull*,

6    just to be clear, that is a facial attack of the

7    constitutionality of FOSTA.

8              **THE COURT:**  Whether -- whether it's

9    unconstitutionally broad -- overly broad.

10             **MR. GENTALA:**  It's a First Amendment case.  And so

11   the Court in a facial context is trying to decide how the

12   elements would work.  And it uses the *Reddit* case for that

13   purpose.  So I don't -- I want to -- I don't want to say that

14   it's -- it's significant.  Because you've got another appellate

15   court that's addressing FOSTA.  But they addressed it in such a

16   different context.  I don't they didn't definitively say, here,

17   this is how we're going to read it moving forward.

18             The -- like I mentioned, we've got *Omegle* that's out

19   there.  With regard to the -- the user and representations that

20   have been made about revenue being shared, that's one user.  I

21   think we've alleged that there's another different previous

22   iteration, different IP address where the upload came from.  I

23   don't have it right in front of me.  But there's another

24   allegation as well.

25             And the point is, those are very specific

Motion for Judgment on the Pleadings - Hammy Media

1    allegations.  That is enough for the court to have as

2    plausibility at this stage in the pleadings for us to be able

3    to take discovery and find out from all of the defendants:  Who

4    it was that uploaded it?  Did they have a business relationship

5    with them?  When was that uploaded?  How many times was it

6    uploaded?  All of those types of things we should be able to

7    look in.  And we haven't had an opportunity to do that at all.

8              Finally, with regard to *Roommates* --

9         THE COURT:  With respect -- with respect to the

10    renumeration, didn't you in one or more of your paragraphs in

11    the complaint allege that xHamster at some point relevant to

12    this was offering some kind of revenue sharing for people who

13    uploaded content?

14             MR. GENTALA:  Yes.  Both -- with regard to both --

15             THE COURT:  Okay.

16             MR. GENTALA:  -- companies, that's what -- that's

17    what we've alleged is that revenue sharing could take place.

18    And that's one of the incentives to -- to upload to a tube site

19    in the first place.  Even if you just take YouTube, people who

20    upload their videos to YouTube, some of them are just having

21    fun having it on the Internet.  Others are more serious about

22    it because they know if they get enough eyeballs on their

23    content, then Google will start sharing revenue with them.  So

24    that -- that incentive is constantly there, that invitation to

25    join with us and share in the revenue is there when you have a

Ruling of the Court

1   tube site that is there.

2          And of course, the Ninth Circuit in the *Gonzales* case

3   recognized that the revenue sharing claim is outside of

4   Section 230 in the first place.  And so we would respectfully

5   suggest we need to at least be able to have discovery on

6   that -- that aspect of things to be able to look at that.

7          I would say, you know, on *Roommates*, there's an

8   important phrase in that case, and that is, Congress didn't

9   create Section 230 to have a legal no man's land where nothing

10  is illegal anymore.  And here, you've got a case where you've

11  got wealthy companies that have invited people to break the law

12  and upload the evidence to their -- the website and they might

13  even get a share of the profits afterwards.  That sounds like a

14  legal no man's land to me.

15          **THE COURT:**  All right.

16          With respect to the motion, or motions, I think it

17  was actually one in each case, by Hammy Media, I find that at

18  this procedural posture in the case, and given the allegations

19  made in the Fifth Amended Complaint, I believe that the motion

20  should be denied.

21          I do find that there is at -- at least a showing of

22  sufficient jurisdiction.  And likewise, there are sufficient

23  allegations to state a claim outside of Section 230.  And I

24  find that the complaint at least as alleged states sufficient

25  facts to state claims as set out; and therefore, I'm going to

62

Ruling of the Court

1    deny the motion at this time.

2            Having said that, I want to caution the plaintiffs

3    because I think you understand that there is a very narrow path

4    to navigate for these claims to ever get to a jury.  This idea

5    of financial remuneration, whether it took place, the

6    methodology under which it took place, how that relates to the

7    publication and who published it, you've alleged those things,

8    but you're going to have to elicit evidence in discovery to

9    support those things.

