**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**SPARTANBURG DIVISION**

| | |
|---|---|
| JANE DOES 1-9, | ) |
| | ) |
|                 Plaintiffs, | ) |
| | ) |
| vs. | ) CA No.: 7:20-cv-00947 |
| | ) |
| COLLINS MURPHY , SHARON | ) |
| HAMMONDS, BRENDA F. WATKINS, | ) |
| LIMESTONE UNIVERSITY , MG | ) |
| FREESITES, LTD., d/b/a PORNHUB.COM, | ) |
| MG FREESITES II LTD., MINDGEEK | ) |
| S.A.R.L., MINDGEEK USA, INC., MG | ) |
| BILLING LTD., and HAMMY MEDIA LTD. | ) |
| d/b/a XHAMSTER.COM, TRAFFICSTARS | ) |
| LTD., WISEBITS LTD, XHAMSTER IP | ) |
| HOLDINGS LTD, WISEBITS IP LTD., | ) |
| | ) |
|                 Defendants. | ) |
| ———————————————————— | ) |
| | ) |
| JANE DOE, | ) |
| | ) |
|                 Plaintiff, | ) |
| | ) |
| vs. | ) CA No.: 7:21-cv-03193 |
| | ) |
| LIMESTONE UNIVERSITY F/K/A | ) |
| LIMESTONE COLLEGE, COLLINS | ) |
| MURPHY, MG FREESITES, LTD., d/b/a | ) |
| PORNHUB.COM, and HAMMY MEDIA, | ) |
| LTD. d/b/a XHAMSTER.COM, | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF**
**MOTION TO COMPEL DISCOVERY AGAINST  DEFENDANTS HAMMY MEDIA**
**LTD d/b/a XHAMSTER.COM and TRAFFICSTARS LTD.**

Pursuant to Fed. R. Civ. Pro.  26 and 37 the Plaintiffs, move the Court for an Order

compelling Defendants Hammy Media LTD d/b/a XHamster and Defendant TrafficStars LTD

(collectively the "Defendants") to provide full and complete discovery responses to all of the below requests within thirty (30) days of the Court's Order.

## BACKGROUND

As previously argued to this Court, Hammy Media is a company, created solely to give anonymity to the real owners of xHamster. The millions of dollars generated by xHamster.com, through advertising or by paid content, goes to the network of xHamster companies like Wisebits, TrafficStars, Tecom, Technius or xHamster IP Holdings which work together to operate the Hamster dynasty. Plaintiffs have alleged that the Defendants are intentionally obfuscating their corporate structure and ownership to skirt liability.

Although the Plaintiffs have propounded a magnitude of discovery requests, discovery has moved very slowly. To date, Hammy Media has only produced approximately 23 documents in total, far less than is typical in a case of this nature and that they know exist. In addition, the Defendants have unilaterally decided to apply limitations on searches for documents, answers to Interrogatories, testimony for 30(b)(6) deponents, and have outright refused to answer certain discovery requests by stating "…Hammy will not be producing documents in response to this request."

In its order denying Defendants' motions on August 16, 2023, this Court found that "the Complaint at least as alleged states sufficient facts to state claims as set out. . . ." MTD. Hrg. Trns. p. 61, lns. 24-5 (08/16/23).

As this Court stated:

> This idea of financial remuneration, whether it took place, the methodology under which it took place, how that relates to the publication and who published it, you've alleged those things, but you're going to have to elicit evidence in discovery to support those things.

2

Trns. P. 62, lns. 4-9 (08/16/23).

With regard to Jurisdiction, this Court stated:

> There are questions about exactly how these entities work together, how they reach into this jurisdiction, whether or not your showing of purposeful "availment" is ultimately justified based upon the facts that will be demonstrated through discovery.

Trns. P. 62 lns. 13-17.

The Courts' words resonated with the Plaintiffs and targeted discovery was served that focused on jurisdictional and financial remuneration elements. Despite the Plaintiff's best efforts, they have been confronted with improper objections, evasive or incomplete disclosures, and failure by the Defendants to engage in even reasonable searches for relevant documents. Further, the Defendants have chosen to unilaterally determine whether responsive documents in their possession are related to Plaintiffs' requests.

The Fourth Circuit recognizes that targeted advertising is compelling evidence of a party's purposeful availment of a jurisdiction. *Kurbanov*, *supra*, 963 F.3d at 353. The Fourth Circuit noted that in the online world many commercial relationships begin with free access, which then transitions to other commercial offers and relationships. "[T]he mere absence of a monetary exchange does not automatically imply a non-commercial relationship. It is hardly unusual for websites to be free to use in today's Internet because many corporations make money selling advertising space, by directing ads to the screens of computers employing their software." *Id*. (quotation omitted). Under these circumstances, the Fourth Circuit concluded that a defendant who ultimately profits from visitors by selling directed advertising space and data purposefully avails himself of the privilege of conducting business within that state. *Id*.

In this case, the Defendants work as one and make significant efforts to direct advertising and marketing materials to the United States and have even selected U.S. companies to handle its

content delivery. (FAC ¶¶ 31, 40, 45, 52, 89, 106.) Indeed, the Defendants' argument against this Court's jurisdiction depends upon the nature of their relationship to each other and connections to the United States. As such discovery in this case has been focused on these jurisdictional items.

