**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**SPARTANBURG DIVISION**

| | |
|---|---|
| JANE DOES 1-9, | |
| Plaintiffs, | Case No.: 7:20-cv-00947 |
| vs. | |
| COLLINS MURPHY, SHARON HAMMONDS, BRENDA F. WATKINS, LIMESTONE UNIVERSITY, MG FREESITES, LTD., d/b/a PORNHUB.COM, MG FREESITES II LTD., MINDGEEK S.A.R.L., MINDGEEK USA, INC., MG BILLING LTD., and HAMMY MEDIA LTD. d/b/a XHAMSTER.COM, TRAFFICSTARS LTD., WISEBITS LTD, XHAMSTER IP HOLDINGS LTD, WISEBITS IP LTD., | **HAMMY MEDIA LTD. AND TRAFFICSTARS LTD.'S RESPONSE IN OPPOSITION TO PLAITIFFS' MOTION TO COMPEL DISCOVERY** |
| Defendants. | |
| JANE DOE, | |
| Plaintiff, | Case No.: 7:21-cv-03193 |
| vs. | |
| LIMESTONE UNIVERSITY F/K/A LIMESTONE COLLEGE, COLLINS MURPHY, MG FREESITES, LTD., d/b/a PORNHUB.COM, and HAMMY MEDIA, LTD. d/b/a XHAMSTER.COM, | **HAMMY MEDIA LTD. AND TRAFFICSTARS LTD.'S RESPONSE IN OPPOSITION TO PLAITIFFS' MOTION TO COMPEL DISCOVERY** |
| Defendants. | |

## INTRODUCTION

Although one would never guess from looking at Plaintiffs' massive and wide-ranging discovery requests, this is not a particularly complicated (or even hotly disputed) case, at least from a factual standpoint. A very brief recap is in order.

1

In the Fall of 2012, Plaintiffs, who were then members of Indiana University's field hockey team, traveled to Limestone College ("Limestone") to participate in a game against the Limestone College team. Unbeknownst to Plaintiffs, Collins Murphy ("Murphy"), an employee of Limestone, had surreptitiously placed cameras in the locker room and recorded Plaintiffs and their teammates as they changed their clothes and showered. ***Seven years later*** – in 2019 – the recordings of the Plaintiffs and their teammates were uploaded to "countless pornographic websites," including xHamster.com, which is owned and operated by Hammy Media Ltd. ("Hammy"). Plaintiffs believe the videos to have been uploaded to these websites by Murphy "and/or other third parties…"

Once Hammy was alerted to the existence of the videos by a police detective, it provided copies of the videos to the police as requested and deactivated access to them, retaining them in case they were needed as evidence.

The videos at question in this litigation were uploaded to the xHamster website by a user with the username "cwdistribution." At the time the cwdistribution account was created, it was possible for users to upload videos without first going through an identity verification process. xHamster does not know the identity of user "cdwdistribution." Hammy has since changed its systems so that uploads are accepted only from accounts which have gone through a rigorous verification process.

Hammy has never had any communications with the user who uploaded the videos and never paid any compensation of any sort to any user in connection with the videos at issue.

Plaintiffs claim in their Memorandum of Law that "xHamster brings in an estimated $236,175,120.00 in revenues annually from advertising." Plaintiffs' Memorandum, p. 7. What Plaintiffs fail to mention is that discovery has shown that "the videos at issue in this litigation were only live on the xHamster.com website for a short period of time and were not

frequently viewed. Cumulatively, the six videos at issue were only viewed a total of 3,163 times.

***Advertisements displayed in connection with those videos generated a total of approximately $1.53 in advertising revenue for Hammy before they were removed from the site.***" Hammy Answers to Interrogatories, No. 8.

Against this factual backdrop, the breadth and scope of Plaintiffs' discovery requests are mind-boggling disproportionate. This might be surprising except that, from the start, Plaintiffs' counsel which includes a legal team from Morality in Media, now rebranded as the "National Center on Sexual Exploitation" ("NCOSE") have conducted this case not as if they are trying to vindicate the rights of their clients (who undoubtedly suffered wrongs perpetrated on them by Murphy), but rather as a crusade against the entire adult entertainment industry. And while this is completely on-brand for the NCOSE,[1] Plaintiffs (and more specifically Plaintiffs' counsel) should not be entitled to use the present litigation as a tool to wage war against an entire industry.

Plaintiffs are entitled to relevant, proportionate discovery. And that is precisely what they have been afforded. What they seek now is to obtain information wholly unrelated to their claims and sought not to properly pursue their claims, but rather to harass and annoy the Defendants. Accordingly, Plaintiffs' Motion should be denied.

## **ARGUMENT**

**I.      PLAINTIFFS *KNOWINGLY* FILED THE PRESENT MOTION ALMOST ONE MONTH AFTER THE DEADLINE IMPOSED BY THIS COURT.**

In their Memorandum of Law, Plaintiffs provide this Court with a decidedly incomplete procedural history. This is not an accident. Plaintiffs are apparently hoping that this Court has forgotten that it set a deadline of ***February 15, 2024*** for the filing of the present motion, a deadline

---

[1] *See, e.g.,* "The (not so) secret governors of the internet: Morality policing and platform politics," Convergence: The International Journal of Research into New Media Technologies 2023, Vol. 29(6) 1609–1623, attached hereto as Exhibit 1.

that the Court did not extend and for which Plaintiffs neither sought nor obtained any extension of time from either Hammy or TrafficStars.  A short recap of events is in order:

On January 12, 2024, Plaintiffs' counsel emailed the Court with an informal request for a telephonic status conference regarding discovery.  In that email, Plaintiffs' counsel wrote:

> In addition, Plaintiffs have not received document production from the Hammy Media Defendants despite efforts to work with same on production. Plaintiffs served Defendants with Requests for production and Interrogatories on November 15, 2023. On December 14, 2023, Defendants requested an extension of 21 days to provide responses. Plaintiffs granted the extension, making the new due date for discovery responses January 6, 2024. To date, Plaintiffs have not yet received discovery responses from Defendants.

