UNITED STATES DISTRICT COURT DISTRICT OF
SOUTH CAROLINA SPARTANBURG DIVISION

| | |
|---|---|
| JANE DOES 1-9, | Case No: 7:20-cv-00947-DCC |
| Plaintiffs, | |
| vs. | LIMESTONE UNIVERSITY'S, SHARON HAMMONDS', AND BRENDA WATKINS' MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE SETTLEMENT |
| COLLINS MURPHY, SHARON HAMMONDS, BRENDA F. WATKINS, LIMESTONE UNIVERSITY, MG FREESITES, LTD., d/b/a PORNHUB.COM, MG FREESITES II LTD., MINDGEEK S.A.R.L., MINDGEEK USA, INC., MG BILLING LTD., and HAMMY MEDIA LTD. d/b/a XHAMSTER.COM, TRAFFICSTARS LTD., WISEBITS LTD, XHAMSTER IP HOLDINGS LTD, WISEBITS IP LTD, | |
| Defendants. | |

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| JANE DOE, | Case No: 7:21-cv-03193-DCC |
| Plaintiff, | |
| vs. | LIMESTONE UNIVERSITY'S, SHARON HAMMONDS', AND BRENDA WATKINS' MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE SETTLEMENT |
| COLLINS MURPHY, SHARON HAMMONDS, BRENDA F. WATKINS, LIMESTONE UNIVERSITY, MG FREESITES, LTD., d/b/a PORNHUB.COM, MG FREESITES II LTD., MINDGEEK S.A.R.L., MINDGEEK USA, INC., MG BILLING LTD., and HAMMY MEDIA LTD. d/b/a XHAMSTER.COM, TRAFFICSTARS LTD., WISEBITS LTD, XHAMSTER IP HOLDINGS LTD, WISEBITS IP LTD, | |
| Defendants. | |

1

<u>**BRIEF IN SUPPORT OF DEFENDANTS LIMESTONE UNIVERSITY, SHARON HAMMONDS, AND BRENDA WATKINS' MOTION TO ENFORCE SETTLEMENT**</u>

NOW COMES **LIMESTONE UNIVERSITY** ("Limestone"), **SHARON HAMMONDS**, and **BRENDA WATKINS,** Defendants to the above-captioned action (hereinafter the "Moving Defendants"), and hereby move for an Order enforcing the settlement agreement entered into between Plaintiffs and the Moving Defendants, and dismissing with prejudice all claims against these Defendants in Cases Nos. 7:20-cv-00947 and 7:21-cv-03193.

I. INTRODUCTION

As set forth below, the parties reached a binding settlement on all essential terms on June 17, 2025, including an agreed release of Limestone *and its employees*, and specifically including Sharon Hammonds and Brenda Watkins, and the Moving Defendants have tendered the agreed settlement payments and provided a proposed written release reflecting the agreed language. Plaintiffs, however, have failed to consummate the settlement or execute the release, objecting to execution of the proposed release because of their concern over whether Defendant Collins Murphy is included in the release as an "employee" of Limestone. Defendant Murphy is a non-settling co-Defendant who was never explicitly discussed during the Moving Defendants' settlement negotiations.[1] This post hoc dispute should not delay enforcement of the agreement or dismissal of the claims against Limestone, Sharon Hammonds, and Brenda Watkins. The Moving

---

[1] Collins Murphy is not represented by undersigned counsel and was not a participant in the settlement negotiations. Any potential ambiguity about whether Murphy might be deemed an "employee" of Limestone under the release is irrelevant to this Motion, because the Moving Defendants seek enforcement only of the agreement between Plaintiffs and Limestone (and its employees). Murphy's status can be addressed, if necessary, in separate discussions or proceedings involving Murphy's own counsel, but it should not delay the enforcement or effectuation of the settlement with the Moving Defendants.

2

Defendants therefore respectfully request that the Court enforce the settlement as to these Defendants and order that all claims against them be dismissed with prejudice.

## II.   FACTUAL BACKGROUND

On June 17, 2025, counsel for the Moving Defendants and Plaintiffs reached a full and final settlement of all claims by Plaintiffs (Jane Does 1–10) against Limestone University and its employees (explicitly including Defendants Hammonds and Watkins), as well as Limestone's insurers, for a confidential payment.[2] The essential terms of the settlement, confirmed in an email from defense counsel that day, included:

- **Payment:** Defendants (through their insurers) will pay a confidential amount to Plaintiffs.