10           From the defense side, the defense, although I'm not

11   granting their motion today, it's pretty clear from the case

12   law that they sit in a position of strength.  They have the

13   protections of 230.  There are questions about exactly how

14   these entities work together, how they reach into this

15   jurisdiction, whether or not your showing of purposeful

16   availment is ultimately justified based upon the facts that

17   will be demonstrated through discovery.  Jurisdiction is

18   something that can be raised at any -- any time and all of

19   these other things can be raised on summary judgment.

20           And in the interest of judicial economy, I will tell

21   all of you now, as you do this targeted discovery to find out

22   these things, and you get the answers, there's no reason that

23   the defense has to wait until the close of all the evidence

24   with respect to Limestone and Mr. Murphy and everything else

25   before they come back with a motion.

Ruling of the Court

```
1          If Hammy Media has -- you've had the opportunity and
2   y'all have discovered what the facts are and if Hammy Media
3   believes there's no genuine issue of material fact, they're
4   entitled to the protections of the law, and for one or more
5   reasons that may have been brought in these motions or that may
6   show themselves later that they can get out, just because we
7   stick summary judgment dispositive motions at the end of the
8   scheduling order doesn't mean you have to wait until then to
9   file.  So I will encourage all of you to work diligently to get
10  the answers to those questions.  And then, we'll go from there.
11         Mr. Fray-Nitzer -- is it Witzer or Nitzer?
12         MR. FRAY-WITZER:  Yes, Your Honor, Fray-Witzer.
13         THE COURT:  Witzer.  I'm sorry.  I'm misreading my
14  note here.
15         I agree with you.  If I follow the Reddit case,
16  plaintiff loses.  I think that may be how this ultimately comes
17  out.  I think given the state of the law that at this point in
18  the process, it -- it would be premature to short-circuit that.
19  And that's why I've reached the decision that I have.
20         So motion Hammy Media, both of those motions, are
21  denied.
22         As to MG Billing LTD, MindGeek USA, and MG Freesites
23  II, those motions are granted.
24         As to Trafficstars, it's denied.
25         As to xHamster IP Holdings LTD, it's granted.
```

Ruling of the Court

1              As to Wisebits IP LTD, it's denied.

2              And as to Wisebits LTD, it's granted.

3              Now, while I have you-all here -- and I'm going to

4    talk to this group first, because with the Hammy Media folks

5    and the MG Freesites folks involved, I imagine you're going to

6    take a little longer.  I want you to, in light of the Court's

7    findings and rulings today, to get together and come up with a

8    amended scheduling order that will allow for a reasonable

9    period of discovery.  I'm going to suggest to you that because

10   of the peculiar issues related to these media defendants that

11   you may want to insert a discovery plan that has phased

12   discovery with respect to those questions so we can get that

13   taken care of and dealt with sooner rather than later.

14              And then, I'm interested in moving this case toward

15   dispositive motions and trial as soon as possible.  I realize

16   plaintiff is casting about to find as many defendants as

17   possible.  And I'm not being derogatory in that.  I know that

18   happens in a lot of cases.  But at -- at its -- at its base,

19   this is a pretty simple case.  You know, we've got Mr. Murphy

20   misbehaving at Limestone.  Everybody pretty much agrees about

21   what happened.  This -- this shouldn't be that -- that

22   difficult.

23              So, you know, these cases, one of them is a 2020

24   case.  They're -- they're lingering.  And I know we've gone

25   into a lot of amendments.  We've been dealing with the Hague

Ruling of the Court

1    Convention and all of this other nonsense, but I -- I want you

2    to put your heads together and come up with something that

3    works.

4            Now, with respect to the other cases, you don't have

5    the delays that are inherent in dealing with these media

6    defendants.  But yet because they're all related, we've --

7    we've tried to have sort of a consolidated discovery to keep

8    from people having to sit for multiple depositions and that

9    type thing.  So I'm going to ask you to coordinate with these

10   folks on that amended scheduling order.

11           I also want you to give some thought to, given the

12   number of plaintiffs and any differences that might end up

13   being there with regard to defendants, the practicalities of

14   trying these cases together.  Separately, if we're going to

15   separate them, how we separate them.  I can separate them just

16   by case number, whatever.  But you've got a lot of common

17   facts, a lot of common witnesses, common parties.  So give that

18   some thought.