What is important to remember is that the Defendants utilize Content Delivery Networks (CDNs), which subject the defendants to jurisdiction in this Court. CDNs are "a distributed network of servers covering a particular geographic area, which permits users to access the site from any server in the network, not just the host server, and thus decreases the distance between users and the server." *Will Co. Ltd.*, 47 F.4th at 925. The *Will Co.* Court noted the significance of the placement of CDN services. Given how important loading speed is to achieve and maintaining an audience for the Defendants, the agreements with various vendors and CDN's are critical for profit revenue and content delivery.

To the extent, the Defendants argue that Cloudflare, nor any other third party vendor they contract with, does not provide CDN services to xhamster.com in the United States, such a contention appears to be false based on public information. The website CDN Finder, which looks up the names of all CDNs used on a webpage, shows the CDN for xhamster.com as Cloudflare. *See* CDNplanet.com, *CDN Finder: xhamster.com*,

https://www.cdnplanet.com/tools/cdnfinder/#id:1327562395717_4252a8ba7b57328606b4

(accessed Dec. 30, 2022). The website SecurityTrails, which "strives to make the biggest treasure trove of cyber intelligence data readily available in an instant," lists two IP addresses for xhamster.com, both of which are in the United States and hosted by Cloudflare.

## PROCEDURAL BACKGROUND

Plaintiffs served their First Set of Interrogatories on Defendant Hammy Media LTD. d/b/a XHAMSTER.COM  on November 15, 2023. Defendant responded on January 31, 2024. (See Exhibit A). Plaintiffs served their First Set of Interrogatories on Defendant TrafficStars LTD on November 15, 2023. Defendant responded on January 29, 2024. (See Exhibit B[1]).

Plaintiffs served their Second Set of Requests for Production on Defendant Hammy Media LTD d/b/a/ XHamster.com on November 15, 2023. Defendants responded on January 31, 2024 and supplemented their response on February 12, 2024. (See Exhibits C and D). Plaintiffs served their Second Set of Requests for Production on Defendant TrafficStars on November 15, 2023. Defendant responded on January 29, 2024 and supplemented on February 13, 2024. (See Exhibits E and F).

The parties held their final Meet and Confer on February 9, 2024. At this time the Defendants indicated what they intended to supplement and what they did not intend to supplement. A summary email was sent to the Defendants clarifying each position. (See Exhibit G).

Following the meet and confer Defendant Hammy Media LTD d/b/a XHamster.com and Defendant TrafficStars each supplemented their answers to discovery on February 12, 2024 and February 13, 2024. However this supplemental production did not resolve any disputes discussed in this Motion.

On February 21, 2024 the Court held a status conference to discus outstanding discovery issues. At this time the Plaintiffs advised the Court of the current discovery disputes regarding

---

[1] Defendants have marked their responses to Plaintiff's discovery requests as Attorney's Eyes Only, as such Plaintiffs are filing only the requests made and their objections.

the document production with the Defendants. The Plaintiff requested permission to file a

Motion to Compel on these issues since the parties previously attempted to meet and confer.

## LEGAL STANDARD

Fed. R. Civ. Pro. 26(b) provides:

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. Pro. 26(b)(1).

Fed. R. Civ. Pro. 37(a)(3) provides that the Court may compel discovery, *inter alia*, where-
(iii) a party fails to answer an interrogatory submitted under Rule 33; or
(iv) a party fails to produce documents or fails to respond that inspection will be permitted–or fails to permit inspection–as requested under Rule 34.

Fed. R. Civ. Pro. 37(a)(3)(B)(iii & iv).

Fed. R. Civ. Pro. 37(a)(4) further provides that "[f]or purposes of this subdivision (a), an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond."

Parties to civil litigation have broad discovery rights. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Murray Sheet Metal Co*., 967 F.2d 980, 983 (4th Cir. 1992) ("National Union") (quoting *Hickman v. Taylor,* 329 U.S. 495, 507 (1947)). Conversely, limitations on discovery are to be construed narrowly. See, e.g., *Hawkins v. Stables*, 148 F.3d 379, 383 (4th Cir. 1998) ("[A]ssertions of evidentiary privilege are narrowly and strictly construed . . . ." (citing Trammel v. United States, 445 U.S. 40, 50–51 (1980))).

## ARGUMENT

The Plaintiffs' discovery requests comply with the standards imposed by Rule 26(b)(1) and thus an Order compelling the Defendant to produce full and complete responses to Plaintiffs discovery requests is proper. All of Plaintiffs' requests, at issue in this Motion, involve nonprivileged matters that are relevant to the parties' claims  and proportional to the needs of the case.

The Defendants are part of an associated enterprise under the federal RICO statutes along with others "known and unknown including agents and employees of the defendants". (Fourth Amended Complaint ¶ 134, Dk. 99). Therefore, the scope of the Defendants' contacts with "the forum" include anything directed at or in the United States. Here, there has been limited opportunity for the Plaintiff to conduct proper discovery with regard to the Defendants, creating a distinct disadvantage for the Plaintiffs in a case where the allegations include the existence of a coordinated enterprise. The Defendants are refusing to provide even minimal discovery based upon their illogical argument that this Court has no jurisdiction over them and despite the Court denying the Defendant's Motion to Dismiss on jurisdictional grounds.