On the same day, Plaintiffs also filed a status report with the Court similarly alleging that the Hammy Media Defendants had not yet produced their discovery responses.  D.E. 335.  On January 17, 2024, this Court ordered the parties to meet and confer regarding their discovery disputes and to file any necessary motion to compel by February 1, 2024.  D.E. 336.

On January 31, 2024, Plaintiffs and the MindGeek defendants filed a joint status report asking that the Court extend the deadline for the filing of relevant discovery motions by 14 days. D.E. 339.  On the same day, by text order, this Court ordered that:

> Based on the information contained in Plaintiffs Joint Status Report filed on January 31, 2024, the time to file any necessary discovery motion or motions is extended to February 15, 2024

D.E. 341.

Also on January 31, 2024, Plaintiffs and the Hammy Defendants held a meet and confer on their discovery disputes.  And, although the Hammy Defendants had not been part of the January 31, 2024 request to the Court for an extension of the Motion to Compel deadline, (and in light of the Court's order extending the deadline for "any necessary discovery motions"), the Hammy Defendants nonetheless agreed to continue working with the Plaintiffs to try to narrow any areas of disagreement.

On February 9, 2024, Plaintiffs and the Hammy Defendants had a second meet and confer zoom conference (which was recorded at the Plaintiffs' request).[2]  During that meet and confer, Plaintiffs' counsel asked for certain supplementations to be made on an expedited basis because "we've got a deadline of February 15th to file a motion to compel."  And, although one of Plaintiffs' counsel initially floated the idea of a short extension of the motion filing deadline, that was immediately rejected *by other members of the Plaintiffs' counsel's team* and the parties ultimately agreed that the deadline for the motion would remain February 15, 2024.

On February 12 and 13, Hammy and TrafficStars provided supplementations (as noted in Plaintiffs' procedural background) as agreed.

February 15, 2024 came and went without Plaintiffs filing any motion to compel.  At no time have Plaintiffs asked Hammy or TrafficStars for an extension of the Court's February 15 deadline and at no time did Plaintiffs ask this Court for an extension of the February 15 deadline with respect to Hammy or TrafficStars.[3]

Almost one month after this Court's deadline to do so, and without seeking leave from this Court, Plaintiffs filed the present motion.  It is untimely and should be denied on that basis alone.

## II.    ALTHOUGH THE SCOPE OF DISCOVERY IS GENERALLY BROAD, IT IS NONETHELESS LIMITED IN IMPORTANT WAYS RELEVANT HERE.

Amended Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, . . . ." Fed. R. Civ. P. 26(b)(1). The scope of discovery

---

[2] Hammy and TrafficStars would be happy to provide the Court with a copy of the recorded meet and confer if there is any question concerning their recitation of events.

[3] Hammy and TrafficStars understand that Plaintiffs and the MindGeek defendants have continued to request certain extensions, but neither Hammy nor TrafficStars have ever been part of those extensions.

under Rule 26 is defined by whether the information sought is (1) privileged, (2) relevant to a claim or defense and (3) proportional to the needs of the case. *See S.C. State Conference of the NAACP v. Alexander,* No. 3:21-cv-03302-TJH-MBS-RMG, 2022 U.S. Dist. LEXIS 119180 (D.S.C. July 5, 2022); *see also Gordon v. T.G.R. Logistics, Inc.*, 321 F.R.D. 401, 2017 WL 1947537, at *2 (D. Wyo. 2017).

Proportionality is determined by "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). While the Rules do not expressly define relevance, courts have determined that it is still to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any party's claim or defense." *See Fluor-Lane S.C., LLC v. Johnson, Mirmiran & Thompson, Inc.,* Civil Action No. 3:21-cv-01680-JMC, 2022 U.S. Dist. LEXIS 129221 (D.S.C. June 30, 2022) (quoting Reibert v. CSAA Fire & Cas. Ins. Co., No. 17-CV-350-CVE-JFJ, 2018 U.S. Dist. LEXIS 860, 2018 WL 279348, at *3 (N.D. Okla. Jan. 3, 2018)).

"While the party seeking discovery has the burden to establish its relevancy and proportionality, the party objecting has the burden of showing the discovery should not be allowed and doing so through 'clarifying, explaining and supporting its objections with competent evidence.'" *See Avant v. Ahern Rentals, Inc.,* Civil Action No. 3:20-cv-01884-JMC, 2022 U.S. Dist. LEXIS 32979 (D.S.C. Feb. 24, 2022) (quoting *Wilson v. Decibels of Or., Inc.,* Case No. 1:16-cv-00855-CL, 2017 U.S. Dist. LEXIS 71080, 2017 WL 1943955, at *2 (D. Or. May 9, 2017). Whether a discovery request is proportional is determined by "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant

information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

The scope of discovery permitted by Rule 26 is designed to provide a party with information reasonably necessary to afford a fair opportunity to develop its case. *Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. Murray Sheet Metal Co., Inc.,* 967 F.2d 980, 983 (4th Cir. 1992) ("the discovery rules are given 'a broad and liberal treatment'") (*quoting Hickman v. Taylor,* 329 U.S. 495, 507, 67 S. Ct. 385, 91 L. Ed. 451 (1947)). That said, discovery is not limitless and the court has the discretion to protect a party from "oppression" or "undue burden or expense." Fed. R. Civ. P. 26(c). "Fishing expeditions" that exceed the boundaries of the complaint and are based purely on unsupported speculation are improper. *See Cuomo v. Clearing House Ass'n, L.L.C.*, 557 U.S. 519, 531, 129 S. Ct. 2710, 174 L. Ed. 2d 464 (2009) ("Judges are trusted to prevent 'fishing expeditions' or an undirected rummaging through . . . records for evidence of some unknown wrongdoing")*; see also Johnson v. Am. Towers, LLC*, 781 F.3d 693, 709 (4th Cir. 2015); *Blankenship v. Fox News Network LLC*, No. 2:19-CV-00236, 2020 U.S. Dist. LEXIS 254998, 2020 WL 9718873, at *15 (S.D.W. Va. Sept. 21, 2020), *objections overruled*, 2021 U.S. Dist. LEXIS 107322, 2021 WL 2345972 (June 8, 2021) ("Discovery is a fishing expedition when it goes beyond the pleadings' allegations"); *Grand Bahama Petroleum Co. v. Asiatic Petroleum Corp.*, 550 F.2d 1320, 1327 (2d Cir. 1977) (holding that Plaintiff's request for discovery was "nothing more than a[n] [impermissible] fishing expedition" because Defendant made no showing, "through affidavits or other means," to support his claim); *Alvarado v. GC Dealer Servs. Inc.*, No. 18CV2915SJFSIL, 2018 U.S. Dist. LEXIS 204147, 2018 WL 6322188, at *4 (E.D.N.Y. Dec. 3, 2018) (denying Defendants' discovery request of Plaintiff's alleged social security benefits because Defendants