- **Scope of Release**: Plaintiffs will release Limestone University and its employees (explicitly including Defendants Hammonds and Watkins) and Limestone's insurers from all claims that were or could have been asserted in these actions.

- **Dismissal With Prejudice:** Plaintiffs will dismiss with prejudice all claims against Limestone, Hammonds, and Watkins in both pending lawsuits.

- **Confidentiality:** The settlement will include a confidentiality clause.

    (Ex. A - Email from J. Hubert to L. Shepherd, June 17, 2025, 4:16 PM).[3]

Later that same day, Plaintiffs' counsel accepted these terms in writing, emailing: "This confirms our settlement and that you will inform the court". (Ex. B – Email from L. Shepherd to J. Hubert, June 17, 2025, 5:30 PM). In view of this mutual assent, defense counsel notified the Court that a settlement had been reached at the hearing held on the Defendants' Motions for Summary Judgment on June 18, 2025, and consequently the Moving Defendants did not argue

---

[2] If the Court desires a copy of the proposed settlement release with the settlement amount, counsel will file it under seal for the Court's review.
[3] All Exhibits are attached to the *Declaration of John A. Hubert*, attached hereto as Exhibit "1".

their Motion for Summary Judgment at the hearing on June 18, 2025. The June 17 email exchange thus memorialized a binding agreement on all material terms, with both sides expressing a clear intent to be bound.

In the weeks following the June 17 agreement, the Moving Defendants took steps to fulfill their obligations. On July 29, 2025, defense counsel also transmitted to Plaintiffs' counsel a proposed written Release and Settlement Agreement encompassing the agreed-upon language (including the release of Limestone's employees). This proposed written release was intended to formally document the terms already agreed to on June 17. The undersigned counsel then arranged for the agreed settlement funds to be issued and, in accordance with the parties' agreement, delivered the settlement checks to Plaintiffs' counsel.

Plaintiffs, however, did not execute the release or immediately respond with any revisions. In communications over the next month, Plaintiffs' counsel neither objected to the wording of the release nor suggested that the settlement was unwinding. The Moving Defendants' counsel was recently made aware of some confusion regarding the status of Collins Murphy's inclusion in the release and contacted Plaintiffs' counsel to ask if Defendant Murphy could be included in the Release. Plaintiffs' counsel declined to include Defendant Murphy as a Releasee. Upon learning this, the undersigned counsel renewed his request for a release on the terms explicitly agreed upon on June 17 – that is, Limestone and its employees, including Defendants Hammonds and Watkins. Plaintiffs' counsel refused this as well.

The parties again consulted on September 4, 2025 regarding the settlement. In a Teams meeting, the undersigned reiterated that Moving Defendants simply want a release in accordance with the agreed-upon June 17 terms. Plaintiffs' counsel insisted that Defendant Murphy be explicitly carved out of the release so that claims could be maintained against Defendant Murphy.

The undersigned reiterated that such a carve out was never discussed, and a release on the same terms as the June 17 e-mail exchange is necessary because of their prior agreement to those terms. Given the upcoming trial, the undersigned advised that this matter needed to be resolved by September 5, 2025 or a motion to enforce settlement would be forthcoming.

On September 4, 2025, the undersigned followed up the aforementioned consultation with Plaintiffs' counsel with an email reiterating that Moving Defendants are entitled to an executed settlement agreement that included Limestone's employees, and any issues with how that impacted Plaintiffs' claims as to Defendant Murphy were between Plaintiffs and Defendant Murphy's counsel. (Ex. C – Email from J. Hubert to L. Shepherd and G. Sulpizio, September 4, 2025, 5:25 PM). Plaintiffs' counsel replied later that evening, claiming that the undersigned's request to explicitly include Collins Murphy in the release was evidence he was not included in the settlement, and then asked if the insurance carrier defending Defendant Murphy would pay "additional money" to get Mr. Murphy out or if Mr. Murphy would answer questions to which he previously plead the Fifth Amendment. (Ex. D – Email from L. Shepherd to J. Hubert, September 4, 2025, 6:54 PM).