19           In order for you to have some meaningful time the

20   meet and confer and come up with a scheduling order in each of

21   these cases that is going to be coordinated and practical, I'm

22   going to give y'all 30 days from today to get that to me.

23           Consider carefully what you put into that scheduling

24   order.  Because given the spinning of our wheels we've done for

25   the last two or three years, there's not likely to be a whole

Ruling of the Court

1    lot of opportunities to change it going forward.  Obviously,

2    things come up.  But I want you to don't just come up with

3    something quickly that you think will satisfy the judge and,

4    ah, we'll go back and change it later.  I want you to come up

5    with something that's likely to work.

6          Anybody have any questions?  Or have I omitted

7    anything going through this?

8          MR. SALLEY:  Judge, it's our understanding that

9    MindGeek in general wants to take some IMEs of our clients.

10   And as far as scheduling goes, we're trying to coordinate it.

11   I think we've got a scheduling order that works and are

12   discussing it.  But light of figuring out the plan and getting

13   things to move, I do have some concerns with, you know, with

14   being at least 10 plaintiffs that need to be -- have an IME

15   conducted and then depositions need to be taken prior to that

16   and, obviously, our need to satisfy the Court's request to take

17   some fact-finding depositions and discovery related to the

18   targeted issues.  We just want to make sure that if there are

19   any disputes, how we should resolve those if there are any and

20   particularly if the Court is interested in how we can kind of

21   get that coordinated.

22         THE COURT:  Let me answer the last one first.  I'm

23   not particularly interested in how y'all get that coordinated

24   as long as you get it coordinated.  If you run into any

25   problems, you know what my preference is.  You notify me you've

Ruling of the Court

1   got a discovery dispute.  We'll set up a call.  We'll try to

2   get worked out.

3           Mr. Mayer, in light of what's happened today, I -- I

4   know everybody's been anxious to move forward with discovery.

5   But I would suggest that maybe y'all have some conversations

6   about this.  I personally would prefer not to have these young

7   ladies subjected to multiple IMEs for the same purpose.  And I

8   would think y'all could get together on that.

9           **MR. MAYER:**  Yeah.  And Your Honor, I would just say

10  we are working on -- we did receive some proposed 30(b)(6)

11  topics.  We're coming up with some dates.  I'm hoping that we

12  can accomplish all of those depositions in the next couple of

13  months.  Based on what's happened today, I think it would be

14  worth a discussion as to whether it makes sense to -- to

15  bifurcate discovery, focus on the summary judgment issues and

16  then the damages issues afterwards, since I think the IME --

17  that the -- the -- the plaintiff's depositions and IMEs are

18  likely to think the most amount of time.  So I think that's

19  something that we can -- we can discuss.

20          **THE COURT:**  Yeah.  And I'm not going to make any

21  formal pronouncement about bifurcation.  But I -- when I

22  mentioned to you the idea of having phased discovery or

23  discovery plan along those lines, that's what I was talking

24  about.  So y'all can decide how best that works for you.

25          All right.

Ruling of the Court

1          Anything else?

2          All right.

3          Hear -- hearing nothing else, I believe that takes

4    care of today.  Thank you for coming in.  And we are adjourned.

5    Thank you.

6          (The Court adjourns at 3:50 p.m.)

7

8                        ********

9                  C E R T I F I C A T E

10      I certify that the foregoing is a correct transcript from

11   the record of proceedings in the above-entitled matter.

12

13    /s/Teresa B. Johnson                    08/24/2023

14   Teresa B. Johnson, CVR-M-CM, RVR, RVR-M         Date

15

16

17

18

19

20

21

22

23

24

25

## I N D E X

**DESCRIPTION**                                          **PAGE**

Motions to Dismiss – MindGeek ..........................4

      Ruling of the Court ...........................21

Motion to Dismiss – Trafficstars ....................23

      Ruling of the Court ...........................32

Motion for Judgment on the Pleadings – Hammy Media ...35

      Ruling of the Court ...........................61

Certificate of Reporter ..............................68