XHamster brings in an estimated $236,175,120.00 in revenue annually from advertising. The xHamster website promises that "creators" can earn up to $30,000 each month" by uploading content. It is absolutely inconceivable that the United States, including South Carolina, accounts for none of this revenue.

Lastly, the Defendants have been unilaterally limiting their responses to discovery and the 30(b)(6) witness testimony to the 2019-2020 timeframe. This is improper. One of the Defendants own 30(b)(6) witnesses, Constantinos Christoforou, testified the Plaintiffs were harmed when the video was uploaded in 2012, confirming the relevant time period for this case

begins in 2012. The Plaintiffs have continuously reiterated, at depositions and in our written

requests for discovery, that the relevant time period in this case is 2012-2020.

I.     **List of Outstanding Discovery Items**

    a.  **Plaintiff's First Set of Interrogatories to Defendant Hammy Media, LTD (See Exhibit A)**

**INTEROGATORY 1**: Please identify and discuss, in detail, the algorithm used for presenting content to users of xHamster.com and how content on the website is disseminated. This includes, but is not limited to, the names, contact information, and addresses of all the individuals responsible for developing and designing the algorithm utilized by xHamster.com.

    **OBJECTION:** Hammy objects to this interrogatory as being overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible information. Additionally,  Hammy objects to the request to provide names and contact information for individuals who live and work outside of the United States, as this request is designed to harass individuals who are not part of this lawsuit and are outside of the jurisdiction of the United States courts. Additionally, Hammy objects to the time frame for this interrogatory as defined by the Plaintiffs. Accordingly, any response to this interrogatory is limited to the relevant time period of 2019-2020. Subject to this objections, Hammy states as follows.

    **ANSWER:** Regarding the algorithm used for presenting content to users of the website www.xhamster.com (hereinafter "the Platform") (and how content is disseminated among the users of the website), which may be referred to as "recommendation system" in 2019-2020: The Platform used a recommendation system to offer users a personalized (if registered user or if cookie/prior search information was available on the user's computer) and non-personalized experience, and thus make navigation on the Platform easier and more convenient. Recommendation system suggested content based on user preferences as expressed through previous interactions made by the user on the Platform, such as following a channel or person, or history of viewing content. Interaction of a user with the Platform was an indicator that helped the recommendation system to predict content that the user is likely to be interested in as well as the content in which the user may be less interested and may prefer not to watch. The recommendation system was based on different factors, including without limitation: - User interactions: the videos the user likes/dislikes, adds to the favorites, comments, video watching time, persons or channels the user follows. Video information: tags, category, and number of video views - User information: language preference and country location of the user. Randomly, the algorithm also sometimes presented videos in a chronological (based on the date and time of the video was first uploaded to our system) order.

At the meet and confer the Defendants stated they did not intend to supplement this

interrogatory. This Interrogatory requests the names, contact information, and addresses of the

individuals responsible for developing and designing the algorithm utilized by xHamster.com for presenting content to users on their website. By objecting to this Interrogatory the Defendant is essentially shielding the Plaintiffs from relevant witnesses in this case, shielding us from learning about the Defendant's content creation process, and shielding us from how the Defendant makes money through content creation. All of which are relevant and proportional to this case.

**INTERROGATORY 7:** Please identify and discuss, in detail, how advertising revenue is generated on xHamster.com. This includes, but is not limited to, the names, contact information, and address of the individuals who are tasked with making decisions regarding advertisements on xHamster.com.

**OBJECTION:** Hammy objects to the time frame for this interrogatory as defined by the Plaintiffs. Additionally, Hammy objects to the request to provide names and contact information for individuals who live and work outside of the United States, as this request is designed to harass individuals who are not part of this lawsuit and are outside of the jurisdiction of the United States courts. Accordingly, any response to this interrogatory is limited to the relevant time period of 2019-2023. Subject to this objections, Hammy states as follows.

**ANSWER:** Please see the response to Interrogatory number 6

At the meet and confer, the Defendants stated they did not intend to supplement this Interrogatory. First, Defendant's response to Interrogatory number 6 is not sufficient regarding how advertising revenue is generated on xHamster. In addition no names, contact information, and address of the individuals who are tasked with making decisions regarding advertisements on xHamster.com were disclosed. Again, the Defendants are withholding relevant witnesses who the Plaintiffs need to depose to understand topics of revenue, advertising, and content creation in regard to the Defendants.

**INTERROGATORY 11:** Please identify and discuss, in detail, the content moderation policy and procedure on the xHamster.com website. This includes, but is not limited to, the names, contact information, and address of the individuals who are tasked with making decisions regarding content moderation.

**OBJECTION:** Hammy objects to the request to provide names and contact information for individuals who live and work outside of the United States, as this request is designed to harass individuals who are not part of this lawsuit and are outside of the jurisdiction of the United States courts. Additionally, Hammy objects to the time frame for this interrogatory as defined by the Plaintiffs. Accordingly, any response to this interrogatory

is limited to the relevant time period of 2019-2020. Subject to this objections, Hammy states as follows.