7

were only speculating how these documents could help them prepare a defense to Plaintiff's FLSA and NYLL claims against Defendants); *Collens v. City of New York*, 222 F.R.D. 249, 253 (S.D.N.Y. 2004) ("[C]ourts should not grant discovery requests based on pure speculation that amount to nothing more than a fishing expedition....") (denying Plaintiff's request to compel disclosure of a Defendant's address, in order to verify whether Defendant has the means to pay punitive damages, because the lack of facts in Plaintiff's request, implied that this was an impermissible fishing expedition).

### III.     PLAINTIFFS' SPECIFIC REQUESTS FOR ADDITIONAL ANSWERS/ RESPONSES ARE WITHOUT MERIT

#### A.     Overarching Concerns

Two of Plaintiffs' repeated complaints are that: (1) Hammy failed to provide it with the names of induvial employees who may have been responsible for certain tasks at Hammy, and (2) Hammy and/or TrafficStars rejected Plaintiffs' attempts to define the relevant time period as 2012 to the present.

With respect to the first complaint, the Court should be aware that much of Hammy's hesitation arises out of legitimate fears.  Individuals associated with the adult entertainment industry are often subject to harassment, discrimination, and physical violence.  *See, e.g.,* "Pornhub CEO claims mansion was burned down by religious group angry over his work." *The Independent*          (Jan.          19,          2022),          located          at https://www.independent.co.uk/news/world/americas/pornhub-ceo-feras-antoon-house-attack-b1996359.html; "Financial Discrimination and the Adult Industry Report," located at https://www.freespeechcoalition.com/banks; "How Banks Make It Hard For Sexy Startups," *FastCompany     Magazine*,     located     at     *https://www.fastcompany.com/3065256/banking-*

*discrimination-porn-sex-toys*.  For this reason alone it is proper both for Defendants to be wary of *unnecessarily* identifying individual employees and for the Court to be wary of reflexively ordering that the identities of such individuals be revealed when not necessary.

Undoubtedly, Plaintiffs will point to the protective order in this case and claim that it protects such individualS, since materials can be deemed confidential.  Such an argument would carry more weight, however, if Plaintiffs were not at this moment: (a) attempting to get this Court to require the MindGeek defendants to provide materials protected by a protective order in another case; and (b) arguing that documents designated as confidential in this case should nonetheless be made public because of the public's right to know.  And, of course, Plaintiffs' counsel's anticipated assurances might also carry more weight if they were not actively engaged in a morality play against the entire adult entertainment industry.

There is, however, yet another reason to resist Plaintiff's calls for naming individual employees:  Plaintiffs' entire argument in favor of such disclosures is its claim that such individuals, once identified, might be deposed in this action.  This is simply incorrect – Hammy, a Cypriot company, has no employees in the United States.  Therefore, its employees are not subject to service of a deposition subpoena to compel their testimony in this case.  Instead, the proper way for Plaintiffs to obtain the information they seek is through Rule 30(b)(6) depositions.  Indeed, Plaintiffs have already taken the depositions of both Hammy and Wisebits under 30(b)(6).

With respect to the second overarching issue: it simply makes no sense that the relevant time period should begin in 2012, when the videos in question were not uploaded to the xHamster.com website until 2019.  Here, despite knowing well the truth of the situation (indeed, Plaintiffs' own complaint alleges that the videos were not uploaded until 2019 and ever bit of evidence adduced in discovery has supported that claim), Plaintiffs try to actively mislead this

Court (yet again), claiming that the relevant time period should begin in 2012 because "One of the Defendants' own 30(b)(6) witnesses, Constantinos Christoforou, testified the Plaintiffs were harmed when the video was uploaded in 2012…" Plaintiffs' Memorandum, p. 7.  Shockingly, Plaintiffs are attempting to use the lack of proper punctuation in the transcript to contradict the very facts alleged in their own complaint.  Asked about when the Plaintiffs were injured (something Mr. Christoforou admits he shouldn't have testified to at all), Mr. Christoforou responded "I don't know.· In 2012 when it was uploaded.  Both."  In other words, when properly punctuated, Mr. Christoforou's response was: I don't know… 2012?  When it was uploaded?  Both?"

Plaintiffs' counsel's attempt to mislead the court in this manner is inconsistent with their obligations as officers of the Court.

**B.    Specific Requests/Responses**

**INTERROGATORIES TO HAMMY MEDIA, LTD.**

**INTEROGATORY 1**: Please identify and discuss, in detail, the algorithm used for presenting content to users of xHamster.com and how content on the website is disseminated. This includes, but is not limited to, the names, contact information, and addresses of all the individuals responsible for developing and designing the algorithm utilized by xHamster.com.

**OBJECTION:** Hammy objects to this interrogatory as being overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible information. Additionally, Hammy objects to the request to provide names and contact information for individuals who live and work outside of the United States, as this request is designed to harass individuals who are not part of this lawsuit and are outside of the jurisdiction of the United States courts. Additionally, Hammy objects to the time frame for this interrogatory as defined by the Plaintiffs. Accordingly, any response to this interrogatory is limited to the relevant time period of 2019-2020. Subject to this objections, Hammy states as follows.