The undersigned replied the morning of September 5, 2025 acknowledging that he asked for Defendant Murphy to be explicitly included as a released "employee" when the issue of whether he was still a party to the case arose, but reverted to the explicit language of the agreed-upon release when Plaintiffs' counsel refused to directly name Defendant Murphy as a released party. (Ex. E – Email from J. Hubert to L. Shepherd, September 5, 2025, 10:09 AM). The undersigned again reiterated he did not represent Defendant Murphy, and issues regarding his status as a released party should be directed to Defendant Murphy's attorney. *Id.* However, Limestone is entitled to an executed release on the terms outlined in the June 17 emails. *Id.* As of

this filing, Plaintiffs' counsel has not responded or provided the undersigned with any revisions to the proposed Release sent on July 29, 2025. In short, Plaintiffs have refused to finalize the settlement on the terms agreed to in their June 17 email exchange, apparently because of their late-arising concern about the scope of the release as it might pertain to Defendant Murphy. This impasse necessitates Court intervention to enforce the binding agreement and to avoid prejudice to the Moving Defendants, who have upheld their end of the bargain and are entitled to the benefit of the settlement.

### III. ARGUMENT

#### a. Legal Standard for Enforcing Settlement Agreements

Federal courts have long recognized their authority to enforce valid settlement agreements reached in cases pending before them. *Millner v. Norfolk & W. R. Co.*, 643 F.2d 1005, 1009 (4th Cir. 1981). A settlement agreement is a contract, and the enforcement of settlement agreements is governed by familiar principles of contract law. *Hensley v. Alcon Lab'ys, Inc.*, 277 F.3d 535, 540 (4th Cir. 2002). In the Fourth Circuit, a district court may summarily enforce a settlement agreement without an evidentiary hearing provided that the Court can determine that (1) the parties have reached a complete agreement, and (2) the terms and conditions of that agreement. *Id.*

In deciding whether the parties in fact reached a settlement, the Court looks to the objectively manifested intentions of the parties – i.e. their words and conduct – rather than secret reservations or post hoc regrets. *Sadighi v. Daghighfekr*, 66 F. Supp. 2d 752, 759 (D.S.C. 1999). Standard contract formation elements apply: a settlement exists once one party has extended an offer, the other has accepted, and valuable consideration is exchanged. *Id.* Mutual assent to the material terms (a "meeting of the minds") is essential, but "having second thoughts about the results of a valid settlement agreement does not justify setting aside an otherwise valid agreement."

*Young v. F.D.I.C.*, 103 F.3d 1180, 1195 (4th Cir. 1997). In other words, a change of heart or after-the-fact regret by one side is not a basis to undo a binding deal. Courts apply these principles with an eye toward encouraging and upholding lawful settlements. Thus, once it is shown that the parties entered into an agreement on all essential terms, the settlement will be enforced just like any other contract.

In sum, if a complete agreement was reached on the material terms of a settlement, and those terms are sufficiently definite, the Court should enforce the agreement. The remedy for a breach of a settlement agreement is typically specific performance, i.e. an order compelling the breaching party to fulfill its obligations under the agreement (such as executing required releases or dismissals) specifically enforced. *Hensley*, 277 F.3d 535, 543 (4th Cir. 2002). In a case like this, that means the Court can order that the agreed release be executed and that the agreed dismissal with prejudice of the Moving Defendants be entered, thereby effectuating the settlement.

### b. The Parties Reached a Binding Settlement on June 17, 2025

Under the above standards, it is clear that a valid and enforceable settlement agreement was reached on June 17, 2025 between Plaintiffs and the Moving Defendants. All the elements of a binding contract are present. There was an offer by Defendants, an acceptance by Plaintiffs, and valuable consideration promised by both sides (monetary payment by Defendants in exchange for a release and dismissal by Plaintiffs). The June 17 email correspondence (attached as Exhibits A and B) demonstrate a complete agreement on the material terms of settlement. Defense counsel's 4:16 PM email on June 17 enumerated the key terms in detail, including the parties to be released, the claims covered, the payment amount, and the dismissal with prejudice, as well as a confidentiality provision. Plaintiffs' counsel's 5:30 PM reply that same day expressly confirmed

"our settlement" on those terms. This contemporaneous exchange leaves no doubt that both sides understood and agreed to the same essential deal. The terms were specific and definite: Limestone (through its insurers) would pay a confidential amount, and Plaintiffs would release Limestone, its employees, and its insurers from all claims, with a stipulation of dismissal with prejudice to be filed for Limestone, Hammonds, and Watkins.[4] Nothing material was left open or subject to further negotiation. Indeed, Plaintiffs' counsel authorized defense counsel to inform the Court that the case was settled, reflecting a clear intent by Plaintiffs to be bound by the agreed terms (not merely an agreement to keep negotiating). At that point, a binding contract was formed. The parties had exchanged mutual promises (payment in return for release/dismissal) with an intent to be immediately bound.