**ANSWER:**

In 2019-2020 our platform had the following moderation process for all content uploaded by users.

1. To upload a video, the uploader had to create an account.

2. Then the uploader needed to go to the special part of the website where it was possible to upload

content – the upload page.

3. On that page the uploader had to fill in all the required information and accept the specific

upload rules, including a guarantee that the uploaded content is legal.

Each uploaded video was reviewed by our moderation team to verify that the video did not have

any inappropriate or illegal content, in accordance with our internal documentation and guidelines.

As for the technical tools used during the moderation process:

1. The Platform had a system which analyzed text related to the content (title, description) for prohibited and suspicious words. Such words were flagged by the system and displayed to the moderation team during the moderation process.

2. The Platform, in collaboration with various leading software providers (for example Google Safety API), detected potentially harmful content. All content after the upload and prior to moderation was processed by such software which allows the platform to initially identify content that may potentially violate the platform's User Agreement. The software enabled the platform to detect inappropriate content using a shared database of digital hashes (fingerprints) and could also

detect inappropriate content based on artificial intelligence technologies.

3. The platform used digital fingerprinting technology which has been specifically designed for the platform. In simple words, this software prevented inappropriate content from being reuploaded. Digital fingerprinting technology compares the hashes (fingerprints) of newly uploaded content with a database of hashes (fingerprints) of previously removed content. If there is a match, this correlation is highlighted for the moderation team and a human-based decision is made about

the content.The upload and moderation process as it existed in 2019-2020 was as follows:

1. To upload a video, the uploader must create an account.

2. Then the uploader needed to go to the special part of the website where it is possible to upload content - the upload page.

3. Fill in all the required information and accept the specific upload rules. Guarantee that the content is legal.

4. The content then went through the moderation process described above except the ID check stage.

**INTEROGATORY 12:** Please identify and discuss, in detail, data collection on the xHamster.com website. This includes, but is not limited to, the names, contact information, and address of the individuals who are tasked with making decisions regarding data collection.

**OBJECTION:** Hammy objects to the request to provide names and contact information for individuals who live and work outside of the United States, as this request is designed to harass individuals who are not part of this lawsuit and are outside of the jurisdiction of the United States courts. Additionally, Hammy objects to the time frame for this interrogatory as defined by the Plaintiffs. Accordingly, any response to this interrogatory is limited to the relevant time period of 2019-2023. Hammy also objects that this interrogatory is unintelligible and unreasonably broad. Subject to this objections, Hammy states as follows.

**ANSWER:** (See Exhibit A).

**INTERROGATORY 13:** Please identify and discuss, in detail, data analysis on the xHamster.com website. This includes, but is not limited to, the names, contact information, and address of the individuals who are tasked with making decisions regarding data analysis.

**OBJECTION:** Hammy objects to the request to provide names and contact information for individuals who live and work outside of the United States, as this request is designed to harass individuals who are not part of this lawsuit and are outside of the jurisdiction of the United States courts. Hammy also objects that this interrogatory is unintelligible and unreasonably broad. Subject to this objections, Hammy states as follows. Additionally, Hammy objects to the time frame for this interrogatory as defined by the Plaintiffs. Accordingly, any response to this interrogatory is limited to the relevant time period of 2019-2023.

**ANSWER:** (See Exhibit A).

At the meet and confer, the Defendants stated they did not intend to supplement Interrogatories 11-13. Collectively Interrogatories 11 through 13 are critically in prodivind us with the names of necessary individuals to gather information on content moderation and data collection which is relevant to our case.

**INTERROGATORY 17:** For the relevant time period, please identify and discuss, in detail, how content on the xHamster.com website was reported as objectionable by users or the general public for any reason. This includes, but is not limited to, the names, contact information, and address of the individuals who are tasked with making decisions regarding the reporting process and how this process changed over the relevant time period.

**OBJECTION:** Hammy objects to this interrogatory as being overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible information. Additionally, Hammy objects to the request to provide names and contact information for individuals who live and work outside of the United States, as this request is designed to harass individuals who are not part of this lawsuit and are outside of the jurisdiction of the United States courts. Additionally, Hammy objects to the time frame for this interrogatory as defined by the Plaintiffs. Accordingly, any response to this interrogatory is limited to the relevant time period of 2019-2023. Hammy also objects to this interrogatory as being wholly irrelevant to Plaintiffs' actual claims in this litigation and not proportional to the claims against Hammy. Subject to this objections, Hammy

states as follows.
**ANSWER:** (See Exhibit A).

At the meet and confer, the Defendants stated they did not intend to supplement this

Interrogatory.  This Interrogatory is relevant to understand how the Defendants website worked,

what users/uploaders could see and have access to, and what the Defendants have access to on

the backend. The Plaintiffs, again, requested the names of employees that would be

knowledgeable on this topic.