**ANSWER:** Regarding the algorithm used for presenting content to users of the website www.xhamster.com (hereinafter "the Platform") (and how content is disseminated among the users of the website), which may be referred to as "recommendation system" in 2019-

2020: The Platform used a recommendation system to offer users a personalized (if registered user or if cookie/prior search information was available on the user's computer) and non-personalized experience, and thus make navigation on the Platform easier and more convenient. Recommendation system suggested content based on user preferences as expressed through previous interactions made by the user on the Platform, such as following a channel or person, or history of viewing content. Interaction of a user with the Platform was an indicator that helped the recommendation system to predict content that the user is likely to be interested in as well as the content in which the user may be less interested and may prefer not to watch. The recommendation system was based on different factors, including without limitation: - User interactions: the videos the user likes/dislikes, adds to the favorites, comments, video watching time, persons or channels the user follows. Video information: tags, category, and number of video views - User information: language preference and country location of the user. Randomly, the algorithm also sometimes presented videos in a chronological (based on the date and time of the video was first uploaded to our system) order.

Plaintiffs' primary complaint here is that Hammy did not provide Plaintiffs with the "names, contact information, and addresses" of the individuals who developed and designed the algorithms used to present content to the users of the xHamster.com website. Preliminarily and as is described above, producing such information is often akin to putting a target on the identified individuals' back. Additionally, though, Plaintiffs' rationale for wanting this personally identifying data is nonsensical. Plaintiffs claim that this information will allow them to identify witnesses who might be able to testify as to "how the Defendant makes money through content creation." Even if one could parse how the request is related to the information Plaintiffs' claim to seek, Plaintiffs have already elicited testimony from Hammy's 30(b)(6) witness about how Hammy generates its revenues. See, e.g., Tr. Pp. 47-48 li. 3-3; Pp. 58-61 ln. 24-1. The information sought is unrelated to any legitimate need of Plaintiffs and would unnecessarily place individuals at risk with no concomitant benefit to Plaintiffs.

**INTERROGATORY 7:** Please identify and discuss, in detail, how advertising revenue is generated on xHamster.com. This includes, but is not limited to, the names, contact

information, and address of the individuals who are tasked with making decisions regarding advertisements on xHamster.com.

**OBJECTION:** Hammy objects to the time frame for this interrogatory as defined by the Plaintiffs. Additionally, Hammy objects to the request to provide names and contact information for individuals who live and work outside of the United States, as this request is designed to harass individuals who are not part of this lawsuit and are outside of the jurisdiction of the United States courts. Accordingly, any response to this interrogatory is limited to the relevant time period of 2019-2023. Subject to this objections, Hammy states as follows.

**ANSWER:** Please see the response to Interrogatory number 6.


**[ANSWER TO INTERROGATORY NO. 6]:** Hammy instructed one of its affiliates, Wisebits Ad Net, Ltd., to enter into an agreement with TrafficStars (Hammy will produce this agreement as part of its document production) whereby for the benefit of Hammy TrafficStars sells advertising to third parties to be placed on the xHamster.com website. As Hammy is just one of thousands of publishers on the TrafficStars platform, Hammy has created an account as a publisher on the TrafficStars platform, just as any other publisher would do. One of the conditions to create such an account is to electronically sign the Terms and Conditions of TrafficStars, the current version of which is available here - https://trafficstars.com/terms. Terms and Conditions of Traffic Stars is a contract

between Hammy and Traffic Stars Ltd that describes all business relationships between the parties. The contract speaks for itself and Hammy will produce a copy of this contract with its document production.

Here, too, Plaintiffs' main complaint is Hammy's supposed failure to provide the names of individuals "who are tasked with making decisions regarding advertisements on xHamster.com." Plaintiffs' request should be rejected outright. Putting aside the issues with disclosing names, there is the initial point to be made that Plaintiffs' claims have nothing to do with any advertising that appears on the website. Even if Plaintiffs could muster some convoluted rationale for why this request had some relevance, though, the simple fact is that the information lies with TrafficStars (if at all) and not Hammy. As the answer indicates, pursuant to contract (and TrafficStars' terms and conditions), TrafficStars sells advertising to be placed on the xHamster.com website. This is the complete answer to Plaintiffs' inquiry.

**INTEROGATORY 11:** Please identify and discuss, in detail, the content moderation policy and procedure on the xHamster.com website. This includes, but is not limited to, the names, contact information, and address of the individuals who are tasked with making decisions regarding content moderation.

**OBJECTION:** Hammy objects to the request to provide names and contact information for individuals who live and work outside of the United States, as this request is designed to harass individuals who are not part of this lawsuit and are outside of the jurisdiction of the United States courts. Additionally, Hammy objects to the time frame for this interrogatory as defined by the Plaintiffs. Accordingly, any response to this interrogatory is limited to the relevant time period of 2019-2020. Subject to this objections, Hammy states as follows:

**ANSWER:** In 2019-2020 our platform had the following moderation process for all content uploaded by users.

1. To upload a video, the uploader had to create an account.

2. Then the uploader needed to go to the special part of the website where it was possible to upload content – the upload page.

3. On that page the uploader had to fill in all the required information and accept the specific
upload rules, including a guarantee that the uploaded content is legal.
Each uploaded video was reviewed by our moderation team to verify that the video did not have any inappropriate or illegal content, in accordance with our internal documentation and guidelines.

As for the technical tools used during the moderation process:
1. The Platform had a system which analyzed text related to the content (title, description) for prohibited and suspicious words. Such words were flagged by the system and displayed to the moderation team during the moderation process.

2. The Platform, in collaboration with various leading software providers (for example Google Safety API), detected potentially harmful content. All content after the upload and prior to moderation was processed by such software which allows the platform to initially identify content that may potentially violate the platform's User Agreement. The software enabled the platform to detect inappropriate content using a shared database of digital hashes (fingerprints) and could also detect inappropriate content based on artificial intelligence technologies.