Here, the objective evidence of assent is overwhelming: written confirmation by both sides and notification to the Court of the settlement. Furthermore, both parties acted consistently with the existence of a settlement after June 17. The Moving Defendants promptly began performing their obligations, arranging payment and drafting a release, and Plaintiffs likewise provided payment instructions and tax documents for the settlement funds. These actions reinforce that a "full, final and complete settlement" had been reached, not merely an agreement to negotiate further. *Sadighi*, 66 F. Supp. 2d 752, 764 (D.S.C. 1999). Here, both Plaintiffs and Defendants explicitly agreed to the broad release language ("Limestone and its employees") as part of the bargain. Plaintiffs cannot avoid the agreement simply because they have not yet signed the final paperwork. In short, all essential elements of the contract were established on June 17, 2025, and the settlement became binding at that time under ordinary contract principles.

---

[4] Importantly, the Moving Defendants have not required nor do they request that Defendant Murphy be dismissed from this lawsuit as a condition of settlement.

Notably, there is no genuine dispute about whether a settlement was reached on June 17. Plaintiffs have never claimed that they *did not* agree to the terms outlined in the June 17 email. Rather, as discussed below, their only hesitation in finalizing the deal arose later, based on a collateral concern about another defendant's status. That does not call into question the formation of the contract itself. At most, it raises a question of interpreting the agreed release language – a question which can be addressed without negating the existence of the agreement.

Plaintiffs' concern that Collins Murphy might be considered an "employee" covered by the release is meritless and legally irrelevant to the enforcement of the agreement with the Moving Defendants. This issue does not alter the fact that Plaintiffs agreed to release *Limestone University and its employees*, including Hammonds and Watkins, in exchange for a sum of money. Murphy's status was simply not a part of the negotiation or the agreed essential terms; it was raised only after the fact by Plaintiffs' counsel as a purported point of clarification. Crucially, whether or not the release's reference to "employees" ultimately encompasses Collins Murphy has no bearing on the obligations between Plaintiffs and the Moving Defendants themselves. Plaintiffs cannot use a tangential concern about a non-party to the settlement negotiations as a basis to renege on or delay the consummation of the deal that *was* struck. The terms of the agreement are clear and have been documented in writing; there is no ambiguity as to what Plaintiffs agreed to do (dismiss and release claims in exchange for payment). Therefore, the Court should hold the settlement agreement to be valid and enforceable and proceed to enforce its terms.

## IV.   CONCLUSION

For these reasons, the Court should reject Plaintiffs' attempt to inject the Collins Murphy issue as an obstacle. Plaintiffs' obligation to release Limestone University, Hammonds, and

Watkins was part of a bargained-for exchange that Plaintiffs accepted. The possibility that a third party like Murphy might incidentally benefit from the release does not change Plaintiffs' duty to perform under the contract. And since Murphy was not a party to the settlement negotiations, the scope of his rights, if any, under the release can be handled separately without undoing the agreement between the actual contracting parties. In short, the Moving Defendants are entitled to enforcement of the settlement forthwith, and Plaintiffs' belated concerns provide no legal basis to refuse compliance. Defendants Limestone University, Sharon Hammonds, and Brenda F. Watkins respectfully urge the Court to grant this Motion and enforce the settlement agreement reached on June 17, 2025. The Moving Defendants ask that the Court enter an Order confirming the validity of the settlement, directing Plaintiffs to execute the agreed release (or deeming the release effective as a matter of law), and dismissing all claims against Limestone University, Hammonds, and Watkins with prejudice in accordance with the settlement. The Moving Defendants further request that the Court award such other and further relief as may be just and proper to effectuate the settlement (including, if appropriate, entry of a judgment enforcing the settlement terms or any specific provisions thereof).

This 5th day of September, 2025.

RAHIMI, HUGHES & PADGETT, LLC

*/s/ JOSEPH Y. RAHIMI II*
JOSEPH Y. RAHIMI II
Federal ID No. 9670
JOHN A. HUBERT
Federal ID No. 13154
*Attorneys For Defendants Limestone University, Sharon Hammonds, And Brenda Watkins*

1001 Memorial Lane, Suite 300
Savannah, Georgia 31410
(912) 421-9988
jrahimi@rhp-law.com
jhubert@rhp-law.com