> **INTEROGATORY 18:** For the relevant time period, please identify and discuss, in detail, Hammy Media's policy and procedures for handling reports that content on the xHamster.com website was made or distributed without consent. This includes, but is not limited to, the names, contact information, and address of the individuals who are tasked with making decisions regarding the reporting policies and procedures and how the process has changed over the relevant time period.
>
> > **OBJECTION:** Hammy objects to this interrogatory as being overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible information. Additionally, Hammy objects to the request to provide names and contact information for individuals who live and work outside of the United States, as this request is designed to harass individuals who are not part of this lawsuit and are outside of the jurisdiction of the United States courts. Hammy also objects to this interrogatory as being wholly irrelevant to Plaintiffs' actual claims in this litigation and not proportional to the claims against Hammy. Additionally, Hammy objects to the time frame for this interrogatory as defined by the Plaintiffs. Accordingly, any response to this interrogatory is limited to the relevant time period of 2019-2023. Subject to this objections, Hammy states as follows.
> > **ANSWER:** (See Exhibit A).

At the meet and confer, the Defendants stated they did not intend to supplement this

Interrogatory. Here, the videos in question are non-consensual footage. As such, discovery

concerning non-consensual footage is relevant to determine what processes were in place, or not

in place, for the Defendants to remove or flag improper non-consensual content on their

platform. This is relevant to content moderation.

> b. **Plaintiffs Second Set of Requests for Production to Defendant Hammy Media LTD (See Exhibit B).**

**REQUEST NO. 7:**

All documents that report, describe, summarize, analyze, discuss, or comment on compensation or sharing of revenues in any form to users, user accounts, or third-party individuals or entities.

> **OBJECTION** Hammy objects to this request as being overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible information. Additionally, Hammy objects to the time frame for this interrogatory as defined by the Plaintiffs. Accordingly, any response to this request is limited to the relevant time period of 2019-2023. Hammy also objects to this request as being wholly unrelated to Plaintiffs' claims and not proportional to the needs of the case in accordance with Fed. R. Civ. P. 26(b)(1).
>
> **RESPONSE**
> Subject to the foregoing objections, Hammy will produce responsive documents relating to the videos in question in the present litigation if any such responsive documents exist. Hammy states that no such documents exist.

At the meet and confer, the Defendants stated they did not intend to supplement this Interrogatory. The Plaintiffs find it troubling that "no documents exist" regarding the compensation or sharing of revenue from the Defendants to any users, user accounts, third parties, individuals or entities.  The Defendants have produced documents concerning the revenue sharing programs. However, the specific contours of the revenue sharing programs have been withheld. Documents have been provided in discovery that show the Defendants track this information through AdSense. How could the Defendants track through AdSense yet have no documents to produce in response to our request? Furthermore, if revenue sharing was only in place for a period of time the Plaintiff's request the Defendants provide clarity in their answer.


**REQUEST NO. 8**
All documents that report, describe, summarize, analyze, discuss, or comment on complaints that content is non-consensual, in whole or in part.

> **OBJECTION**
> Hammy objects to this request as being overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible information. Additionally, Hammy objects to the time frame for this interrogatory as defined by the Plaintiffs. Accordingly, any response to this request is limited to the relevant time period of 2019-2020. Hammy also objects to this request as being wholly unrelated to Plaintiffs' claims and not proportional to the needs of the case in accordance with Fed. R. Civ. P. 26(b)(1).
> **RESPONSE**

> Subject to the foregoing objections, Hammy will produce responsive documents in its care, custody or control relating solely to the account under which the videos in question at the litigation were posted. Hammy refers Plaintiffs to documents bates stamped HAM 000120 – HAM 000170.

At the meet and confer, the Defendants stated they did not intend to supplement this

Interrogatory. The Defendants have refused to provide a complete response to this request that

includes the relevant time period of 2012-2020. The videos in question were non-consensual

footage. As such, it is relevant to determine what processes were in place or not in place for the

Defendant to remove or flag improper non-consensual content. This goes to content moderation.

## REQUEST NO. 12
All documents that report, describe, summarize, analyze, discuss, or comment on the training of individuals to monitor or moderate content uploaded, or submitted to be uploaded, to any Hammy Media site.

> **OBJECTION**
> Hammy objects to the time frame for this interrogatory as defined by the Plaintiffs. Accordingly, any response to this request is limited to the relevant time period of 2019-2023.
> **RESPONSE**
> Subject to the foregoing objections, Hammy will produce those responsive documents in its care, custody, or control. Hammy refers Plaintiffs to documents bates stamped HAM 000185 – HAM 000194.

At the meet and confer, the Defendants stated they did not intend to supplement this

Interrogatory. The Defendants have refused to provide a complete response from the relevant

time period, 2012-2020, regarding any training materials or guidelines, or memos, or reporting

system used to monitor or moderate any content that upload or submitted to the Defendants.

## REQUEST NO. 15
Please produce all Documents relating Hammy Media's profits or value from videos/channels or playlists that are displayed on its websites, including any benefit or revenues attributed to materials flagged or reported for nonconsensual content.

> **OBJECTION**
> Hammy objects to this request as being overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible information. Hammy also objects to this interrogatory as being unintelligible. Additionally, Hammy objects to the time frame for this interrogatory as defined by the Plaintiffs. Accordingly, any response to this request is limited to the relevant time period of 2019-2020. Hammy also objects to

14

this request as being wholly unrelated to Plaintiffs' claims and not proportional to the
needs of the case in accordance with Fed.
R. Civ. P. 26(b)(1).
**RESPONSE**
Subject to the foregoing objections, Hammy will produce any responsive documents that
relate to the videos in question in the present litigation, to the extent that such documents
exist. Hammy refers Plaintiffs to document bates stamped HAM 000195.