3. The platform used digital fingerprinting technology which has been specifically designed for the platform. In simple words, this software prevented inappropriate content from being reuploaded. Digital fingerprinting technology compares the hashes (fingerprints) of newly uploaded content with a database of hashes (fingerprints) of

previously removed content. If there is a match, this correlation is highlighted for the moderation team and a human-based decision is made about the content.

The upload and moderation process as it existed in 2019-2020 was as follows:
1. To upload a video, the uploader must create an account.
2. Then the uploader needed to go to the special part of the website where it is possible to upload content - the upload page.
3. Fill in all the required information and accept the specific upload rules. Guarantee that the content is legal.
4. The content then went through the moderation process described above except the ID check stage.

**INTEROGATORY 12:** Please identify and discuss, in detail, data collection on the xHamster.com website. This includes, but is not limited to, the names, contact information, andaddress of the individuals who are tasked with making decisions regarding data collection.

**OBJECTION:** Hammy objects to the request to provide names and contact information for individuals who live and work outside of the United States, as this request is designed to harass individuals who are not part of this lawsuit and are outside of the jurisdiction of the United States courts. Additionally, Hammy objects to the time frame for this interrogatory as defined by the Plaintiffs. Accordingly, any response to this interrogatory is limited to the relevant time period of 2019-2023. Hammy also objects that this interrogatory is unintelligible and unreasonably broad. Subject to this objections, Hammy states as follows.

**ANSWER:** (See Plaintiffs' Exhibit A)

**INTEROGATORY 13:** Please identify and discuss, in detail, data analysis on the xHamster.com website. This includes, but is not limited to, the names, contact information, and address of the individuals who are tasked with making decisions regarding data analysis.

**OBJECTION:** Hammy objects to the request to provide names and contact information for individuals who live and work outside of the United States, as this request is designed to harass individuals who are not part of this lawsuit and are outside of the jurisdiction of the United States courts. Hammy also objects that this interrogatory is unintelligible and unreasonably broad. Subject to this objections, Hammy states as follows. Additionally, Hammy objects to the time frame for this interrogatory as defined by the Plaintiffs. Accordingly, any response to this interrogatory is limited to the relevant time period of 2019-2023.

**ANSWER:** (See Plaintiffs' Exhibit A)

Plaintiffs group these three interrogatories together and, yet again, their only complaint

about Plaintiffs' responses is the lack of names of individuals responsible for tasks such as content

moderation, data collection, and data analysis. And, while Plaintiffs claim that the provision of the names of the individuals who perform such tasks would allow them to depose such individuals, this simply is not true. Hammy is a Cyprus company, located in Cyprus, with employees in Cyprus. It has no employees in the United States and, as such, there are no individuals Plaintiffs could subpoena to testify as to these topics. This does not, of course, mean that Plaintiffs were without an avenue to obtain such information: Plaintiffs noticed and took the Rule 30(b)(6) deposition of Hammy, at which they asked questions as to each of these subject areas. That was the proper way for Plaintiffs to obtain the information they claim to seek (as opposed to simply harassing employees) and providing the names of the individual employees offers no benefit to Plaintiffs and only risk to Hammy's employees.

**INTERROGATORY 17:** For the relevant time period, please identify and discuss, in detail, how content on the xHamster.com website was reported as objectionable by users or the general public for any reason. This includes, but is not limited to, the names, contact information, and address of the individuals who are tasked with making decisions regarding the reporting process and how this process changed over the relevant time period.

**OBJECTION:** Hammy objects to this interrogatory as being overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible information. Additionally, Hammy objects to the request to provide names and contact information for individuals who live and work outside of the United States, as this request is designed to harass individuals who are not part of this lawsuit and are outside of the jurisdiction of the United States courts. Additionally, Hammy objects to the time frame for this interrogatory as defined by the Plaintiffs. Accordingly, any response to this interrogatory is limited to the relevant time period of 2019-2023. Hammy also objects to this interrogatory as being wholly irrelevant to Plaintiffs' actual claims in this litigation and not proportional to the claims against Hammy. Subject to this objections, Hammy states as follows.

**ANSWER:** After the video is published, aside from our platform moderation procedure (that was described earlier), we provide our users with several ways to inform the platform of any issues or concerns they may have regarding any type of content available on the platform. This process (or, rather, a communication channel) is our platform reporting process. This process creates a constant postpublishing moderation procedure for the published content.

Users can submit a request/report about the content in the following ways:

a) Each piece of content is accompanied by a flag button, in order for our users to have an efficient and easy way to express their concerns about the content.

b) Users can express their concerns about the content directly to our support team under the respective subject in our contact form - https://xhamster.com/info/contact?subject=abuse.

c) Users can notify us of any alleged copyright infringement on the platform by using the special subject in our contact form - https://xhamster.com/info/contact?subject=dmca.

d) Users may send all their concerns about the content directly to our support team via the general e-mail of the support team, namely - help@xhamster.com.

After a user informs the platform about any issues or concerns they may have regarding any type of content available on the platform (submitting a report), such report is received by our moderation team.

As a general rule and method used in our reporting process, upon receiving reports concerning any content available on the platform from our users or from any third party, our moderators proceed with such content re-evaluation, and if the said content is deemed inappropriate or in violation of our Terms and Conditions, it will be immediately removed from the platform.

In addition to our Terms and Conditions, we've developed and implemented specific internal guidelines for the moderation team regarding what is and is not considered inappropriate content. These guidelines are used for the moderation and reporting processes.

In the Memorandum, Plaintiffs do not identify what they think is missing from this response and, instead, state that "this interrogatory is relevant to understand how the Defendant's website worked, what users/uploaders could see and have access to, and what the Defendants have access to on the backend." It is hard to respond to this contention other than to say: Plaintiffs' argument makes no sense. The interrogatory has nothing to do with the subject areas Plaintiffs now claim to be lacking from Hammy's response. It is as if Plaintiffs had propounded an interrogatory asking for every address a party had lived at and, when provided with the information requested, they complain about the lack of any discussion of turnips and other root vegetables.