At the meet and confer, the Defendants stated they did not intend to supplement this

Interrogatory. The Defendants have unilaterally limited their response to only the videos in

question. What is important to note is that upon information and belief, the Defendants did not

have a policy in place to screen for non-consensual content. As such profits or values could be

attributed to non-consensual content (such as our content) which would make this request

relevant and proportional to our case.

**REQUEST NO. 17**
Please produce all Documents regarding the identification and age verification processes for
users of Hammy Media's websites including, but not limited to, account holders and those
depicted in sexually explicit content. This request includes any Documents reflecting procedures
not adopted or implemented.
**OBJECTION**
Hammy objects to this request as being overbroad, unduly burdensome, and not
reasonably calculated to lead to the discovery of admissible information. Additionally,
Hammy objects to the time frame for this interrogatory as defined by the Plaintiffs.
Accordingly, any response to this request is limited to the relevant time period of 2019-
2023. Hammy also objects to this request as being wholly unrelated to Plaintiffs' claims
and not proportional to the needs of the case in accordance with Fed. R. Civ. P. 26(b)(1).
**RESPONSE**
Pursuant to the foregoing objections, Hammy will not be producing documents in
response to this request.

At the meet and confer, the Defendants stated they did not intend to supplement this

Interrogatory. The answer to this request is troubling, as the Defendants indicated they "will not

be producing documents." Upon information and belief, the Defendant did not screen content for

identification and age or have any policies in place for screening for identification and age. If

that is the case the Plaintiff would request an Order compelling the Defendant to state that no

documents exist in regards to this request and the reason why they do not exist (i.e. destroyed,

Hammy did not monitor or check for identification or age, etc.). There is testimony in this case

indicating that before 2021 the Defendants did not collect verified documents, supporting our

position that identification and age were not screened prior to content being published on the

Defendants platforms.

**REQUEST NO. 27**
For the relevant time period, all documents related to search engine optimization.
    **OBJECTION**
    Hammy objects to this request as being overbroad, unduly burdensome, and not
    reasonably calculated to lead to the discovery of admissible information. Additionally,
    Hammy objects to the time frame for this interrogatory as defined by the Plaintiffs.
    Accordingly, any response to this request is limited to the relevant time period of 2019-
    2023. Hammy also objects to this request as being wholly unrelated to Plaintiffs' claims
    and not proportional to the needs of the case in accordance with Fed. R. Civ. P. 26(b)(1).
    **RESPONSE**
    Pursuant to the foregoing objections, Hammy will not be producing documents in response
    to this request.

At the meet and confer, the Defendants stated they did not intend to supplement this Interrogatory.

SEO or Search Engine Optimization is a critical piece of this case. SEO is the algorithm for the

Defendants to advertise and make profits. Plaintiff's expert will provide opinions that are related

to the Defendants SEO process and algorithm. As such any policies, procedures, documents, notes,

memorandums, guidelines, third party vendors, contracts, agreements, pricing sheets, summaries,

analytics, tracking of SEO from 2013- 2020 would be relevant to this case.

**REQUEST NO. 29**
Please produce all reports made to Hammy Media by law enforcement, users, and/or the public
about videos taken without consent or knowledge - including any reports made regarding the
videos which are the subject of the Complaint.
**OBJECTION**
Hammy objects to the time frame for this interrogatory as defined by the Plaintiffs. Accordingly,
any response to this request is limited to the relevant time period of 2019-2023.
**RESPONSE**
    Subject to the foregoing objections, Hammy will produce responsive documents in its care,
    custody or control relating solely to the account under which the videos in question at the

litigation were posted. Hammy refers Plaintiffs to documents bates stamped HAM 000120 – HAM 000170.

At the meet and confer, the Defendants stated they did not intend to supplement this

Interrogatory. Again the Defendants limited their answer to just the videos in question. However,

the Plaintiffs requested all reports and take down requests of content posted to the Defendants

platform without consent or knowledge. This is relevant to our case because our content was

posted to the platform without consent or knowledge and requested to be taken down. The

willingness of defendants to make money from intimate videos posted to their platform without

safeguards in place to ensure that the people depicted within the videos have consented is at the

core of this case. At a minimum, defendants should produce any documents related to voyeurism

videos, which is the subject of this case. Refusing to produce anything about the takedown of

voyeurism videos, which is the subject of our complaint, is improper and an abuse of the

discovery process.


**REQUEST NO. 30**
Please produce all communications during the relevant time period that discuss hidden cam(era), spy cam(era), voyeur(ism), locker room, bathroom/shower videos, limestone college, or South Carolina. 18

      **OBJECTION**
      Hammy objects to this request as being overbroad, unduly burdensome, and not
      reasonably calculated to lead to the discovery of admissible information. Additionally,
      Hammy objects to the time frame for this interrogatory as defined by the Plaintiffs.
      Accordingly, any response to this request is limited to the relevant time period of 2019-
      2023. Hammy also objects to this request as
      being wholly unrelated to Plaintiffs' claims and not proportional to the needs of the case
      in accordance with Fed. R. Civ. P. 26(b)(1).
      **RESPONSE**
      Subject to the foregoing objections, Hammy will produce responsive documents in its
      care, custody or control relating solely to the account under which the videos in question
      at the litigation were posted. Hammy refers Plaintiffs to documents bates stamped HAM
      000120 – HAM 000170.