**INTERROGATORY 18:** For the relevant time period, please identify and discuss, in detail, Hammy Media's policy and procedures for handling reports that content on the xHamster.com website was made or distributed without consent. This includes, but is not limited to, the names, contact information, and address of the individuals who are tasked with making decisions regarding the reporting policies and procedures and how the process has changed over the relevant time period.

**OBJECTION:** Hammy objects to this interrogatory as being overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible information. Additionally, Hammy objects to the request to provide names and contact information for individuals who live and work outside of the United States, as this request is designed to harass individuals who are not part of this lawsuit and are outside of the jurisdiction of the United States courts. Hammy also objects to this interrogatory as being wholly irrelevant to Plaintiffs' actual claims in this litigation and not proportional to the claims against Hammy. Additionally, Hammy objects to the time frame for this interrogatory as defined by the Plaintiffs. Accordingly, any response to this interrogatory is limited to the relevant time period of 2019-2023. Subject to this objections, Hammy states as follows.

**ANSWER:** Users are able to submit a report about the content in the following ways:

a) Each piece of content is accompanied by a flag button, in order for our users to have an efficient and easy way to express their concerns about the content.

17

b) Users can express their concerns about the content directly to our support team under the respective subject in our contact form - https://xhamster.com/info/contact?subject=abuse.

c) Users can notify us of any alleged copyright infringement on the platform by using the special subject in our contact form - https://xhamster.com/info/contact?subject=dmca.

d) Users may send all their concerns about the content directly to our support team via the general e-mail of the support team, namely - help@xhamster.com.

After a user informs the platform about any issues or concerns they may have regarding any type of content available on the platform (submitting a report), such report is received by our moderation team.

As a general rule and method used in our reporting process, upon receiving reports concerning any content available on the platform from our users, our moderators proceed with such content re-evaluation, and if the said content is deemed inappropriate or in violation of our Terms and Conditions, it will be immediately removed from the platform. Re-evaluation is made in accordance with specific internal guidelines for the moderation team regarding what is and is not considered inappropriate content.

If the report includes any additional information or requests from users, additional teams may be engaged in the report resolution (legal team or any relevant team, depending on the nature of the request).

Plaintiffs' Memorandum says nothing more than the interrogatory is relevant to their claims. And, while this may be true (when properly limited in scope), Plaintiffs do not explain how the response provided is insufficient. Additionally, Plaintiffs could (and did) inquire into such topics at Hammy's 30(b)(6) deposition.

**REQUESTS FOR PRODUCTION OF DOCUMENTS TO HAMMY MEDIA**

**REQUEST NO. 7:** All documents that report, describe, summarize, analyze, discuss, or comment on compensation or sharing of revenues in any form to users, user accounts, or third-party individuals or entities.

**OBJECTION:** Hammy objects to this request as being overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible information. Additionally, Hammy objects to the time frame for this interrogatory as defined by the Plaintiffs. Accordingly, any response to this request is limited to the relevant time period of 2019-2023. Hammy also objects to this request as being wholly unrelated to Plaintiffs' claims and not proportional to the needs of the case in accordance with Fed. R. Civ. P. 26(b)(1).

**RESPONSE:** Subject to the foregoing objections, Hammy will produce responsive documents relating to the videos in question in the present litigation if any such responsive documents exist. Hammy states that no such documents exist.

In their Memorandum, Plaintiffs mischaracterize Hammy's response, writing that they "find it troubling that 'no documents exist' regarding the compensation or sharing of revenue from the Defendants to any users, user accounts, third parties, individuals, or entities." This is, of course, not what Hammy said in its response. It said that no documents exist with respect to payments made "relating to the videos in question in the present litigation."

Hammy's statement is true both because it made no payments whatsoever to any user or individual in connection with the videos at issue in this litigation but also because, in a larger sense, Hammy did not have a revenue sharing program in place at all in 2019 when the videos were uploaded.

This is a useful place to pause. There is buried in this interrogatory a legitimate questions for which Plaintiffs are entitled to an answer: Did Hammy pay the uploader of the videos in question any amount for having uploaded the videos. The answer is a categorical no. Indeed, because no revenue sharing program was in place either when the videos were recorded (in 2012) or when the videos were uploaded (2019), Plaintiffs argument (that somehow the uploader was incentivized to upload the videos of the Plaintiffs) dissolves into thin air.

Plaintiffs claim that they are entitled to every document that touches upon any revenue sharing program in existence at any time, despite the fact that such information is wholly unrelated to any claim that they may have.  They are not.

> **REQUEST NO. 8:** All documents that report, describe, summarize, analyze, discuss, or comment on complaints that content is non-consensual, in whole or in part.
>
> **OBJECTION:** Hammy objects to this request as being overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible information. Additionally, Hammy objects to the time frame for this interrogatory as defined by the Plaintiffs. Accordingly, any response to this request is limited to the relevant time period of 2019-2020. Hammy also objects to this request as being wholly unrelated to Plaintiffs' claims and not proportional to the needs of the case in accordance with Fed. R. Civ. P. 26(b)(1).
>
> **RESPONSE:** Subject to the foregoing objections, Hammy will produce responsive documents in its care, custody or control relating solely to the account under which the videos in question at the litigation were posted. Hammy refers Plaintiffs to documents bates stamped HAM 000120 – HAM 000170.

Here Hammy has provided documents relating to account that uploaded the vides in question to the xHamster.com website.  Plaintiffs, on the other hand, contend that they are entitled to eight years of documents (including six years of documents relating to a point in time before the videos in question were ever uploaded to the xHamster.com website) concerning ANY video claimed to be non-consensual.  Such a request is both overly broad, unduly burdensome, and not proportionate to the needs of this case.

> **REQUEST NO. 12:** All documents that report, describe, summarize, analyze, discuss, or comment on the training of individuals to monitor or moderate content uploaded, or submitted to be uploaded, to any Hammy Media site.
>
> **OBJECTION:** Hammy objects to the time frame for this interrogatory as defined by the Plaintiffs. Accordingly, any response to this request is limited to the relevant time period of 2019-2023.