Hidden camera, spy camera, voyeurism, locker room, bathroom/shower, limestone, and South

Carolina is all content that was allowed on the Defendant's platform. The revenue profits from

this content also motivates the Defendant to obtain new content in these topic areas. As such this

question is relevant to determine what screening process was in place, how and what were the

Defendants flagging as proper and improper. Internal Communications of the employees

involved in these tasks would lead to this relevant information.

**REQUEST NO. 32**
Please produce all videos and images, with their associated metadata, for the relevant time
period, that were associated with keywords or categories or had titles or tags that included the
words "voyeur," "cam," "camera," "hidden," "spy," "locker room," "South Carolina." or "public
nudity."

> **OBJECTION**
> Hammy objects to this request as being overbroad, unduly burdensome, and not
> reasonably calculated to lead to the discovery of admissible information. Additionally,
> Hammy objects to the time frame for this interrogatory as defined by the Plaintiffs.
> Accordingly, any response to this  request is limited to the relevant time period of 2019-
> 2023. Hammy also objects to this request as being wholly unrelated to Plaintiffs' claims
> and not proportional to the needs of the case in accordance with Fed. R. Civ. P. 26(b)(1).
> **RESPONSE**
> Pursuant to the foregoing objections, Hammy will not be producing documents in
> response to this request.

Hidden camera, spy camera, voyeurism, locker room, bathroom/shower, limestone, and South

Carolina are all content that was allowed on the Defendant's platform. The revenue profits from

this content also motivates the Defendant to obtain new content in these topic areas. As such this

question is relevant to determine what screening process was in place, how and what were the

Defendants flagging as proper and improper. Internal Communications of the employees

involved in these tasks would lead to this relevant information.

> c. **Plaintiff's First Set of Interrogatories to Defendant TrafficStar Ltd. (See
> Exhibit C and D[2]).**

---

[2] Defendants have marked their responses to Plaintiff's discovery requests as Attorney's Eyes Only, as such
Plaintiffs are filing only the requests made and their objections.

**INTEROGATORY 6:** For the calendar years 2013-present, how many ad campaigns were run each year by the Traffic Stars platform?

At the meet and confer, the Defendants stated they did not intend to supplement this Interrogatory. Defendants have represented that their only source of income is revenue generated from advertisements, thus, in a case that calls into question whether or not the Defendants, through the use of their platform, generated revenue from the promotion and solicitation of nonconsensual intimate videos, whether or not defendants through their ad campaigns had any local influence in United States, and/or in South Carolina, documentation regarding the defendant's ad campaigns and where those campaigns are targeted is relevant. Additionally, defendants have raised jurisdictional arguments thus, these inquiries are also relevant to jurisdiction.

**INTEROGATORY 7**: For the calendar years 2013-present, how many ad campaigns, in whole or in part, targeted United States traffic each year? For the purposes of this Interrogatory, "targeted"
means specifically selecting the United States or any part thereof as a geographic area for geolocation of ads.

At the meet and confer, the Defendants stated they did not intend to supplement this Interrogatory. Defendants have represented that their only source of income is revenue generated from advertisements, thus, in a case that calls into question whether or not the defendants, through the use of their platform, generated revenue from the promotion and solicitation of nonconsensual intimate videos, whether or not Defendants through their ad campaigns had any local influence in United States, and/or in South Carolina, documentation regarding the defendant's ad campaigns and where those campaigns are targeted is relevant. Additionally, Defendants have raised jurisdictional arguments thus, these inquiries are additionally relevant to jurisdiction.

**INTEROGATORY 8:** For the calendar years 2013-present, how many ad campaigns targeted South Carolina traffic each year?

At the meet and confer, the Defendants stated they did not intend to supplement this Interrogatory. Defendants have represented that their only source of income is revenue generated from advertisements, thus, in a case that calls into question whether or not the defendants, through the use of their platform, generated revenue from the promotion and solicitation of nonconsensual intimate videos, whether or not defendants through their ad campaigns had any local influence in United States, and/or in South Carolina, documentation regarding the defendant's ad campaigns and where those campaigns are targeted is relevant. Additionally, defendants have raised jurisdictional arguments thus, these inquiries are additionally relevant to jurisdiction.

**d. Plaintiffs Second Set of Requests for Production to Defendant TrafficStar LTD. (See Exhibit E and F).**

**REQUEST NO. 6**
All documents that report, describe, summarize, analyze, discuss, or comment on complaints that advertising content is non-consensual, in whole or in part.

   **OBJECTION**
   TrafficStars objects to the time frame for this interrogatory as defined by the Plaintiffs. Accordingly, any response to this request is limited to the relevant time period of 2019-2023.