**RESPONSE:** Subject to the foregoing objections, Hammy will produce those responsive documents in its care, custody, or control. Hammy refers Plaintiffs to documents bates stamped HAM 000185 – HAM 000194.

It appears that Plaintiffs' only complaint to Hammy's production is that Hammy limited the relevant time period to 2019 (when the videos were uploaded) to the present. It is inconceivable that any of the documents sought by this interrogatory relating to a point in time *before the videos in question were actually uploaded* could reasonably lead to the discovery of admissible information, nor do Plaintiffs present any argument to the contrary.

**REQUEST NO. 15:** Please produce all Documents relating Hammy Media's profits or value from videos/channels or playlists that are displayed on its websites, including any benefit or revenues attributed to materials flagged or reported for nonconsensual content.

**OBJECTION:** Hammy objects to this request as being overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible information. Hammy also objects to this interrogatory as being unintelligible. Additionally, Hammy objects to the time frame for this interrogatory as defined by the Plaintiffs. Accordingly, any response to this request is limited to the relevant time period of 2019-2020. Hammy also objects to this request as being wholly unrelated to Plaintiffs' claims and not proportional to the needs of the case in accordance with Fed. R. Civ. P. 26(b)(1).

**RESPONSE:** Subject to the foregoing objections, Hammy will produce any responsive documents that relate to the videos in question in the present litigation, to the extent that such documents exist. Hammy refers Plaintiffs to document bates stamped HAM 000195.

Here, too, there is a small relevant question: what income was generated for Hammy as a result of some third-party having posted Plaintiffs' videos to the xHamster.com website. That question is answered by the document produced: approximately $1.53. Past that, though, the request is wildly overbroad on its face, seeking all documents relating to all profits or value received from the display of videos. The world of responsive documents would be immense since all of Hammy's revenue comes (indirectly at least) from the display of video content.

**REQUEST NO. 17:** Please produce all Documents regarding the identification and age verification processes for users of Hammy Media's websites including, but not limited to,

account holders and those depicted in sexually explicit content. This request includes any Documents reflecting procedures not adopted or implemented.

**OBJECTION:** Hammy objects to this request as being overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible information. Additionally, Hammy objects to the time frame for this interrogatory as defined by the Plaintiffs. Accordingly, any response to this request is limited to the relevant time period of 2019-2023. Hammy also objects to this request as being wholly unrelated to Plaintiffs' claims and not proportional to the needs of the case in accordance with Fed. R. Civ. P. 26(b)(1).

**RESPONSE:** Pursuant to the foregoing objections, Hammy will not be producing documents in response to this request.

Although perhaps relevant to Plaintiffs' desire to smear the entire adult entertainment industry – or simply paint Hammy in a bad light – this request is not remotely relevant to Plaintiffs' actual claims: there are no allegations that Plaintiffs were underage at the time the videos were filmed, nor allegations that the users viewing those videos were underage. The request is a classic "we think this request will embarrass you even though it's not relevant to our claims" gambit which should be rejected.

**REQUEST NO. 27:** For the relevant time period, all documents related to search engine optimization.

**OBJECTION:** Hammy objects to this request as being overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible information. Additionally, Hammy objects to the time frame for this interrogatory as defined by the Plaintiffs. Accordingly, any response to this request is limited to the relevant time period of 2019-2023. Hammy also objects to this request as being wholly unrelated to Plaintiffs' claims and not proportional to the needs of the case in accordance with Fed. R. Civ. P. 26(b)(1).

**RESPONSE:** Pursuant to the foregoing objections, Hammy will not be producing documents in response to this request.

Plaintiffs have provided no argument or explanation for how such information is relevant to their claims, other than to say that their expert will provide testimony related to Search Engine

Optimization.  But there is nothing about Plaintiffs' claims that appear to be related in any way to SEO and, as such, the request should be denied.

> **REQUEST NO. 29:** Please produce all reports made to Hammy Media by law enforcement, users, and/or the public about videos taken without consent or knowledge - including any reports made regarding the videos which are the subject of the Complaint.
>
> **OBJECTION:** Hammy objects to the time frame for this interrogatory as defined by the Plaintiffs. Accordingly, any response to this request is limited to the relevant time period of 2019-2023.
>
> **RESPONSE:** Subject to the foregoing objections, Hammy will produce responsive documents in its care, custody or control relating solely to the account under which the videos in question at the litigation were posted. Hammy refers Plaintiffs to documents bates stamped HAM 000120 – HAM 000170.

Plaintiffs produced those documents related to law enforcement or other reports made concerning the videos at issue in this litigation.  Such information is both relevant and proportionate to the present litigation.  Plaintiffs, however, seek some 12 years of documents unrelated to the actual videos at issue in this litigation – such a request is overbroad and not reasonably calculated to lead to the discovery of admissible evidence.

> **REQUEST NO. 30:** Please produce all communications during the relevant time period that discuss hidden cam(era), spy cam(era), voyeur(ism), locker room, bathroom/shower videos, limestone college, or South Carolina.
>
> **OBJECTION:** Hammy objects to this request as being overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible information. Additionally, Hammy objects to the time frame for this interrogatory as defined by the Plaintiffs. Accordingly, any response to this request is limited to the relevant time period of 2019-2023. Hammy also objects to this request as being wholly unrelated to Plaintiffs' claims and not proportional to the needs of the case in accordance with Fed. R. Civ. P. 26(b)(1).
>
> **RESPONSE:** Subject to the foregoing objections, Hammy will produce responsive documents in its care, custody or control relating solely to the account under which the videos in question at the litigation were posted. Hammy refers Plaintiffs to documents bates stamped HAM 000120 – HAM 000170.

Plaintiffs produced those communications related to the videos at issue in this litigation. Such information is both relevant and proportionate to the present litigation. Plaintiffs, however, seek some 12 years of documents unrelated to the actual videos at issue in this litigation – such a request is overbroad and not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 32:** Please produce all videos and images, with their associated metadata, for the relevant time period, that were associated with keywords or categories or had titles or tags that included the words "voyeur," "cam," "camera," "hidden," "spy," "locker room," "South Carolina." or "public nudity."