   **RESPONSE**
   Subject to the foregoing objections, TrafficStars will produce those documents in its care, custody, or control insofar as they relate to complaints concerning advertising placed on the xHamster.com website. TrafficStars refers Plaintiffs to documents bates stamped TRA 001445 – TRA 001456.

The Defendants have refused to provide a complete response from 2012-2020. There is a nexus between the content on the website and the advertisements on the website. Defendants, through the careful placement of related/similar advertisements, increase the monetization of

20

nonconsensual content for their own gain. By the use of advertisements, Defendants facilitate

and solicit users to create nonconsensual content and upload it to their platforms. This request is

directly relevant to Plaintiffs claims regarding financial renumeration.

**REQUEST NO. 14**
For the relevant time period, please produce all documents related to accepted advertising
campaigns that targeted North America.

> **OBJECTION**
> TrafficStars objects to this request as being overbroad, unduly burdensome, and not
> reasonably calculated to lead to the discovery of admissible information. Additionally,
> TrafficStars objects to the time frame for this interrogatory as defined by the Plaintiffs.
> Accordingly, any response to this request is limited to the relevant time period of 2019-
> 2023. TrafficStars also objects to this request as being wholly unrelated to Plaintiffs'
> claims and not proportional to the needs of the case in accordance with Fed. R. Civ. P.
> 26(b)(1).

> **RESPONSE**
> Subject to the foregoing objections, TrafficStars will produce statistical documents that
> illustrate what percentage of advertisements placed by TrafficStars are geolocated
> towards the United States (or South Carolina). TrafficStars refers Plaintiffs to a document
> bates stamped TRA 001459.

The Defendant have produced next to nothing on this topic, but a recreated excel spreadsheet.

The Defendants have failed to provide the underlying documents that made up the excel

spreadsheet. The Defendants have also failed to provide any advertising metrics.  Defendants

have represented that their only source of income is revenue generated from advertisements,

thus, in a case that calls into question whether or not the Defendants, through the use of their

platform, generated revenue from the promotion and solicitation of nonconsensual intimate

videos, whether or not defendants through their ad campaigns had any local influence in United

States, and/or in South Carolina, documentation regarding the defendant's ad campaigns and

where those campaigns are targeted is relevant. Additionally, Defendants have raised

jurisdictional arguments thus, these inquiries are additionally relevant to jurisdiction.

**II.     The Defendants may not withhold privileged  information included in the above requests without making the specific showing required by 26(b)(5).**

The Defendants cannot withhold documents simply by complaining that it is privileged. Rule 26 provides:

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
> (i) expressly make the claim; and
> (ii) describe the nature of the documents, communications, or tangible things not produced or dis-closed–and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. Pro. 26(b)(5). The Defendants must produce a privilege log that complies with this rule to withhold information based upon privilege.  To date the Defendants have not complied with Rule 26.

On February 12, 2024 the Defendants supplemented their responses and produced a privilege log that did not properly describe the nature of the document or provide a proper basis for the privilege assertion. As one example,  HAM 000196 through HAM 000476 identifies agreements (Independent contractor agreements, services agreements, enterprise services order forms) the Defendants had with vendors, including CDN service vendors. The Defendants withheld the documents on this list based on a improper privilege objection. The Defendants claim, the redacted information is "irrelevant, unrelated to the Plaintiffs' claims, and would not reasonably lead to the discovery of admissible evidence.  Additionally, the individual whose name was redacted has not agreed to the release of his/her name.  The individual whose name is redacted does not live or work in the United States and would not be subject to a subpoena to compel their testimony in a U.S. court of law."

First, and as previously noted above, the CDN service vendors are relevant as that is how the Defendants get content disseminated to all of their viewers. Second, the Defendants are

withholding these documents, because the Independent contractor agreements, services agreements, enterprise services order forms would likely show that the Defendants provided service all over the United States, targeted the United States, and targeted South Carolina. Reconfirming there are no jurisdictional concerns. The Defendants attempts to withhold this information is improper and the Court should order the Defendant to produce all documents identified on this log (HAM 000196 through HAM 000476).

**CONCLUSION**

Accordingly, Plaintiff respectfully requests an Order compelling the Defendants to respond to the above discovery requests, and to pay Plaintiff reasonable costs and expenses, including attorney's fees, incurred in obtaining the order.

Respectfully submitted,

**BELL LEGAL GROUP, LLC**

*/s/ J. Edward Bell, III*
J. Edward Bell, III (#1280)
Gabrielle Sulpizio (12715)
Joshua M. W. Salley (#13214)
219 North Ridge Street
Georgetown, SC 29440
Telephone: (843) 546-2408
jeb@edbelllaw.com
gsulpizio@belllegalgroup.com
jsalley@edbelllaw.com

**DOLT, THOMPSON, SHEPHERD & CONWAY, PSC**

Tyler S. Thompson (admitted *Pro Hac Vice*)
Liz J. Shepherd (admitted *Pro Hac Vice*)
Jordan A. Stanton (admitted *Pro Hac Vice*)
13800 Lake Point Circle
Louisville, KY 40223
Telephone: (502) 244-7772
tthompson@kytrial.com

lshepherd@kytrial.com
jstanton@kytrial.com

**ATTORNEYS FOR PLAINTIFFS**

March 13, 2024
Georgetown, SC