**OBJECTION:** Hammy objects to this request as being overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible information. Additionally, Hammy objects to the time frame for this interrogatory as defined by the Plaintiffs. Accordingly, any response to this request is limited to the relevant time period of 2019-2023. Hammy also objects to this request as being wholly unrelated to Plaintiffs' claims and not proportional to the needs of the case in accordance with Fed. R. Civ. P. 26(b)(1).

**RESPONSE:** Pursuant to the foregoing objections, Hammy will not be producing documents in response to this request.

Finally, Plaintiffs seek an unspeakably large amount of data – specifically videos and their associated metadata, for a 12 year period – not limited to the videos at issue in this case. The sheer amount of data requested is not proportionate to the needs of the Plaintiffs and, ultimately, is irrelevant to the actual claims made by Plaintiffs.

### INTERROGATORIES TO TRAFFICSTARS

**INTERROGATORY 6:** For the calendar years 2013-present, how many ad campaigns were run each year by the Traffic Stars platform?

In its answer, TrafficStars provided the number of ad campaigns that were run by the TrafficStars platform in 2019 and 2020. To the extent that any of this information is relevant at all, it is only relevant during this period of time, when the videos were uploaded to the xHamster.com website.

24

**INTEROGATORY 7**: For the calendar years 2013-present, how many ad campaigns, in whole or in part, targeted United States traffic each year? For the purposes of this Interrogatory, "targeted" means specifically selecting the United States or any part thereof as a geographic area for geolocation of ads.

TrafficStars is hard pressed to understand what Plaintiffs are complaining about in connection with its response to this interrogatory: TrafficStars provided the percentage of ad campaigns that were geolocated towards the United States for the years 2019-2023. To the extent that Plaintiffs believe this information is relevant to its jurisdictional arguments, as it says in its Memorandum, it has been provided with the answer given.

**INTEROGATORY 8:** For the calendar years 2013-present, how many ad campaigns targeted South Carolina traffic each year?

Again, TrafficStars is hard pressed to understand what Plaintiffs are complaining about in connection with its response to this interrogatory: TrafficStars provided the percentage of ad campaigns that were geolocated towards the South Carolina for the years 2019-2023. To the extent that Plaintiffs believe this information is relevant to its jurisdictional arguments, as it says in its Memorandum, it has been provided with the answer given.

## TRAFFIC STARS 2ND SET OF DOC REQUESTS

**REQUEST NO. 6:** All documents that report, describe, summarize, analyze, discuss, or comment on complaints that advertising content is non-consensual, in whole or in part.

**OBJECTION:** TrafficStars objects to the time frame for this interrogatory as defined by the Plaintiffs. Accordingly, any response to this request is limited to the relevant time period of 2019-2023.

**RESPONSE:** Subject to the foregoing objections, TrafficStars will produce those documents in its care, custody, or control insofar as they relate to complaints concerning advertising placed on the xHamster.com website. TrafficStars refers Plaintiffs to documents bates stamped TRA 001445 – TRA 001456.

Here, Plaintiffs seem to seek documents that do not exist.  TrafficStars does not have any documents that report or discuss complaints that advertising content is non-consensual, nor would it expect to have any such documents.  Instead, TrafficStars produced the only thing that it had which was even remotely responsive: its guidelines for what is and is not acceptable for advertising placed through TrafficStars.

> **REQUEST NO. 14:** For the relevant time period, please produce all documents related to accepted advertising campaigns that targeted North America.
>
> **OBJECTION:** TrafficStars objects to this request as being overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible information. Additionally, TrafficStars objects to the time frame for this interrogatory as defined by the Plaintiffs. Accordingly, any response to this request is limited to the relevant time period of 2019-2023. TrafficStars also objects to this request as being wholly unrelated to Plaintiffs' claims and not proportional to the needs of the case in accordance with Fed. R. Civ. P. 26(b)(1).
>
> **RESPONSE:** Subject to the foregoing objections, TrafficStars will produce statistical documents that illustrate what percentage of advertisements placed by TrafficStars are geolocated towards the United States (or South Carolina). TrafficStars refers Plaintiffs to a document bates stamped TRA 001459.

To the extent that Plaintiffs seek information relevant to their jurisdictional arrangements, the document produced provides that information.  Past that, however, Plaintiffs' rationale for this request is a muddled word salad about what local influence the ad campaigns might have had in the United States or South Carolina.  This makes no sense.  Websites enter into contracts with TrafficStars whereby they allow TrafficStars to place advertisements on their websites. TrafficStars then sells these advertising slots to its clients.  TrafficStars is not advertising itself in this manner: it is running ads for its clients.  Even if Plaintiffs had a comprehensible argument in connection with this request, they certainly do not have one that is relevant to any claims at issue in this litigation.

## **CONCLUSION**

For the reasons stated hereinabove, Plaintiffs' Motion to Compel should be denied in its entirety.

Respectfully Submitted,

/s/ Hannah Rogers Metcalfe
Hannah Rogers Metcalfe, Fed ID. 9943
Metcalfe & Atkinson, LLC
1395 South Church Street
Greenville, South Carolina 29605
(864) 214-2319

Evan Fray-Witzer (*pro hac vice*)
CIAMPA FRAY-WITZER, LLP
20 Park Plaza, Suite 505
Boston, Massachusetts 02116
Telephone: 617-426-0000
Facsimile: 617-423-4855
Evan@CFWLegal.com


Valentin D. Gurvits (*pro hac vice*)
Frank Scardino (*pro hac vice*)
BOSTON LAW GROUP, PC
825 Beacon Street, Suite 20
Newton Centre, Massachusetts 02459
Telephone: 617-928-1804
Facsimile: 617-928-1802
vgurvits@bostonlawgroup.com
frank@bostonlawgroup.com

*Attorneys for Hammy Media, Ltd. and Trafficstars, Ltd.*

March 27, 2024
Greenville, South Carolina